**COLE SCHOTZ P.C.**
Court Plaza North
25 Main Street
P.O. Box 800
Hackensack, New Jersey 07602-0800
(201) 489-3000
(201) 489-1536 Facsimile
Michael D. Sirota, Esq.
msirota@coleschotz.com
Ryan T. Jareck, Esq.
rjareck@coleschotz.com
Matteo Percontino, Esq.
mpercontino@coleschotz.com
*Proposed Counsel to Debtors and Debtors in Possession*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Chapter 11 |
| SAM ASH MUSIC CORPORATION, | Case No. 24-14727 (SLM) |
| Debtors.[1] | (Joint Administration Requested) |

**DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS
(I) AUTHORIZING THE DEBTORS TO ASSUME AND PERFORM UNDER THE
CONSULTING AGREEMENT RELATED TO THE SALE OF INVENTORY,
(II) APPROVING PROCEDURES FOR THE SALE OF INVENTORY,
(III) APPROVING MODIFICATIONS TO CERTAIN CUSTOMER PROGRAMS, AND
(IV) GRANTING RELATED RELIEF**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are: Sam Ash Music Corporation (3915); Samson Technologies Corp. (4062); Sam Ash Megastores, LLC (9955); Sam Ash California Megastores, LLC (3598); Sam Ash Florida Megastores, LLC (7276); Sam Ash Illinois Megastores, LLC (8966); Sam Ash Nevada Megastores, LLC (6399); Sam Ash New York Megastores, LLC (7753); Sam Ash New Jersey Megastores, LLC (8788); Sam Ash CT, LLC (5932); Sam Ash Music Marketing, LLC (2024); and Sam Ash Quikship Corp. (7410). The location of debtor Sam Ash Music Corporation's principal place of business is 278 Duffy Avenue, P.O. Box 9047, Hicksville, NY 11802.

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state as follows in support of this motion (this "Motion"):[2]

## Preliminary Statement

1.      As set forth in the First Day Declaration, the Debtors filed these chapter 11 cases with the intent to conduct a going concern sale process for all or some of their assets on an expedited basis. In addition, prior to the Petition Date (defined below), the Debtors initiated both liquidation and "soft" sales in their retail stores, which the Debtors intend to continue during the pendency of their chapter 11 cases, to monetize their inventory. This dual path process is necessary to maintain optionality, conserve liquidity, and maximize the value of the Debtors' assets. In the event that the Debtors are unable to find a buyer for their assets, the Debtors will not have sufficient liquidity to continue to operate in the ordinary course and will be forced to wind-down their operations and liquidate their inventory. By this Motion, the Debtors seek to establish procedures related to the sale of their inventory and store closing sales (collectively, the "Sale") that are substantially similar to those procedures used by other retailers in similar circumstances. Importantly, to the extent the Debtors' contemporaneous sale process results in a qualified purchaser committing to acquire the Debtors' business as a going concern (including retail stores), the Debtors will quickly pivot to cease sales at applicable stores or warehouses needed to implement the transaction.

2.      To effectuate the Sale, the Debtors intend to capitalize on their pre-petition relationship with Tiger Capital Group, LLC ("Tiger") and Gordon Brothers Retail Partners, LLC

---

[2] A detailed description of the Debtors, their business, and the facts and circumstances supporting these chapter 11 cases is set forth in the *Declaration of James Marcum, Chief Executive Officer of the Debtors, in Support of Debtors' Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed contemporaneously herewith. Capitalized terms used but not defined herein shall have the meanings ascribed to them in the First Day Declaration.

("Gordon Brothers" and together with Tiger, collectively, the "Consultant"). Having been engaged pre-petition, the Consultant has knowledge of the Debtors' systems, protocols, and customers. Additionally, the Consultant is facilitating the Sale on a fee structure substantially similar to the fee structure on which it is retained in other similar chapter 11 cases. These factors support the Debtors' business judgment to assume the Consulting Agreement (defined below) and retain the Consultant.

3.     The Debtors have designed Sale Procedures (defined below) that they believe will maximize value. The Sale Procedures reflect the industry standard and will ensure a value-maximizing sale process. The Debtors also seek certain relief to enact procedures to facilitate the Sale, including authority to make customary liquidation incentive payments pursuant to the Debtors' budget and to modify certain customer programs as the Debtors deem appropriate in their business judgment and in consultation with their advisors. The relief requested herein is substantially similar to relief obtained by other retail debtors conducting similar sales and is warranted under the circumstances to facilitate a value maximizing Sale process.

## Relief Requested

4.     The Debtors seek entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B** (respectively, the "Interim Order" and "Final Order"):

  a.     authorizing the Debtors to assume and perform under that certain *Consulting Agreement* dated as of February 27, 2024, as amended on April 24, 2024, by that certain Addendum to Consulting Agreement (as amended, the "Consulting Agreement") by and among the Consultant and Sam Ash Music Corporation (the "Merchant"), a copy of which is attached as Exhibit 1 to the Interim Order;

  b.     approving the procedures for effectuating the Sale (attached as Exhibit 2 to the Interim Order, the "Sale Procedures"), with any sales occurring thereunder to be free and clear of all liens, claims, encumbrances, and other interests (collectively, "Encumbrances");

c.      approving modifications to certain customer programs, including the Debtors' return policy and acceptance of gift cards and store credits;

d.      authorizing the sale or disposition of the Offered Assets (defined herein) free and clear of all Encumbrances;

e.      approving the abandonment of certain burdensome Offered Assets; and

f.      granting related relief.

5.      In addition, the Debtors request that the Court schedule a final hearing within approximately twenty-one days of the commencement of these chapter 11 cases, or as soon thereafter as is convenient for the Court, to consider approval of this Motion on a final basis.

## Jurisdiction and Venue

6.      The United States Bankruptcy Court for the District of New Jersey (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11*, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.). The Debtors confirm their consent to the Court entering a final order in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

7.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

8.      The bases for the relief requested herein are sections 105, 363, 365 and 554 of title 11 of the United States Code (the "Bankruptcy Code"), rules 2002, 6003, and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 9013-1 and 9013-5 of the Local Bankruptcy Rules for the District of New Jersey (the "Local Rules").

## Background

9.      As set forth in the First Day Declaration, the Debtors are "The World's Favorite Music Store®" having served thousands of musicians since 1924 as a family-owned manufacturer

and specialty retailer of musical instruments and related equipment.  As of the date hereof, the Debtors operate 42 stores and 4 distribution centers throughout the United States.  The Debtors also operate an ecommerce business that primarily conducts sales domestically.  Further, the Debtors operate a wholesale business, Samson, which designs, markets, distributes, and sells products to musical instrument and consumer electronic retailers, distributors, and sound contractors both domestically and internationally.  The Debtors are headquartered in Hicksville, New York and currently employ approximately 830 employees.

10.     On the date hereof (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Concurrently with the filing of this Motion, the Debtors filed a motion requesting procedural consolidation and joint administration of these Chapter 11 Cases pursuant to Bankruptcy Rule 1015(b).  No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases, and no official committees have been appointed or designated.

**I.     The Sale**

11.     The Debtors plan to conduct the Sale in a manner that maximizes the value of their assets.  Accordingly, the purpose of this Motion is to put a process in place so that the Debtors can conduct the Sale as expeditiously as possible under the circumstances.  The Consulting Agreement provides for store closing sales at all of the Debtors' 42 retail store locations.[3]  The Consulting Agreement further provides for the liquidation of the Debtors' inventory at their distribution

---

[3] Simultaneous with this motion, the Debtors filed the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Pay Prepetition Employee Wages, Salaries, and Other Compensation, and Reimbursable Employee Expenses and (B) Continue Employee Benefits Programs and (II) Granting Related Relief* (the "Wages Motion"). The Wages Motion seeks among other relief, the approval of an employee incentive program related to the store closing sales.

centers (other than Samson) beginning on May 16, 2024, to the extent the Debtors do not receive a qualified bid for the Debtors' e-commerce business.

12.     The liquidation sales commenced on March 1, 2024, at 18 of the Debtors' retail locations, with the balance of the Debtors' retail locations beginning similar sales on May 2, 2024. Although the store closing sales as to certain stores are anticipated to be concluded in May and June 2024, and further provided that if Tiger Finance, LLC ("Tiger Finance") is the successful bidder pursuant to the bankruptcy sale process, the entire liquidation process is not anticipated to be completed until at least the end of July 2024, unless further extended in accordance with the terms of the Consulting Agreement. Therefore, the Debtors cannot provide parties in interest certainty with respect to the ultimate Sale end date.   Indeed, as set forth in the First Day Declaration, if a viable going concern buyer emerges, the Debtors intend to pivot away from the Sale in order to effectuate a going concern sale for the applicable stores or distribution center(s), as applicable.

13.     As discussed in more detail in the First Declaration, the Debtors entered into a Loan and Security Agreement with Tiger Finance, LLC on February 21, 2024 (the "Loan Agreement"). Pursuant to the Loan Agreement the Debtors agreed to a plan providing for the closure of certain underperforming stores and the monetization of inventory in those stores by the Consultant.  As set forth above, on February 27, 2024, the Debtors entered into the Consulting Agreement which provided for the Sale at 18 underperforming stores.  On April 24, 2024, the Debtors agreed to an amendment to the Consulting Agreement providing for the liquidation sales at the Debtors' remaining retail locations and inventory in their distribution center(s) (excluding Samson) subject to the Debtors' ability to remove stores or distribution center(s) to the extent a qualified bid for the Debtors' assets which included store locations and/or their ecommerce business is received.  The

Loan Agreement and Consulting Agreement were finalized after extensive arm's-length negotiations to ensure that the terms thereof are market. The Debtors submit that the Consulting Agreement contains the most favorable terms available under the circumstances.

14.     The Debtors believe in their business judgment that (a) the services of the Consultant are necessary (i) for a seamless and efficient large-scale inventory liquidation process of their stores undergoing such liquidations, and distribution center(s) to the extent such process becomes necessary, and (ii) to maximize the value of the saleable inventory (as further described in the Consulting Agreement, the "Merchandise") located at the Debtors' stores on Exhibit A to the original Consulting Agreement and Exhibit A to the Addendum to the Consulting Agreement (the "Stores"), and the associated owned furniture, fixtures, equipment, and improvements to real property which are located in the Stores, (the "FF&E" and, together with the Merchandise, the "Offered Assets"), and (b) the Consultant is qualified and capable of performing the required tasks in a value-maximizing manner. Accordingly, by this Motion, the Debtors seek to assume the Consulting Agreement.

## II.     The Consulting Agreement

15.     A summary of the material terms of the Consulting Agreement is set forth below.[4]

| TERM | CONSULTING AGREEMENT |
|---|---|
| **Services** | Consultant shall, throughout the Sale term: |
| | a.    provide qualified, full time Supervisors to assist the Merchant in the preparation for the Sale; |
| | b.    oversee the Sale of Merchandise from the Stores; |

---

[4] The following summary chart is for the convenience of the Court and parties. To the extent this summary conflicts with the Consulting Agreement, the Consulting Agreement shall govern. Capitalized terms used but not defined in the following summary shall have the meaning ascribed to them in the Consulting Agreement.

| Term | CONSULTING AGREEMENT | |
|---|---|---|
| | c. | solicit bulk and wholesale offers for the Merchandise from retailers and other potential buyers for sales that do not go through the Stores; |
| | d. | recommend and implement appropriate pricing, display, and discounting of Merchandise, as well as recommend appropriate staffing levels for the Stores (including Store employees); |
| | e. | determine and implement in its discretion as Consultant deems appropriate when to close Stores and end the Sale at each Store; and |
| | f. | provide such other related services deemed necessary or prudent by the Merchant and Consultant under the circumstances giving rise to the Sale. |
| **Sale Term; Vacating Stores** | (A) | The "Sale Term": <br><br> "store closing" or "going out of business" sales commenced at the Stores (i) on Exhibit A to the original Consulting Agreement shall end on or before June 30, 2024 and (ii) on Exhibit A to the Addendum to the Consulting Agreement shall end on a date as agreed to by the Parties; provided, that the Parties may mutually agree in writing to amend the Sale Term with respect to any one or more Stores. |
| | (B) | Upon the conclusion of the Sale Term, Consultant shall leave the Stores in broom clean condition, subject to Consultant's right pursuant to the Consulting Agreement to abandon in a neat and orderly manner all unsold FF&E. |
| **Expenses** | (A) | Merchant shall be responsible for the payment of all expenses incurred in operating the Stores and conducting the Sale, including all Sale Expenses. All variable Consultant Sale Expenses are set forth on the expense budgets attached as B to the original Consulting Agreement and Exhibit B to the Addendum to Consulting Agreement (the "Budget"). |
| | (B) | Merchant advanced $700,000 (the "Expense Deposit") to the Consultant as an advance against the expenses of the Sale. The Expense Deposit shall be applied against Consultant Sale Expenses and the Consultant's fees under Section 4.1 of the Consultant Agreement at the end of the Sale Term and to the extent not expended when the Sale concludes shall be returned to Merchant as part of the final reconciliation or such other time that Merchant and Consultant mutually agree |

| Term | CONSULTING AGREEMENT | |
|---|---|---|
| **Consultant Compensation** | (A) | Consultant shall be entitled to a fee equal to two percent (2.0%) of the actual proceeds generated from all sales ("Gross Proceeds") of the Merchandise through the Stores and five percent (5%) of the Gross Proceeds from the sale of Merchandise other than through the Stores. Consultant shall sell the FF&E for a commission equal to twenty percent (20%) of the Gross Proceeds from the sale of such FF&E. The fee due to the Consultant shall be paid weekly from the Proceeds of the Sale after it is earned. |
| | (B) | Consultant will submit invoices to Merchant on a weekly basis setting forth any Consultant Sale Expenses it has incurred and the applicable portion of Consultant's Fee that has been earned during the prior on-week period.  Each weekly invoice will be payable by the next weekly reconciliation date, unless disputed by Merchant. |
| | (C) | Within thirty (30) days after the Sale Termination Date, the parties will complete a final reconciliation of the Gross Proceeds from the Sale, the expenses incurred and the fee payable to Consultant (the "Final Reconciliation") and pay any amounts due under the Consulting Agreement. |
| **Conduct of Sale and Other Matters** | (A) | Consultant will consult with Merchant, and Merchant will select and retain all Store Employees to be utilized as part of the Sale during the Sale Term. |
| | (B) | Merchant will be solely liable for all Sale Expenses as well as all taxes, costs, expenses, accounts payable and other liabilities relating to the Sale, the Stores, Store Employees and Merchant's business operations during the Sale, including all occupancy expenses. |
| | (C) | Merchant will prepare and process all reporting forms, certificates, reports and other documentation required in connection with the payment of all applicable taxes for the Stores to the appropriate taxing authorities. Merchant will collect all sales taxes and Merchant will pay the same to the appropriate taxing authorities in accordance with the applicable law. |
| | (D) | All Sale of Merchandise during the Sale Term shall be made in the name, and on behalf, of Merchant. |
| | (E) | All Sale of Merchandise during the Sale Term shall be "final sale" and "as is," and all advertisements and Sale receipts will reflect the |

9

| TERM | CONSULTING AGREEMENT |
|---|---|
| | (F) same; provided, that during the Soft Sale Period, the foregoing shall only apply to certain limited categories (e.g., clearance items). |
| | (F) Merchant hereby permits the Sale to be, and shall ensure that the Sale otherwise may be, advertised as a "store closing," "sale on everything," "everything must go," or similar-themed sale. |
| | (G) During the Sale, and until the Final Reconciliation is complete and all obligations under the Consulting Agreement have been satisfied, Merchant and Consultant shall have reasonable access to review and audit each other's records with respect to Gross Proceeds, expenses, and other sale-related items. The Parties shall cooperate in good faith to resolve any disputes with regard to such reconciliation. |
| **Licensed Goods** | (A) Subject to agreement of Merchant, Consultant may deliver to any Store certain items of merchandise (the "<u>Licensed Goods</u>") of like kind and quality to the Merchandise in the Stores to be sold during the Sale. The Licensed Goods shall remain the sole property of the Consultant until sold. Merchant acknowledges that it does not acquire any property right or security interest in such Licensed Goods and hereby grants Consultant a first priority security interest in the Licensed Goods which security interest shall be deemed perfected without the requirement of filing Uniform Commercial Code financing statements or providing notifications to any prior secured parties. |
| | (B) Merchant shall utilize distinct SKU's or other means in order to distinguish the Licensed Goods from other Merchandise at the Stores. The process for such shall be mutually acceptable to the Parties. Merchant shall collect the Gross Proceeds from the sale of the Licensed Goods. Merchant shall distribute the Gross Proceeds of such Licensed Goods to Consultant less a fee of seven and one half percent (7.5%) to Merchant as part of the weekly reconciliation hereunder. No other fees under the Consulting Agreement will apply to the sale of Licensed Goods. |
| | (C) Immediately following the Sale Termination Date, Consultant shall remove the remaining Licensed Goods, if any, from the Stores. As part of the Final Reconciliation, Consultant and Merchant shall jointly prepare a final reconciliation of the sale of Licensed Goods, including a summary of Gross Proceeds, expenses incurred (including the cost of goods sold, shipping, ticketing, etc.), and any amounts paid Consultant pursuant to Section 13.2. Consultant shall submit invoices or other reasonable documentation to Merchant as |

| TERM | CONSULTING AGREEMENT |
|---|---|
| | part of such Final Reconciliation setting forth expenses it has incurred with respect to the sale of the Licensed Goods. Upon completion of the Final Reconciliation, the Parties shall pay any amounts remaining to equal (a) payments to Consultant of its expenses related to the sale of the Licensed Goods and (b) the fee for Merchant related to the sale of the Licensed Goods. |
| **Insurance** | Merchant shall maintain throughout the Sale Term, liability insurance policies (including, but not limited to, product liability, comprehensive public liability insurance and auto liability insurance) covering injuries to persons and property in or in connection with Merchant's operation of the Stores, and shall cause Consultant to be an additional insured with respect to all such policies. Merchant shall be responsible for the payment of all deductibles, self-insurance and other amounts payable in connection with any claim asserted under such policies, except for any claims arising directly from the negligence or willful misconduct of Consultant or consultant Personnel. |
| **Indemnification** | (A)  Consultant will reimburse, indemnify, defend and hold Merchant and its officers, directors, agents and employees, harmless from and against any damage, loss, expense (including reasonable attorneys' fees) or penalty, or any claim or action therefor, by or on behalf of any person, arising out of the performance, failure of performance or breach of the Consulting Agreement, or due to any acts or omissions by the Consultant or its personnel, Supervisors or other agents ("Consultant Personnel"), including but not limited to breaches or violations of human rights legislation and, the Consultant Personnel's payroll claims wage claims, claims for taxes required to be withheld from wages, social security, etc.), unemployment compensation claims, or actions taken by Consultant or Consultant's Personnel.<br><br>(B)  Merchant will indemnify and hold Consultant and its agents, Personnel, principals, and the Supervisors harmless from and against:<br><br>(1) all damages, fines, penalties, losses, claims or expenses (including, without limitation, reasonable attorneys' fees) that Consultant may incur or sustain arising out of Merchant's failure to pay over to the appropriate taxing authority any taxes required to be paid by Merchant during the Sale Term in accordance with applicable law or pay any liability referred to in Section 10.1 of the Consulting Agreement; and |

| TERM | CONSULTING AGREEMENT |
|------|----------------------|
|      | (2) all liabilities, claims, demands, damages, costs, and expenses (including reasonable attorneys' fees) arising from or related to the (i) negligent acts or omissions of Merchant or its agents, employees, in connection with the Sale or (ii) the breach by Merchant of any of its obligations under the Consulting Agreement. |

## III.   The Sale Procedures

16.     The Consultant will effectuate the Sale in accordance with the Sale Procedures. The Debtors have determined, in the sound exercise of their business judgment and in consultation with their advisors, that the Sale Procedures provide the best and most efficient means of selling the Offered Assets to maximize the value to their estates. The Sale Procedures are substantially similar to sale procedures approved in this Court and other courts in this District.

17.     Certain jurisdictions in which the Debtors operate stores have or may have licensing or other requirements governing the conduct of store closing, liquidation, or other inventory clearance sales, including (but not limited to) state and local laws, statutes, rules, regulations, and ordinances (the "Liquidation Sale Laws").  The Liquidation Sale Laws may establish licensing, permitting, or bonding requirements, waiting periods, time limits, and bulk sale restrictions and augmentation limitations that would otherwise apply to the Sale.  Such requirements hamper the Debtors' ability to maximize value in selling their inventory.  The Debtors intend to conduct the Sale in accordance with the Sale Procedures without complying with the Liquidation Sale Laws (except as set forth in the Sale Procedures).

18.     In addition, many U.S. states in which the Debtors operate have laws and regulations that require the Debtors to pay an employee substantially contemporaneously with his or her termination (the "Fast Pay Laws" and together with the Liquidation Sale Laws, the "Applicable Sale Laws"). These laws often require payment to occur immediately or within a

period of only a few days from the date such employee is terminated. The nature of the Sale contemplated by this Motion will result in all associate and store manager employees being terminated during the store closings. To be clear, the Debtors intend to pay their terminated employees as expeditiously as possible and under normal payment procedures. However, the Debtors' payroll systems are unable to process the payroll information associated with the terminations anticipated in a manner that will be compliant with the Fast Pay Laws as the Store Closings. Moreover, the large number of concurrent terminations also puts at risk the Debtors' ability to comply with the Fast Pay Laws. Under ordinary circumstances, the Debtors' payroll department is able to coordinate delivery of final checks to coincide with an employee's final day of work where required by state law. This process requires the Debtors' payroll department to calculate individual termination payments, prepare each termination payment check, obtain authorization for each such check, and then prepare each such check for mailing. Given the number of employees who will be terminated in connection with the store closings, this process could take several days, making compliance with the Fast Pay Laws burdensome to the Debtors' estates, if not impossible and thus the Debtors seek a waiver of strict compliance with the Fast Pay Laws.

19.    Similarly, the Debtors request a waiver of any contractual restrictions that could otherwise inhibit or prevent the Debtors from maximizing value for creditors through the Sale. In certain cases, the contemplated Sale may be inconsistent with certain provisions of leases, subleases, or other documents with respect to the premises in which the Debtors operate, including (without limitation) reciprocal easement agreements, agreements containing covenants, conditions, and restrictions (including, without limitation, "go dark" provisions, GOB/liquidation sale, and landlord recapture rights), or other similar documents or provisions. Such restrictions would also hamper the Debtors' ability to maximize value in selling their inventory.

20.    The Debtors also request that no entity, including, without limitation, utilities, landlords, creditors, and all persons acting for or on their behalf shall be permitted to interfere with or otherwise impede the conduct of the Sale, or institute any action against the Debtors in any court (other than in this Court) or before any administrative body that in any way directly or indirectly interferes with, obstructs, or otherwise impedes the conduct of the Sale or the advertising and promotion (including through the posting of signs) of the Sale.  An overview of the material terms of the Sale Procedures is set forth below.[5]

| SALE PROCEDURES |
| --- |
| (i)    The Sale will be conducted during normal business hours or such hours as otherwise permitted by the applicable unexpired lease. |
| (ii)    The Sale shall be conducted in accordance with applicable state and local "Blue Laws", where applicable, so that no Sale shall be conducted on Sunday unless the Merchant had been operating such Store on a Sunday prior to the commencement of the Sale. |
| (iii)    On "shopping center" property, the Consultant shall not distribute handbills, leaflets or other written materials to customers outside of any Stores' premises, unless permitted by the lease or, if distribution is customary in the "shopping center" in which such Store is located; *provided* that the Consultant may solicit customers in the Stores themselves. On "shopping center" property, the Consultant shall not use any flashing lights or amplified sound to advertise the Sale or solicit customers, except as permitted under the applicable lease or agreed to by the landlord. |
| (iv)    At the conclusion of the Sale, the Consultant shall vacate the Stores; *provided* that Consultant may abandon any remaining property, including any Store signage or furniture, fixtures and equipment (including, but not limited to, machinery, rolling stock, office equipment and personal property, and conveyor systems and racking) ("FF&E") not sold in the Sale at the conclusion of the Sale (the "Termination Date"), without cost or liability of any kind to the Consultant. The Consultant shall notify the Merchant of its intention to abandon any FF&E at least two (2) days prior to the Termination Date. The Merchant will have the option to remove the FF&E, at its own cost prior to the Termination Date. Any abandoned FF&E left in a Closing Store after a lease is rejected shall be deemed abandoned to the landlord having a right to dispose of the same as the landlord chooses without any liability whatsoever on the part of the landlord to any party. For the avoidance of doubt, as of the Termination Date, the Consultant may abandon, in |

---

[5] The following summary chart is for the convenience of the Court and parties.  To the extent this summary conflicts with the Sale Procedures, the Sale Procedures for the applicable store shall govern. Capitalized terms used but not defined in the following summary shall have the meaning ascribed in the Consulting Agreement.

| **SALE PROCEDURES** |
|---|

place and without further responsibility or liability of any kind, any FF&E.

(v)     The Debtors and the Consultant may advertise the Sale as "store closing", "sale on everything", "everything must go", "everything on sale", "going-out-of-business" or similar-themed sales. The Debtors and the Consultant may also have a "countdown to closing" sign prominently displayed in a manner consistent with these Sale Procedures. All signs, banners, ads and other advertising material, promotions, and campaigns will be approved by the Merchant, prior to purchase, in accordance with the Consulting Agreement.

(vi)    The Consultant shall be permitted to utilize sign-walkers, display, hanging signs, and interior banners in connection with the Sale; *provided* that such sign walkers, display, window, hanging signs, and interior banners shall be professionally produced and hung in a professional manner. The Merchant and Consultant shall not use neon or day-glo on its sign walkers, display, hanging signs, or interior banners. Furthermore, with respect to enclosed mall locations, no exterior signs or signs in common areas of a mall shall be used unless otherwise expressly permitted in these Sale Procedures. In addition, the Merchant and Consultant shall be permitted to utilize exterior banners at (i) non-enclosed mall Stores and (ii) enclosed mall Stores to the extent the entrance to the applicable Store does not require entry into the enclosed mall common area; *provided*, however, that such banners shall be located or hung so as to make clear that the Sale is being conducted only at the affected Store, and shall not be wider than the storefront of the Store. In addition, the Merchant and Consultant shall be permitted to utilize sign walkers in a safe and professional manner and in accordance with the terms of the Order. Nothing contained in these Sale Procedures shall be construed to create or impose upon the Debtors or the Consultant any additional restrictions not contained in the applicable lease agreement.

(vii)   Conspicuous signs shall be posted in the cash register areas of each of the affected Stores to effect that "all sales are final."

(viii)  Except with respect to the hanging of exterior banners, the Consultant shall not make any alterations to the storefront or exterior walls of any Stores, except as authorized by the applicable lease.

(ix)    Debtors and the Consultant shall not make any alterations to interior or exterior Store lighting, except as authorized by the applicable lease. No property of the landlord of a Store shall be removed or sold during the Sale. The hanging of exterior banners or in-Store signage and banners shall not constitute an alteration to a Store.

(x)     The Debtors and the Consultant shall keep Store premises and surrounding areas clear and orderly consistent with present practices.

(xi)    The Consultant, at the direction of the Debtors, and the landlord of any Store are authorized to enter into Side Letters without further order of the Court, provided that such agreements do not have a material adverse effect on the Debtors or their estates.

| SALE PROCEDURES |
|---|
| (xii) Subject to the provisions of the Consulting Agreement, the Consultant shall have the right to use and sell all FF&E owned by the Merchant. The Consultant may advertise the sale of the FF&E in a manner consistent with these guidelines and the Consulting Agreement. The purchasers of any FF&E sold during the sale shall be permitted to remove the FF&E either through delivery entrances, service areas, the back or alternative shipping areas at any time, or through other areas after applicable business hours, provided, however that the foregoing shall not apply to de minimis FF&E sales made whereby the item can be carried out of the Store in a shopping bag or cart. For the avoidance of doubt, as of the Sale Termination Date, the Debtors and the Consultant may abandon, in place and without further responsibility, any FF&E or other remaining property. |
| (xiii) At the conclusion of the Sale at each Store, pending assumption or rejection of applicable leases, the landlords of the Stores shall have reasonable access to the Stores' premises as set forth in the applicable leases. The Merchant, Consultant and their agents and representatives shall continue to have access to the Stores as provided for in the Consulting Agreement. |
| (xiv) The rights of landlords against Merchant for any damages to a Store shall be reserved in accordance with the provisions of the applicable lease and applicable law. |
| (xv) An unexpired nonresidential real property lease will not be deemed rejected by reason of a Store Closing or the adoption of the Sale Procedures. |

## IV.   Customer Programs[6]

21.     The Sale requires that the Debtors make certain modifications to their customer programs to reflect new realities.  Accordingly, the Debtors intend to implement the following changes, which will be clearly posted for customers to see at cash registers and on the Debtors' website for the duration of the Sale.[7]

---

[6] As set forth the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Maintain and Administer Their Existing Customer Programs and Honor Certain Prepetition Obligations Related Thereto and (II) Granting Related* Relief (the "Customer Programs Motion"), beginning on May 2, 2024, the Debtors transitioned to a full no return "all sales final" policy both online and in stores (which was previously limited to certain retail stores). Thus, as of May 2, 2024, except as required by applicable law, the Debtors no longer maintain a return, refund, and exchange policy.  However, the Debtors intend to honor their prior return policy for any applicable purchases made prior to May 2, 2024 in accordance with the terms of that policy.

[7] In the event that the Debtors locate a buyer for a going concern transaction, however, the Debtors reserve the right to continue their customer programs for a longer period of time.

- ***Store Credits/Gift Cards/Gift Certificates***.  To the extent not already expired or subject to an earlier expiration by their terms or applicable law, the Debtors will continue to accept validly-issued gift cards, store credits, and gift certificates in their retail stores and online, in the ordinary course, in each case only where issued prior to the Petition Date through June 7, 2024.  After June 7, 2024, the Debtors will no longer accept gift cards, store credits, or gift certificates and such gift cards, store credits, and/or gift certificates will be deemed to have no remaining value.  Notwithstanding any policy or law to the contrary, the gift cards, store credits, and/or gift certificates are not redeemable for cash at any time. The Debtors will post notice of the change to the limitation of use of the gift cards, store credits, and gift certificates on the Sam Ash Music eCommerce website, the bankruptcy case website, at cash registers in their retail locations, and through the Sam Ash Music social media channels.

- ***Latent Defects***.  The Debtors shall comply with all state and federal laws relating to implied warranties for latent defects, and such laws are not superseded by the Sale or the use of the terms "as is" or "final sale," as set forth in the Interim and Final Orders.

## V.    Abandonment of Burdensome Property

22.    In effectuating the Sale, the Debtors intend to liquidate all Offered Assets, as set forth herein.  The Debtors may determine, however, in their business judgment, that certain personal property, Merchandise, and FF&E (the "Burdensome Property") will be difficult or expensive to remove, ship, or store, such that the economic benefits of removing, selling, shipping, or storing some or all of the Burdensome Property will be exceeded by the attendant costs thereof. To the extent the Burdensome Property exceeds the scope of the property abandoned pursuant to the Sale Procedures—such as Burdensome Property held by shippers or other agents of the Debtors—the Debtors request the Court's approval to abandon any Burdensome Property for the benefit of their estates and creditors.

## Basis for Relief Requested

## I.    The Court Should Authorize the Assumption of the Consulting Agreement

23.    Section 365(a) of the Bankruptcy Code provides, in pertinent part, that a debtor in possession, "subject to the court's approval, may assume or reject any executory contract or [unexpired] lease of the debtor." 11 U.S.C. § 365(a). The standard governing bankruptcy court

approval of a debtor's decision to assume or reject an executory contract or unexpired lease is whether the debtor's reasonable business judgment supports assumption or rejection. *In re Nickels Midway Pier, LLC,* 341 B.R. 486, 493 (Bankr. D.N.J. 2006) (finding that "a bankruptcy court should defer to a debtor's decision that rejection of a contract would be advantageous unless the decision is so unreasonable that it could not be based on sound business judgment."); *see also In re HQ Glob. Holdings, Inc.*, 290 B.R. 507, 511 (Bankr. D. Del. 2003) (finding that debtor's decision to assume or reject an executory contract is governed by the business judgement standard and it can only be overturned if the decision was a product of bad faith, whim or caprice).

24.    The business judgment test "requires only that the trustee [or debtor in possession] demonstrate that [assumption] or rejection of the contract will benefit the estate." *Wheeling-Pittsburgh Steel Corp, v. West Penn Power Co., (In re Wheeling-Pittsburgh Steel Corp.)*, 72 B.R. 845, 846 (Bankr. W.D. Pa. 1987). Any more exacting scrutiny would slow the administration of a debtor's estate and increase costs, interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten a court's ability to control a case impartially. *See Richmond Leasing Co. v. Capital Bank*, 162 F.2d 1303, 1311 (5th Cir. 1985).

25.    Courts hearing chapter 11 cases filed by retailers have recently approved the assumption and/or approval of similar consulting agreements. *See, e.g.*, *In re Bed Bath & Beyond, Inc.,* 23-13359 (VFP) (Bankr. D.N.J. June 7, 2023) (authorizing assumption of consulting agreement); *In re Christopher & Banks Corporation*, No. 21-10269 (ABA) (Bankr. D.N.J. Feb. 8, 2021) (same); *In re RTW Retailwinds, Inc.*, No. 20-18445 (JKS) (Bankr. D.N.J. Aug. 8, 2020) (same); *In re SLT Holdco, Inc.*, No. 20-18368 (MBK) (Bankr. D.N.J. July 29, 2020) (same); *In re Modell's Sporting Goods, Inc*., No. 20-14179 (VFP) (Bankr. D.N.J. June 23, 2020) (same); *In re Pier 1 Imports, Inc.*, No. 20-30805 (KRH) (Bankr. E.D. Va. Mar. 17, 2020) (same); *In re Toys*

*"R" Us, Inc.*, No. 17-34665 (KLP) (Bankr. E.D. Va. Feb. 6, 2018) (same); *In re Vitamin World, Inc.*, No. 17-11933 (KJC) (Bankr. D. Del. Nov. 21, 2017) (same).

26.    Here, the Debtors have exercised their sound business judgment in determining to assume the Consulting Agreements. By continuing the engagement of the Consultant—the Debtors' previous store closing liquidator—the Debtors determined that they could capitalize on the knowledge of a consultant already familiar with the Debtors' liquidation performance in order to ultimately deliver the best results for the Debtors. Further, the Debtors believe that the terms set forth in the Consulting Agreements are fair and reasonable and present the best path for the Sale. Moreover, the Consultant has extensive expertise in conducting liquidation sales and will be able to effectively oversee and implement the Sales in an efficient and cost-effective manner.

27.    The Debtors submit that they have exercised reasonable business judgment in engaging the Consultant to conduct the Sale. Given the number of stores and the Consultant's in-depth knowledge of the Debtors' process of running the Sale, it is unlikely the Debtors could retain a liquidator able to conduct the process as efficiently and effectively as the Consultant. If the Consulting Agreement is not assumed on a final basis, the Sale would lose the benefit of the Consultant's oversight and might be delayed or suspended entirely, leading to loss of additional liquidity and increased administrative expense. Accordingly, the Debtors respectfully request that the Court authorize their assumption of the Consulting Agreement.

## II.    The Debtors Have a Valid Business Justification for the Sale

28.    Section 363(b)(1) of the Bankruptcy Code, which governs asset sales outside of a debtor's ordinary course of business, provides that "the trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). When selling assets outside of the ordinary course of business, a debtor must articulate a valid business justification to obtain court approval. *See, e.g., Myers v. Martin (In re Martin)*, 91

F.3d 389, 395 (3d Cir. 1996) (citation omitted); *In re Abbotts Dairies, Inc.*, 788 F.2d 143, 147-48

(3d Cir. 1986). When a debtor demonstrates a valid business justification for a decision, a strong

presumption arises "that in making [the] business decision the directors of [the company] acted on

an informed basis, in good faith and in the honest belief that the action taken was in the best

interests of the company." *Off. Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re*

*Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1990) (holding that the Delaware business

judgment rule has "vitality by analogy" in chapter 11).

29.     Store closing or liquidation sales are a routine feature in retail chapter 11 cases.  *See*

*In re Ames Dept. Stores*, 136 B.R. 357, 359 (Bankr. S.D.N.Y. 1992) (noting that liquidation sales

are an important part of "overriding federal policy requiring [a] Debtor to maximize estate assets").

As such, bankruptcy courts in this jurisdiction have approved similar store liquidation sale

procedures.  *See In re Rite Aid Corporation,* No. 23-18993 (MBK) (Bankr. D.N.J. Jan. 29, 2024)

(authorizing procedures for store closing Sale under consulting agreement); *In re DirectBuy Home*

*Improvement, Inc.,* No. 23-19159 (SLM) (Bankr. D.N.J. Nov. 9, 2023) (same); *In re David's*

*Bridal, LLC, et al.,* Case No. 23-13131 (CMG) (Bankr. D.N.J. July 14, 2023) (same); *In re Bed*

*Bath & Beyond Inc., et al.,* Case No. 23-13359 (VFP) (Bankr. D.N.J. June 7, 2023) (same); *In re*

*Christopher & Banks Corporation, et al.*, No. 21-10269 (ABA) (Bankr. D.N.J. Feb. 8, 2021)

(same); *In re RTW Retailwinds, Inc., et al.*, No. 20-18445 (JKS) (Bankr. D.N.J. Aug. 8, 2020)

(same); *In re SLT Holdco, Inc., et al.,* No. 20-18368 (MBK) (Bankr. D.N.J. July 29, 2020) (same).[8]

30.     Sufficient business justification exists to approve the proposed Sales of the Closing

Store Assets under section 363(b)(1). While the Debtors intend to pursue a marketing process to

---

[8] Because of the voluminous nature of the orders cited herein, such orders have not been attached to this
motion.  Copies of these orders are available upon request to the Debtors' proposed counsel.

sell all or part of their assets on a going-concern basis, the Debtors require the flexibility to close

certain unprofitable or otherwise burdensome Stores during the pendency of their bankruptcy cases

and, ultimately a wind-down of their operations if a going concern buyer does not materialize.  The

Debtors believe that this dual-path process will best maximize value for all stakeholders.

31.    In addition, in consultation with their advisors, the Debtors determined that the

Offered Assets should be monetized for the benefit of the Debtors' estates and creditors.  There

are meaningful amounts of Merchandise, in the aggregate, that will be monetized most efficiently

and quickly through an orderly process conducted in consultation with an experienced liquidation

firm.  The Consultant has extensive expertise in conducting similar sales and can oversee, and

assist in the management and implementation of, the Sale in an efficient and cost-effective manner.

Given the number of stores and the Consultant's expertise and resources, the Debtors believe the

Consultant is best suited to conduct the process efficiently and effectively.

32.    Further, any Delay in consummating the Sale would diminish the recovery tied to

monetization of the store closures.  *First*, the Sale process drives revenue to the Debtors' estates,

offsetting fixed costs such as rent obligations.  *Second* and relatedly, the swift and orderly

commencement of Sale will allow the Debtors to timely reject the applicable store leases, and

therefore avoid the accrual of unnecessary administrative expenses on account of rent

payments.  Suspension of the Sale until entry of a final order may cause the Debtors to incur claims

for rent at many of these stores for another month, to the detriment of general unsecured creditors.

Under these circumstances, executing the Sale is a sound exercise of the Debtors' business

judgment.

III.    **The Court Should Approve the Sale Procedures**

33.    The Court may authorize the Debtors to consummate the Sale pursuant to sections

105(a) and 363(b) of the Bankruptcy Code. Section 363(b)(1) of the Bankruptcy Code provides,

in relevant part, that, "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Further, section 105(a) of the Bankruptcy Code provides, in relevant part, that, "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

34.      As discussed herein, pursuant to section 363(b) of the Bankruptcy Code, for the purpose of conducting the Sale, the Debtors need only show a legitimate business justification for the proposed action. *See, e.g., In re Martin*, 91 F.3d at 395 (citation omitted).

35.      In addition, the Court may authorize the Sale based on section 105(a) of the Bankruptcy Code. Section 105(a) codifies the Court's inherent equitable powers to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." Under section 105(a), courts may authorize any action that is essential to the continued operation of a debtor's businesses. *See In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) (holding that a court may permit pre-plan payments of prepetition obligations when essential to the continued operation of the debtor); *see also In re Fin. News Network Inc.*, 134 B.R. 732, 735–36 (Bankr. S.D.N.Y. 1991) (holding that the "'doctrine of necessity' stands for the principle that a bankruptcy court may allow pre-plan payments of prepetition obligations where such payments are critical to the debtor's organization").

36.      The relief requested by this Motion represents a sound exercise of the Debtors' business judgment, is necessary to avoid immediate and irreparable harm to the Debtors' estates and is justified under sections 105(a) and 363(b) of the Bankruptcy Code. The Debtors and their advisors believe that the Sale Procedures represent the most efficient and appropriate means of

maximizing the value of the Offered Assets, while balancing the potentially competing concerns of landlords and other parties in interest.

37.    Furthermore, ample business justification exists to conduct the Sale pursuant to the Sale Procedures. Prior to the Petition Date, the Debtors, with the assistance of their advisors, engaged in an extensive review of each of their stores to: (a) identify underperforming stores; (b) consider whether the store's performance can be improved by various initiatives, including through the negotiation of lease concessions with landlords; (c) determine which stores were candidates for downsizing; (d) assess the potential to consolidate certain stores within a reasonable proximity of one another; and (e) determine what stores should be closed promptly to eliminate their ongoing negative impact on the Debtors' financial performance and to improve the Debtors' liquidity. This process has resulted in the Debtors' decision, absent a qualified bid, to close all remaining stores.

38.    Courts in this and other districts have routinely approved sale guidelines in chapter 11 cases, and numerous courts have granted retail debtors authority to implement such procedures. See, e.g., *In re Rite Aid Corporation,* No. 23-18993 (MBK) (Bankr. D.N.J. Jan. 29, 2024) (authorizing procedures for store closing Sale under consulting agreement); *In re DirectBuy Home Improvement, Inc.,* No. 23-19159 (SLM) (Bankr. D.N.J. Nov. 9, 2023) (same); *In re David's Bridal, LLC, et al.,* Case No. 23-13131 (CMG) (Bankr. D.N.J. July 14, 2023) (same); *In re Bed Bath & Beyond Inc., et al.,* Case No. 23-13359 (VFP) (Bankr. D.N.J. June 7, 2023) (same); *In re Christopher & Banks Corporation, et al.*, No. 21-10269 (ABA) (Bankr. D.N.J. Feb. 8, 2021) (same); *In re RTW Retailwinds, Inc., et al.*, No. 20-18445 (JKS) (Bankr. D.N.J. Aug. 8, 2020) (same); *In re SLT Holdco, Inc., et al.,* No. 20-18368 (MBK) (Bankr. D.N.J. July 29, 2020) (same).[9]

---

[9] Because of the voluminous nature of the orders cited herein, such orders have not been attached to this motion.  Copies of these orders are available upon request to the Debtors' proposed counsel.

The Sale Procedures are substantially similar to the Sale Procedures approved in the foregoing cases.

**IV.    The Court Should Approve the Sale of Offered Assets Free and Clear of all Encumbrances or Other Interests Under Section 363(f) of the Bankruptcy Code**

39.    The Debtors request approval to sell the Offered Assets on a final "as is" basis, free and clear of any and all Encumbrances in accordance with section 363(f) of the Bankruptcy Code. A debtor in possession may sell property under sections 363(b) and 363(f) "free and clear of any interest in such property of an entity other than the estate" if any one of the following conditions is satisfied: (a) applicable non-bankruptcy law permits the sale of such property free and clear of such interest; (b) such entity consents; (c) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; (d) such interest is in bona fide dispute; or (e) such entity could be compelled, in a legal or equitable proceeding, to a money satisfaction of such interest. *See* 11 U.S.C. § 363(f); *see also Citicorp Homeowners Servs., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988) (noting that since section 363(f) of the Bankruptcy Code is written in the disjunctive, the court may approve a sale free and clear if any one subsection is met).  Moreover, the Third Circuit has indicated that a debtor possesses broad authority to sell assets free and clear of liens. *See In re TWA Inc.*, 322 F.3d 283, 289 (3d Cir. 2003).

40.    Although the term "any interest" is not defined in the Bankruptcy Code, the Third Circuit has noted that the trend in modern cases is toward "a broader interpretation which includes other obligations that may flow from ownership of the property." *Folger Adam Security, Inc. v. DeMatteis/MacGregor, JV*, 209 F.3d 252, 258–59 (3d Cir. 2000).  As the Fourth Circuit held in *In re Leckie Smokeless Coal Co.*, 99 F.3d 573, 581–82 (4th Cir. 1996) (cited with approval by the Third Circuit in *Folger Adam*), the scope of section 363(f) is not limited to *in rem* interests in a

debtor's assets.  Thus, a debtor can sell its assets under section 363(f) "free and clear of successor

liability that otherwise would have arisen under federal statute."  *Folger Adam*, 209 F.3d at 258.

41.     The Debtors anticipate that, to the extent there are liens on the Offered Assets, the

holders of all such liens will consent to the Sale because they provide the most effective, efficient,

and time-sensitive approach to realizing proceeds for, among other things, the repayment of

amounts due to such parties.  The Debtors' prepetition secured lender/postpetition DIP lender

consents to the relief requested herein.  Any and all liens on the Offered Assets sold under the Sale

would attach to the remaining net proceeds of such Sale with the same force, effect, and priority

as such liens currently have on these assets, subject to the rights and defenses, if any, of the Debtors

and of any party-in-interest with respect thereto.

42.     Moreover, all identified lienholders will receive notice of the Sale and will be given

sufficient opportunity to object to the relief requested on a final basis.  Any such entity that does

not object to the Sale should be deemed to have consented.  *See Futuresource LLC v. Reuters Ltd.*,

312 F.3d 281, 285-86 (7th Cir. 2002) ("It is true that the Bankruptcy Code limits the conditions

under which an interest can be extinguished by a bankruptcy sale, but one of those conditions is

the consent of the interest holder, and lack of objection (provided of course there is notice) counts

as consent.") (internal citations omitted).

43.     Accordingly, the Debtors submit that the sale of the Offered Assets satisfies the

statutory requirements of section 363(f) of the Bankruptcy Code and should, therefore, be free and

clear of any Encumbrances.

**V.     The Court Should Waive Compliance with Applicable Sale Laws and Approve
Dispute Resolution Procedures**

44.     The Debtors' ability to conduct the Sales in accordance with the Sale Procedures

and without complying with Applicable State Laws is critical to the Sales' success. Although the

Debtors intend to comply with state and local health and safety laws and consumer protection laws in conducting the Sales, many Liquidation Sale Laws require special and cumbersome licenses, waiting periods, time limits, and other procedures for store closing, liquidation, or similar sales. Additionally, compliance with Fast Pay Laws would require the Debtors to pay terminated employees within a time frame that would be detrimental to the conduct of these chapter 11 cases, if not impossible.

45.    To eliminate the time, delay, and expense associated with the administrative procedures necessary to comply with the Applicable Sale Laws, the Debtors propose the Sale Procedures as a way to streamline the administrative burdens on their estates while still adequately protecting the broad and varied interests of both landlords and applicable governmental agencies charged with enforcing any Applicable Sale Laws that may apply. As such, the Debtors believe the Sale Procedures mitigate any concerns that their landlords or governmental agencies may raise with respect to the Sale, and therefore, the below requested relief is in compliance with any applicable Liquidation Sale Laws.

46.    Creditors and the public interest are adequately protected by notice of this Motion and the ongoing jurisdiction and supervision of this Court because the Debtors are only seeking interim relief, and parties in interest will be able to raise any further issues at the final hearing. Moreover, 28 U.S.C. § 959, which requires debtors to comply with state and other laws in performance of their duties, does not apply to the Sale. *See, e.g.*, *In re Borne Chemical Co.*, 54 B.R. 126, 135 (Bankr. D.N.J. 1984) (holding that 28 U.S.C. § 959(b) is only applicable when property is being managed or operated for the purpose of continuing operations). As such, the Debtors believe the Sale Procedures mitigate any concerns that their landlords, other creditors, or

governmental agencies may raise with respect to the Sale, and therefore, the waiver of certain state

and local laws and lease provisions is appropriate.

47.    Further, courts have consistently recognized, with limited exception, that federal

bankruptcy law preempts state and local laws that contravene the underlying policies of the

Bankruptcy Code.  *See Belculfine v. Aloe (In re Shenango Group. Inc.)*, 186 B.R. 623, 628 (Bankr.

W.D. Pa. 1995) ("Trustees and debtors-in-possession have unique fiduciary and legal obligations

pursuant to the bankruptcy code . . . .  [A] state statute . . . cannot place burdens on [a debtor]

where the result would contradict the priorities established by the federal bankruptcy code."), *aff'd*,

112 F.3d 633 (3d Cir. 1997).

48.    Courts in some jurisdictions have found that preemption of state law is not

appropriate if the laws deal with public health and safety.  *See Baker & Drake. Inc. v. Pub. Serv.

Comm'n of Nev. (In re Baker & Drake. Inc.)*, 35 F.3d 1348, 1353–54 (9th Cir. 1994) (holding that

Bankruptcy Code did not preempt state law prohibiting taxicab leasing that was promulgated in

part as public safety measure).  However, preemption is appropriate where, as is the case here, the

laws involved concern economic regulation and not the protection of public health and safety.  *See

id.* at 1353 (finding that "federal bankruptcy preemption is more likely . . . where a state statute is

concerned with economic regulation rather than with protecting the public health and safety").

49.    Under the circumstances of these chapter 11 cases, enforcing the strict requirements

of the Liquidation Sale Laws would undermine the fundamental purpose of section 363(b) of the

Bankruptcy Code by placing constraints on the Debtors' ability to maximize estate assets for the

benefit of creditors. Accordingly, authorizing the Sales without the delays and burdens associated

with obtaining various state and local licenses, observing state and local waiting periods or time

limits, and/or satisfying any additional requirements with respect to advertising, sales, and similar

items is necessary and appropriate. The Debtors do not seek a general waiver of all state and local

law requirements, but only those that apply specifically to retail liquidation sales. Indeed, the

requested waiver is narrowly tailored to facilitate the successful consummation of the Sale.

Moreover, the Debtors will comply with applicable state and local public health and safety laws,

and applicable tax, labor, employment, environmental, and consumer protection laws, including

consumer laws regulating deceptive practices and false advertising. Finally, the dispute resolution

procedures will provide an ordered means for resolving any disputes arising between the Debtors

and any governmental units with respect to the applicability of any Liquidation Sale Laws, and

should therefore be approved.

50.     Further, courts in this district have recognized that the Bankruptcy Code preempts

certain state laws and have granted relief similar to that requested herein.  *See In re Rite Aid*

*Corporation,* No. 23-18993 (MBK) (Bankr. D.N.J. Jan. 29, 2024) (authorizing debtors to conduct

store closing Sale under the terms of the order without further approval, license, or permit of any

governmental unit required); *In re DirectBuy Home Improvement, Inc.,* No. 23-19159 (SLM)

(Bankr. D.N.J. Nov. 9, 2023) (same); *In re David's Bridal, LLC, et al.,* Case No. 23-13131 (CMG)

(Bankr. D.N.J. July 14, 2023) (same); *In re Bed Bath & Beyond Inc., et al.,* Case No. 23-13359

(VFP) (Bankr. D.N.J. June 7, 2023) (same); *See, e.g., In re Christopher & Banks Corporation, et*

*al.*, No. 21-10269 (ABA) (Bankr. D.N.J. Feb. 8, 2021) (same); *In re RTW Retailwinds, Inc., et al.*,

No. 20-18445 (JKS) (Bankr. D.N.J. Aug. 8, 2020) (same); *In re SLT Holdco, Inc., et al.,* No. 20-

18368 (MBK) (Bankr. D.N.J. July 29, 2020) (same).[10]

---

[10] Because of the voluminous nature of the orders cited herein, such orders have not been attached to this
motion.  Copies of these orders are available upon request to the Debtors' proposed counsel.

51.     Courts have also granted similar relief from Fast Pay Laws in other bankruptcy cases under similar circumstances. *See, e.g., In re DirectBuy Home Improvement, Inc,* No. 23-19159 (SLM) (Bankr. D.N.J. Dec. 22, 2023) (granting relief from federal, state, or local laws including "any fast pay laws" in connection with store closing sales)); *In re Bed Bath & Beyond Inc.*, No. 23-13359 (VFP) (Bankr. D.N.J. June 7, 2023) (same); *In re Z Gallerie, LLC*, No. 19-10488 (LSS) (Bankr. D. Del. Apr. 9, 2019) (same); *In re Things Remembered, Inc.*, No. 19-10234 (KG) (Bankr. D. Del. Feb. 28, 2019) (same); *In re Charming Charlie Holdings, Inc*., No. 17-12906 (CSS) D. Del. Oct. 13, 2016) (same); *In re Vestis Retail Grp, LLC*, No. 16-10971 (LSS) (Bankr. D. Del. May 16, 2016) (same).[11]

## VI.     The Court Should Waive Compliance With Restriction in the Debtors' Leases

52.     Certain of the Debtors' leases may contain provisions purporting to restrict or prohibit the Debtors from conducting store closing, liquidation, or similar sales.  Such provisions have been held to be unenforceable in chapter 11 cases as they constitute an impermissible restraint on a debtor's ability to properly administer its reorganization case and maximize the value of its assets under section 363 of the Bankruptcy Code.  *See In re Ames Dep't Stores*, 136 B.R. at 359 (noting that if a conflict existed between a restrictive covenant prohibiting a liquidation sale and "a debtor-in-possession's duty to maximize assets for the estate, the latter would certainly take precedent [sic] upon the filing of a bankruptcy petition"); *In re R. H. Macy and Co., Inc.*, 170 B.R. 69, 73–74 (Bankr. S.D.N.Y. 1994) (holding that the lessor could not recover damages for breach of a covenant to remain open throughout the lease term because the debtor had a duty to maximize the value to the estate and the debtor fulfilled this obligation by holding a store closing sale and

---

[11] Because of the voluminous nature of the orders cited herein, such orders have not been attached to this motion.  Copies of these orders are available upon request to the Debtors' proposed counsel.

closing the store); *In re Tobago Bay Trading Co.*, 112 B.R. 463, 467–68 (Bankr. N.D. Ga., 1990) (finding that a debtor's efforts to reorganize would be significantly impaired to the detriment of creditors if lease provisions prohibiting a debtor from liquidating its inventory were enforced); *In re Lisbon Shops, Inc.*, 24 B.R. 693, 695 (Bankr. E.D. Mo. 1982) (holding restrictive lease provision unenforceable in chapter 11 case where debtor sought to conduct a liquidation sale).

53.     Courts in this district have held that restrictive lease provisions affecting store liquidation sales in chapter 11 cases are unenforceable.  *See, e.g., In re Rite Aid Corp.,* 23-18993 (Bankr. D.N.J. Jan. 29, 2024) (ordering that restrictive lease provisions shall not be enforceable in conjunction with store closing sales); *In re DirectBuy Home Improvement, Inc.,* No. 23-19159 (Bankr. D.N.J. Nov. 9, 2023) (same); *In re Bed Bath & Beyond Inc.*, No. 23-13359 (VFP) (Bankr. D.N.J. June 7, 2023) (same); *In re Christopher & Banks Corporation, et al.*, No. 21-10269 (ABA) (Bankr. D.N.J. Feb. 8, 2021) (ordering that restrictive lease provisions shall not be enforceable in conjunction with Sale); *In re RTW Retailwinds, Inc., et al.*, No. 20-18445 (JKS) (Bankr. D.N.J. Aug. 8, 2020) (same); *In re Modell's Sporting Goods Inc., et al.,* No. 20-14179 (VFP) (Bankr. D.N.J. June 24, 2020) (same); *In re SLT Holdco, Inc., et al.,* No. 20-18368 (MBK) (Bankr. D.N.J. July 29, 2020) (same).[12]

54.     To the extent that such provisions or restrictions exist in any of the leases of the stores subject to the Sale, the Debtors request that the Court authorize the Debtors and/or the Consultant to conduct the Sale without interference by any landlords or other persons affected, directly or indirectly, by such Sale.

---

[12] Because of the voluminous nature of the orders cited herein, such orders have not been attached to this motion.  Copies of these orders are available upon request to the Debtors' proposed counsel.

## VII.    The Court Should Approve the Abandonment of Certain Property in Connection With the Sale

55.    After notice and a hearing, a debtor "may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate."  11 U.S.C. § 554(a); *see also Hanover Ins. Co. v. Tyco Indus., Inc.*, 500 F.2d 654, 657 (3d Cir. 1974) (stating that a trustee "may abandon his claim to any asset, including a cause of action, he deems less valuable than the cost of asserting that claim").   The right to abandon property is virtually unfettered, unless: (a) abandonment of the property will contravene laws designed to protect public health and safety; or (b) the property poses an imminent threat to the public's welfare.  *See In re Midlantic Nat'l Bank*, 474 U.S. 494, 501 (1986).  Neither of these limitations is relevant here.

56.    The Debtors are seeking to the sell the FF&E remaining in the Stores.  However, the Debtors may determine that the costs associated with holding or selling certain FF&E exceeds the proceeds that will be realized upon its sale, or that such property is not sellable at all.  In such event, the property in question may be of inconsequential value and benefit to the estates and may be burdensome to retain.

57.    To maximize the value of the Debtors' assets and to minimize the costs to the estates, the Debtors request authority to abandon any of the FF&E or other property located at any of the Stores without incurring liability to any person or entity.  The Debtors further request that the landlord of each Store with any abandoned FF&E or other property without liability to any third parties.

58.    Notwithstanding the foregoing, the Debtors will utilize all commercially reasonable efforts to remove or cause to be removed any confidential or personal identifying information (which means information that, alone or in conjunction with other information, identifies an individual, including, but not limited to, an individual's name, social security number, date of birth,

government-issued identification number, account number, and credit or debit card number) in any

of the Debtors' hardware, software, computers, cash registers, or similar equipment that are to be

sold or abandoned.

## VIII. The Proposed Modifications to the Debtors' Customer Programs are Appropriate

59.     The Debtors have contemporaneously filed their Customer Programs Motion.  As

set forth in the Customer Programs Motion, given that the Debtors are pursuing a going concern

sale, they believe, at least initially, it is prudent to continue to honor certain of their customer

programs for a period of time. In the event that a going concern transaction does not materialize,

the Debtors must be able to modify their customer programs during the course of the Sale.  Thus,

the Debtors believe it is appropriate to give all parties with validly issued gift cards the opportunity

to utilize their gift cards, gift certificates, or store credit until June 7, 2024, thus providing

customers with ample opportunity to spend any remaining balances. The Debtors do not know the

identity of gift card holders, as most holders receive their gift certificates and gift cards as gifts

from the original purchaser.  Accordingly, the Debtors propose that providing notice of the updated

policy on the Sam Ash Music eCommerce website, the bankruptcy case website, at cash registers

in their retail locations, and through the Sam Ash Music social media channels.

60.     Courts in other jurisdictions authorizing sales or liquidations often set deadlines for

the use of gift cards.  *See, e.g., In re DirectBuy Home Improvement, Inc.,* No. 23-19159 (SLM)

(Bankr. D.N.J. Nov. 9, 2023) (authorizing the debtors to accept gift cards for the first 30 days of

the case); *In re Modell's Sporting Goods Inc., et al.,* No. 20-14179 (VFP) (Bankr. D.N.J. Mar. 13,

2020) (authorizing the debtors to accept gift cards for up to 90 days after entry of the store closing

sale order); (*In re Toys "R" Us, Inc.*, No. 17-34665 (KLP) (Bankr. E.D. Va. Mar. 22, 2018)

(authorizing the debtors to accept gift cards for 30 days following entry of the wind-down order);

*In re Skin Sense, Inc.*, 2017 WL 474317, at *4 (Bankr. E.D.N.C. Feb. 3, 2017) ("In cases involving

liquidating retailers, courts have implemented various approaches to allow consumers to redeem gift cards and to avoid the claims process, such as setting deadlines by which a gift card must be redeemed or establishing express conditions for redemption.") (citations omitted); *In re City Sports, Inc.*, 554 B.R. 329, 332 (Bankr. D. Del. 2016) (noting that gift cards were accepted at stores and redeemable for 30 days after entry of the order approving the sale of substantially all of the debtors' assets); *In re Sports Authority Holdings, Inc.*, No. 16-10527 (MFW) (Bankr. D. Del. May 24, 2016) (allowing customers to redeem prepetition gift cards for a 34-day period).

61.     Further, given the unknown identities of the gift card holders, only constructive notice of the deadline to use the gift cards is required. *See In re BGI, Inc.*, 476 B.R. 812, 821–23 (Bankr. S.D.N.Y. 2012) (finding that gift card holders were only entitled to constructive notice of the claims bar date and stating "gift cards, as their name illustrates, are not intended to be used by the purchaser but are instead intended as gifts, so even if the Debtors were able to identify the purchasers of the gift cards, they would have no way of tracing the ultimate recipients.").

62.     Courts in this district and elsewhere have also authorized restrictions on or the elimination of returns, exchanges, or refunds of good purchased post-petition. *See In re DirectBuy Home Improvement, Inc.,* No. 23-19159 (SLM) (Bankr. D.N.J. Nov. 9, 2023) (approving assumption, on a final basis, of consulting agreement that provided all sales were "as is" and final, with no returns, unless otherwise directed by the Debtor); *In re Christopher & Banks Corporation*, No. 21-10269 (ABA) (Bankr. D.N.J. Feb. 8, 2021) (same); *In re SLT Holdco, Inc., et al.,* No. 20-18368 (MBK) (Bankr. D.N.J. July 13, 2020) ("All sales of Merchandise and FF&E sold on or after the Petition Date shall be "as is" and shall be on a final basis with no Merchandise subject to return, exchange, or refund."); *In re Independent Pet Partners Holdings, LLC, et al.*, No. 23-10153 (LSS) (Bankr. D. Del. Feb. 8, 2023) (same); *In re Francesca's Holdings Corporation, et al.*, No. 20-

13076 (BLS) (Bankr. D. Del. Dec. 16, 2020) (same); *In re Century 21 Department Store, LLC, et al.*, No. 20-12097 (SCC) (Bankr. S.D.N.Y. Sept. 15, 2020) (same); *In re Forever 21, Inc., et al.*, No. 19-12122 (KG) (Bankr. D. Del. Oct. 28, 2019) (same).[13]

## Request Waiver of Stay

63.     To the extent that the relief sought in the Motion constitutes a use of property under section 363(b) of the Bankruptcy Code, the Debtors seek a waiver of the fourteen-day stay under Bankruptcy Rule 6004(h). Further, to the extent applicable, the Debtors request that the Court find that the provisions of Bankruptcy Rule 6003 are satisfied. As explained herein, the relief requested in this Motion is immediately necessary for the Debtors to be able to continue to operate their businesses and preserve the value of their estates.

## Waiver of Memorandum of Law

64.     The Debtors respectfully request that the Court waive the requirement to file a separate memorandum of law pursuant to Local Rule 9013-1(a)(3) because the legal basis upon which the Debtors rely is set forth herein and the Motion does not raise any novel issues of law.

## Reservation of Rights

65.     Notwithstanding anything to the contrary herein, nothing contained in this Motion or any actions taken pursuant to any order granting the relief requested by this Motion is intended or should be construed as (a) an admission as to the validity of any particular claim against the Debtors, (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds, (c) a promise or requirement to pay any particular claim, (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief

---

[13] Because of the voluminous nature of the orders cited herein, such orders have not been attached to this motion.  Copies of these orders are available upon request to the Debtors' proposed counsel.

requested by this Motion, (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code, (f) a waiver or limitation of the Debtors', or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the Motion are valid, and the rights of all parties are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

## No Prior Request

66.      No prior request for the relief sought in this Motion has been made to this or any other court.

## Notice

67.      The Debtors will provide notice of this Motion to the following parties or their respective counsel: (a) the Office of the U.S. Trustee for the District of New Jersey, Attn: Fran B. Steele, Esq. (Fran.B.Steele@usdoj.gov) and Peter J. D'Auria, Esq. (Peter.J.D'Auria@usdoj.gov); (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) counsel for Tiger Finance, Riemer & Braunstein LLP, Anthony B. Stumbo, Esq. and Steven E. Fox, Esq.; (d) the United States Attorney's Office for the District of New Jersey; (e) the Internal Revenue Service; (f) the offices of the attorneys general for the states in which the Debtors operate; (g) the National Association of Attorneys General; (h) the Consultant; (i) any known lienholder with a lien on any of the Offered Assets; (j) the Debtors' landlords; and (k) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

**WHEREFORE**, the Debtors respectfully request that the Court enter interim and final orders, in substantially the forms submitted herewith, granting the relief requested herein and such other relief as is just and proper under the circumstances.

[*Remainder of page left intentionally blank*]

DATED:  May 8, 2024                    Respectfully submitted,

                                       **COLE SCHOTZ P.C.**

                                       By:    */s/ Michael D. Sirota*
                                              Michael D. Sirota, Esq.
                                              Ryan T. Jareck, Esq.
                                              Matteo Percontino, Esq.
                                              Court Plaza North
                                              25 Main Street
                                              Hackensack, NJ 07601
                                               (201) 489-3000
                                               (201) 489-1536 Facsimile
                                              Email: msirota@coleschotz.com
                                                     rjareck@coleschotz.com
                                                     mpercontino@coleschotz.com

                                       *Proposed Counsel to Debtors and Debtors in*
                                       *Possession*

## EXHIBIT A

**Proposed Interim Order**

| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY** | |
| Caption in Compliance with D.N.J. LBR 9004-1(b)<br>**COLE SCHOTZ P.C.**<br>Court Plaza North<br>25 Main Street<br>P.O. Box 800<br>Hackensack, New Jersey 07602-0800<br>(201) 489-3000<br>(201) 489-1536 Facsimile<br>Michael D. Sirota, Esq.<br>msirota@coleschotz.com<br>Ryan T. Jareck, Esq.<br>rjareck@coleschotz.com<br>Matteo Percontino, Esq.<br>mpercontino@coleschotz.com<br>*Proposed Counsel to Debtors and Debtors in Possession* | |
| In re:<br><br>SAM ASH MUSIC CORPORATION, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 24-14727 (SLM)<br><br>Judge:<br><br>(Joint Administration Requested) |

### INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO ASSUME AND PERFORM UNDER THE CONSULTING AGREEMENT RELATED TO THE SALE OF INVENTORY, (II) APPROVING PROCEDURES FOR THE SALE OF INVENTORY, (III) APPROVING MODIFICATIONS TO CERTAIN CUSTOMER PROGRAMS, AND (IV) GRANTING RELATED RELIEF

The relief set forth on the following pages, numbered two (2) through twenty-seven (27),

is hereby **ORDERED**.

---

[1]  The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are: Sam Ash Music Corporation (3915); Samson Technologies Corp. (4062); Sam Ash Megastores, LLC (9955); Sam Ash California Megastores, LLC (3598); Sam Ash Florida Megastores, LLC (7276); Sam Ash Illinois Megastores, LLC (8966); Sam Ash Nevada Megastores, LLC (6399); Sam Ash New York Megastores, LLC (7753); Sam Ash New Jersey Megastores, LLC (8788); Sam Ash CT, LLC (5932); Sam Ash Music Marketing, LLC (2024); and Sam Ash Quikship Corp. (7410).  The location of debtor Sam Ash Music Corporation's principal place of business is 278 Duffy Avenue, P.O. Box 9047, Hicksville, NY 11802.

Page (2)
Debtors:            SAM ASH MUSIC CORPORATION, *et al.*
Case No.:           24-14727 (SLM)
Caption of Order:   INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO ASSUME
                    AND PERFORM UNDER THE CONSULTING AGREEMENT
                    RELATED TO THE SALE OF INVENTORY, (II) APPROVING
                    PROCEDURES FOR THE SALE OF INVENTORY, (III) APPROVING
                    MODIFICATIONS TO CERTAIN CUSTOMER PROGRAMS, AND (IV)
                    GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession

(collectively, the "Debtors") for entry of an interim order (this "Interim Order"), (a) authorizing

the Debtors to assume and perform under the Consulting Agreement, a copy of which is attached

hereto as **Exhibit 1**; (b) authorizing the Debtors to conduct closings or similarly themed sales at

the locations subject to the Consulting Agreement (the "Stores") in accordance with the terms of

the Sale Procedures attached hereto as **Exhibit 2**, with any such related Sale to be free and clear

of all Encumbrances; (c) approving modifications to certain customer programs, including the

return policy and acceptance of gift cards and store credits; (d) authorizing the sale or disposition

of the Offered Assets free and clear of Encumbrances; (e) authorizing the abandonment of certain

burdensome Merchandise, FF&E, and personal property; and (f) granting related relief, all as more

fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction

over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to*

*the Bankruptcy Court Under Title 11* of the United States District Court for the District of New

Jersey, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.); and this Court

having found that venue of this proceeding and the Motion in this district is proper pursuant to 28

U.S.C. §§ 1408 and 1409; and this Court having found that the Debtors' notice of the Motion and

opportunity for a hearing on the Motion were appropriate under the circumstances and no other

---

[2] Capitalized terms used but not defined herein have the meanings ascribed to them in the Motion.

Page (3)
Debtors:            SAM ASH MUSIC CORPORATION, *et al.*
Case No.:           24-14727 (SLM)
Caption of Order:   INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO ASSUME
                    AND PERFORM UNDER THE CONSULTING AGREEMENT
                    RELATED TO THE SALE OF INVENTORY, (II) APPROVING
                    PROCEDURES FOR THE SALE OF INVENTORY, (III) APPROVING
                    MODIFICATIONS TO CERTAIN CUSTOMER PROGRAMS, AND (IV)
                    GRANTING RELATED RELIEF

notice need be provided; and this Court having reviewed the Motion and having heard the

statements in support of the relief requested therein at a hearing before this Court (the "Hearing");

and this Court having determined that the legal and factual bases set forth in the Motion and at the

hearing establish just cause for the relief granted herein; and upon all of the proceedings had before

this Court; and after due deliberation and sufficient cause appearing therefor,

**THE COURT HEREBY FINDS AND DETERMINES THAT:**[3]

A.    The Debtors have sound business reasons for assuming the Consulting Agreement

and adopting the Sale Procedures, on an interim basis subject to the final hearing, as set forth in

the Motion and at the Hearing, and assuming the Consulting Agreement is a reasonable exercise

of the Debtors' business judgement and in the best interest of the Debtors and their estates.

B.    The Consulting Agreement attached to this Interim Order as Exhibit 1, was

negotiated, proposed, and entered into by the Consultant and the Debtors without collusion, in

good faith and from arm's length bargaining positions.

C.    The Sale Procedures, which are attached hereto as Exhibit 2, are reasonable and

appropriate, and are in the best interest of the Debtors' estates and the conduct of the Sale in

---

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

Page (4)
Debtors:            SAM ASH MUSIC CORPORATION, *et al.*
Case No.:           24-14727 (SLM)
Caption of Order:   INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO ASSUME
                    AND PERFORM UNDER THE CONSULTING AGREEMENT
                    RELATED TO THE SALE OF INVENTORY, (II) APPROVING
                    PROCEDURES FOR THE SALE OF INVENTORY, (III) APPROVING
                    MODIFICATIONS TO CERTAIN CUSTOMER PROGRAMS, AND (IV)
                    GRANTING RELATED RELIEF

accordance with the Sale Procedures will provide an efficient means for the Debtors to dispose of

the Offered Assets.

       D.       The relief set forth herein is necessary to avoid immediate and irreparable harm to

the Debtors and their estates and the Debtors have demonstrated good, sufficient and sound

business purposes and justifications for the relief approved herein.

       E.       The Sale is in the best interest of the Debtors' estates.

       F.       The Dispute Resolution Procedures (defined below) are fair and reasonable and

comply with applicable law.

       G.       The Debtors have represented that they intend to neither sell nor lease personally

identifiable information pursuant to the relief requested in the Motion, although the Consultant

will be authorized to distribute emails and promotional materials to the Debtors' customers

consistent with the Debtors' existing policies on the use of consumer information.

       H.       The entry of this Interim Order is in the best interests of the Debtors and their

estates, creditors, and interest holders and all other parties in interest herein; and now therefore it

is hereby

       **ORDERED THAT:**

       1.       The Motion is **GRANTED** on an interim basis as set forth herein.

Page (5)

| | |
|---|---|
| Debtors: | SAM ASH MUSIC CORPORATION, *et al.* |
| Case No.: | 24-14727 (SLM) |
| Caption of Order: | INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO ASSUME AND PERFORM UNDER THE CONSULTING AGREEMENT RELATED TO THE SALE OF INVENTORY, (II) APPROVING PROCEDURES FOR THE SALE OF INVENTORY, (III) APPROVING MODIFICATIONS TO CERTAIN CUSTOMER PROGRAMS, AND (IV) GRANTING RELATED RELIEF |

2.      The final hearing (the "Final Hearing") on the Motion shall be held on _____, **2024, at__:__ _.m., prevailing Eastern Time**.  Objections or responses to entry of a final order on the Motion shall be filed **on or before 4:00 p.m., prevailing Eastern Time, on _____, 2024**.  If no objections are filed to the Motion, this Court may enter an order approving the relief requested in the Motion on a final basis without further notice or hearing.

3.      To the extent any conflict between this Interim Order, the Sale Procedures, and the Consulting Agreement, the Sale Procedures shall control over the Consulting Agreement and the terms of this Interim Order shall control over the Sale Procedures and the Consulting Agreement. To the extent of any conflict between this Interim Order, the Sale Procedures, the Consulting Agreement, and a Side Letter (as defined below), subject to paragraph 45 hereof, the terms of the Side Letter shall control with respect to the Debtors and the applicable landlord.

## I.    Authority to Assume the Consulting Agreement

4.      The Debtors are authorized to assume and perform under the Consulting Agreement pursuant to sections 363 and 365 of the Bankruptcy Code, including (a) making payments required by the Consulting Agreement to the Consultant without the need for any application of the Consultant or a further order of the Court and (b) allowing the sale of Licensed Goods. Consultant's fees and expenses shall be paid from the gross proceeds of the Sale, without further order of the Court or adherence to any weekly, monthly or aggregate limitation in a debtor-in

Page (6)
| | |
|---|---|
| Debtors: | SAM ASH MUSIC CORPORATION, *et al.* |
| Case No.: | 24-14727 (SLM) |
| Caption of Order: | INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO ASSUME AND PERFORM UNDER THE CONSULTING AGREEMENT RELATED TO THE SALE OF INVENTORY, (II) APPROVING PROCEDURES FOR THE SALE OF INVENTORY, (III) APPROVING MODIFICATIONS TO CERTAIN CUSTOMER PROGRAMS, AND (IV) GRANTING RELATED RELIEF |

possession financing or cash collateral budget entered in connection with these Chapter 11 Cases, but shall be subject to the terms of the Consulting Agreement itself, including as to any expense budgets attached thereto.

5.      Subject to the restrictions set forth in this Interim Order, the Sale Procedures and any Side Letters (defined below), the Debtors and the Consultant are hereby authorized to take any and all actions as may be necessary or desirable to implement the Consulting Agreement and the Sale, and each of the transactions contemplated by the Consulting Agreement, and any actions taken by the Debtors and the Consultant necessary or desirable to implement the Consulting Agreement and/or the Sale prior to the date of this Interim Order, are hereby approved and ratified.

6.      The Consulting Agreement and related documents may be modified, amended or supplemented by the parties thereto in accordance with the terms thereof without further order of this Court; *provided, however*, that the Sale Procedures may not be materially modified without the consent of Tiger Finance (which can be by email through counsel) and notice and a reasonable opportunity to object by the U.S. Trustee, landlords for the Stores, and any statutory committee appointed in these Chapter 11 Cases.

7.      Notwithstanding anything contrary in the Consulting Agreement, the Debtors and their estates shall not indemnify the Consultant for any damages arising out of the Consultant's fraud, willful misconduct, or gross negligence.

| | |
|---|---|
| Page (7) | |
| Debtors: | SAM ASH MUSIC CORPORATION, *et al.* |
| Case No.: | 24-14727 (SLM) |
| Caption of Order: | INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO ASSUME AND PERFORM UNDER THE CONSULTING AGREEMENT RELATED TO THE SALE OF INVENTORY, (II) APPROVING PROCEDURES FOR THE SALE OF INVENTORY, (III) APPROVING MODIFICATIONS TO CERTAIN CUSTOMER PROGRAMS, AND (IV) GRANTING RELATED RELIEF |

## II.    Authority to Engage in Sale and Conduct Store Liquidations

8.     The Debtors are authorized, on an interim basis pending the Final Hearing, pursuant to sections 105(a) and 363(b)(1) of the Bankruptcy Code, to immediately continue and conduct the Sale at the Stores in accordance with this Interim Order, the Sale Procedures, and the Consulting Agreement, as may be modified by any Side Letters (as defined below) between the Debtors and/or the Consultant and the landlords at the Stores.

9.     The Sale Procedures are approved in their entirety.

10.     The Debtors are authorized to discontinue operations at the Stores in accordance with this Interim Order and the Sale Procedures.

11.     All entities that are presently in possession of some or all of the Merchandise or FF&E in which the Debtors hold an interest that are or may be subject to the Consulting Agreement or this Interim Order hereby are directed to surrender possession of such Merchandise or FF&E to the Debtors or the Consultant.

12.     Neither the Debtors nor the Consultant nor any of their officers, employees, or agents shall be required to obtain the approval of any third party, including (without limitation) any Governmental Unit (as defined under section 101(27) of the Bankruptcy Code) or landlord, to conduct the Sale, store closings, and to take the related actions authorized herein.

| Page (8) | |
|---|---|
| Debtors: | SAM ASH MUSIC CORPORATION, *et al.* |
| Case No.: | 24-14727 (SLM) |
| Caption of Order: | INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO ASSUME AND PERFORM UNDER THE CONSULTING AGREEMENT RELATED TO THE SALE OF INVENTORY, (II) APPROVING PROCEDURES FOR THE SALE OF INVENTORY, (III) APPROVING MODIFICATIONS TO CERTAIN CUSTOMER PROGRAMS, AND (IV) GRANTING RELATED RELIEF |

## III.    Conduct of the Sale

13.    All newspapers and other advertising media in which the Sale may be advertised and all landlords are directed to accept this Interim Order as binding authority so as to authorize the Debtors and the Consultant to conduct the Sale pursuant to the Consulting Agreement, including, without limitation, to conduct and advertise the sale of the Merchandise and FF&E in the manner contemplated by and in accordance with this Interim Order, the Sale Procedures, and the Consulting Agreement.

14.    The Debtors and Consultant are hereby authorized to take such actions as may be necessary and appropriate to implement the Consulting Agreement and to conduct the Sale without necessity of further order of this Court as provided in the Consulting Agreement and the Sale Procedures (subject to any Side Letters), including, but not limited to, advertising the sale as a "store closing," "sale on everything," "everything must go," or similar-themed sale as contemplated in the Sale Procedures through the posting of signs (including the use of exterior banners at non-enclosed mall closing locations, and at enclosed mall closing locations to the extent the applicable closing location entrance does not require entry into the enclosed mall common area), use of signwalkers, A-frames, and other street signage, as contemplated in the Sale Procedures.

| | |
|---|---|
| Page (9) | |
| Debtors: | SAM ASH MUSIC CORPORATION, *et al.* |
| Case No.: | 24-14727 (SLM) |
| Caption of Order: | INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO ASSUME AND PERFORM UNDER THE CONSULTING AGREEMENT RELATED TO THE SALE OF INVENTORY, (II) APPROVING PROCEDURES FOR THE SALE OF INVENTORY, (III) APPROVING MODIFICATIONS TO CERTAIN CUSTOMER PROGRAMS, AND (IV) GRANTING RELATED RELIEF |

15.     Except as expressly provided in the Consulting Agreement and the Sale Procedures, the sale of the Merchandise, Licensed Goods, and FF&E shall be conducted by the Debtors and the Consultant notwithstanding any restrictive provision of any lease, sublease, restrictive covenant, or other agreement relative to occupancy affecting or purporting to restrict the conduct of the Sale (including the sale of the Merchandise, Licensed Goods, and FF&E), abandonment of assets, or "going dark" provisions shall not be enforceable in conjunction with the Sale. Breach of any such provisions in these chapter 11 cases in conjunction with the Sale shall not constitute a default under a lease or provide a basis to terminate the lease; provided that the Sale is conducted in accordance with the terms of this Interim Order, any Side Letter, and the Sale Procedures. The Debtors and/or Consultant and landlords of the Stores are authorized to enter into agreements ("Side Letters") between themselves modifying the Sale Procedures without further order of the Court, and such Side Letters shall be binding as among the Debtors, the Consultant and any such landlords. In the event of any conflict between the Sale Procedures, the Consulting Agreement, any Side Letter, and this Interim Order, subject to paragraph 45 hereof, the terms of such Side Letter shall control. Upon request (which may be by email), copies of any Side Letters will be provided to the U.S. Trustee, Tiger Finance, LLC, and/or any statutory committee of unsecured creditors at such point as to provide the reasonable opportunity to object; *provided* that such party

| Page (10) | |
|---|---|
| Debtors: | SAM ASH MUSIC CORPORATION, *et al.* |
| Case No.: | 24-14727 (SLM) |
| Caption of Order: | INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO ASSUME AND PERFORM UNDER THE CONSULTING AGREEMENT RELATED TO THE SALE OF INVENTORY, (II) APPROVING PROCEDURES FOR THE SALE OF INVENTORY, (III) APPROVING MODIFICATIONS TO CERTAIN CUSTOMER PROGRAMS, AND (IV) GRANTING RELATED RELIEF |

is subject to or agrees to become bound by reasonable confidentiality obligations to the extent

requested.

16.    Except as expressly provided for herein or in the Sale Procedures, no person or

entity, including, but not limited to, any landlord, licensor, service providers, utilities, or creditors,

shall take any action to directly or indirectly prevent, interfere with, or otherwise hinder

consummation of the Sale, or the advertising and promotion (including the posting of signs and

exterior banners or the use of signwalkers) of such sales, and all such parties and persons of every

nature and description, including, but not limited to, any landlord, licensor, service providers,

utilities, and creditors and all those acting for or on behalf of such parties, are prohibited and

enjoined from (a) interfering in any way with, obstructing, or otherwise impeding, the conduct of

the Sale, and/or (b) instituting any action or proceeding in any court (other than in the Bankruptcy

Court) or administrative body seeking an order or judgment against, among others, the Debtors,

the Consultant, or the landlords at the closing locations that might in any way directly or indirectly

obstruct or otherwise interfere with or adversely affect the conduct of the Sale and/or seek to

recover damages for breach(es) of covenants or provisions in any lease, sublease, license, or

contract based upon any relief authorized herein.

17.    In accordance with and subject to the terms and conditions of the Consulting

Agreement, the Consultant shall have the right to use the Stores and all related Store services,

| | |
|---|---|
| Page (11) | |
| Debtors: | SAM ASH MUSIC CORPORATION, *et al.* |
| Case No.: | 24-14727 (SLM) |
| Caption of Order: | INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO ASSUME AND PERFORM UNDER THE CONSULTING AGREEMENT RELATED TO THE SALE OF INVENTORY, (II) APPROVING PROCEDURES FOR THE SALE OF INVENTORY, (III) APPROVING MODIFICATIONS TO CERTAIN CUSTOMER PROGRAMS, AND (IV) GRANTING RELATED RELIEF |

furniture, fixtures, equipment and other assets of the Debtors for the purpose of conducting the Sale, free of any interference from any entity or person, subject to compliance with the Sale Procedures (as modified by any Side Letters) and this Interim Order.

18.     The Consultant shall not be liable for sales taxes except as expressly provided in the Consulting Agreement and the payment of any and all sales taxes is the responsibility of the Debtors. The Debtors are directed to remit all taxes arising from the Sale to the applicable Governmental Units as and when due, provided that in the case of a bona fide dispute the Debtors are only directed to pay such taxes upon the resolution of such dispute, if and to the extent that the dispute is decided in favor of the applicable Governmental Unit. For the avoidance of doubt, sales taxes collected and held in trust by the Debtors shall not be used to pay any creditor or any other party, other than the applicable Governmental Unit for which the sales taxes are collected. The Consultant shall collect, remit to the Debtors, and account for sales taxes as and to the extent provided in the Consulting Agreements. This Interim Order does not enjoin, suspend, or restrain the assessment, levy, or collection of any tax under state, provincial or federal law, and does not constitute a declaratory judgment with respect to any party's liability for taxes under state, provincial or federal law.

19.     Pursuant to section 363(f) of the Bankruptcy Code, the Consultant, on behalf of the Debtors, is authorized to sell the Offered Assets and all sales of Offered Assets, whether by the

Page (12)
Debtors:            SAM ASH MUSIC CORPORATION, *et al.*
Case No.:           24-14727 (SLM)
Caption of Order:   INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO ASSUME
                    AND PERFORM UNDER THE CONSULTING AGREEMENT
                    RELATED TO THE SALE OF INVENTORY, (II) APPROVING
                    PROCEDURES FOR THE SALE OF INVENTORY, (III) APPROVING
                    MODIFICATIONS TO CERTAIN CUSTOMER PROGRAMS, AND (IV)
                    GRANTING RELATED RELIEF

Consultant or the Debtors, shall be free and clear of any and all liens, claims, encumbrances, and other interests; *provided, however*, that any such liens, claims, encumbrances, and other interests shall attach to the proceeds of the sale of the Offered Assets with the same validity, in the amount, with the same priority as, and to the same extent that any such liens, claims, and encumbrances have with respect to the Offered Assets, subject to any claims and defenses that the Debtors may possess with respect thereto and the Consultant's fees and expenses (as provided in the Consulting Agreement).

20.    The Debtors and/or the Consultant (as the case may be) are authorized and empowered to transfer Offered Assets among, and into, the Stores in accordance with the Sale Procedures, as applicable. The Consultant is authorized to sell the Debtors' FF&E and abandon the same, in each case, as provided for and in accordance with the terms of the Consulting Agreement and the Sale Procedures.

21.    The Consultant is authorized to supplement the Merchandise in the Sale with the Licensed Goods. The Licensed Goods shall be purchased by the Consultant as part of the Sale and delivered to the Stores at the Consultant's sole expense (including as to labor, freight, and insurance relative to shipping such Licensed Goods to the Stores). Sales of Licensed Goods shall be run through the Debtors' cash register systems; provided, however, that the Merchant shall utilize distinct SKU's or other means in order to distinguish the Licensed Goods from other

| | |
|---|---|
| Page (13) | |
| Debtors: | SAM ASH MUSIC CORPORATION, *et al.* |
| Case No.: | 24-14727 (SLM) |
| Caption of Order: | INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO ASSUME AND PERFORM UNDER THE CONSULTING AGREEMENT RELATED TO THE SALE OF INVENTORY, (II) APPROVING PROCEDURES FOR THE SALE OF INVENTORY, (III) APPROVING MODIFICATIONS TO CERTAIN CUSTOMER PROGRAMS, AND (IV) GRANTING RELATED RELIEF |

Merchandise at the Stores which process for such shall be mutually acceptable to the Debtors and the Consultant.

22.    All transactions relating to the Licensed Goods are, shall be construed as, and are acknowledged by the Debtors to be, a true consignment from Consultant to the Debtors under Article 9 of the Uniform Commercial Code (the "UCC") and not a consignment for security purposes. Except for the fee earned by the Merchant pursuant to the terms of the Consulting Agreement, at all times and for all purposes, the Licensed Goods and their proceeds shall be the exclusive property of the Consultant, and no other person or entity (including, without limitation, the Debtors, or any third person claiming a security interest in the Debtors' property, including any of the Debtors' secured lenders) shall have any claim against any of the Licensed Goods or the proceeds thereof. The Licensed Goods shall at all times remain subject to the exclusive control of the Consultant.

23.    The Consultant is hereby granted a first-priority security interest and lien upon (a) the Licensed Goods and (b) the Consultant's portion of the Licensed Goods proceeds, which security interest shall be deemed perfected without the requirement of filing UCC financing statements or providing notifications to any prior secured parties (provided that the Consultant is hereby authorized to deliver any notices and file any financing statements and amendments thereof under the applicable UCC identifying the Consultant's interest in the Licensed Goods (and any

Page (14)
Debtors:                SAM ASH MUSIC CORPORATION, *et al.*
Case No.:               24-14727 (SLM)
Caption of Order:       INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO ASSUME
                        AND PERFORM UNDER THE CONSULTING AGREEMENT
                        RELATED TO THE SALE OF INVENTORY, (II) APPROVING
                        PROCEDURES FOR THE SALE OF INVENTORY, (III) APPROVING
                        MODIFICATIONS TO CERTAIN CUSTOMER PROGRAMS, AND (IV)
                        GRANTING RELATED RELIEF

proceeds thereof) as consigned goods thereunder and the Debtors as the consignee therefor, and

the Consultant's security interest in such Licensed Goods and the Consultant's portion of the

Licensed Goods proceeds). As part of each weekly reconciliation, the Debtors shall turnover all

proceeds from the sale of Licensed Goods to the Consultant, net of any fee payable to the Debtors

pursuant to the Consulting Agreement.

24.     Neither the Sale Procedures, Consulting Agreement, nor this Interim Order

authorize the Debtors to transfer or sell to Consultant or any other party the personal identifying

information (which means information that alone or in conjunction with other information

identifies an individual, including but not limited to an individual's first name (or initial) and last

name, physical address, electronic address, telephone number, social security number, date of

birth, government-issued identification number, account number and credit or debit card number)

("PII") of any customers unless such sale or transfer is permitted by the Debtors' privacy policy

and state or federal privacy and/or identity theft prevention laws and rules (collectively, the

"Applicable Privacy Laws"). The foregoing shall not limit the Consultant's use of the Debtors'

customer lists and mailing lists in accordance with the Consulting Agreement solely for purposes

of advertising and promoting the Sale.

25.     The Debtors shall remove or cause to be removed any confidential and/or PII in

any of the Debtors hardware, software, computers or cash registers or similar equipment which are

| | |
|---|---|
| Page (15) | |
| Debtors: | SAM ASH MUSIC CORPORATION, *et al.* |
| Case No.: | 24-14727 (SLM) |
| Caption of Order: | INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO ASSUME AND PERFORM UNDER THE CONSULTING AGREEMENT RELATED TO THE SALE OF INVENTORY, (II) APPROVING PROCEDURES FOR THE SALE OF INVENTORY, (III) APPROVING MODIFICATIONS TO CERTAIN CUSTOMER PROGRAMS, AND (IV) GRANTING RELATED RELIEF |

to be sold or abandoned so as to render the PII unreadable or undecipherable. At the conclusion of the Sale, the Consultant shall provide the Debtors with written verification that the Consultant has not removed, copied, or transferred any customer PII and that any records containing PII were shredded, erased or otherwise modified to render the PII unreadable or undecipherable.

26.     Nothing herein shall limit the Debtors' right to pause or discontinue a Sale at a Store on notice to affected parties and subject to the prior written consent (which can be by email through counsel) of Tiger Finance, LLC.

27.     Nothing herein is intended to affect any rights of any applicable government unit to enforce any law affecting the Debtors' conduct of any store closing sale that occurred before the Petition Date.

**IV.     Customer Programs**

28.     All in-store sales in the Sale shall be "as is" and final. Returns related to the purchases made in the Sale shall not be accepted, except as set forth herein.  The Debtors shall accept returns of merchandise sold by the Debtors in the ordinary course prior to the commencement of the Sale or May 2, 2024, as applicable; *provided*, that such return is otherwise in compliance with the Debtors' return policies in effect as of the date such item was purchased and the customer is not repurchasing the same item so as to take advantage of the sale price being offered in the Sale.

| | |
|---|---|
| Page (16) | |
| Debtors: | SAM ASH MUSIC CORPORATION, *et al.* |
| Case No.: | 24-14727 (SLM) |
| Caption of Order: | INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO ASSUME AND PERFORM UNDER THE CONSULTING AGREEMENT RELATED TO THE SALE OF INVENTORY, (II) APPROVING PROCEDURES FOR THE SALE OF INVENTORY, (III) APPROVING MODIFICATIONS TO CERTAIN CUSTOMER PROGRAMS, AND (IV) GRANTING RELATED RELIEF |

29.     Notwithstanding anything herein, all state and federal laws relating to implied warranties for latent defects shall be complied with and are not superseded by the sale of said goods or the use of the terms "as is" or "final sales." The Debtors and/or the Consultant shall accept return of any goods purchased during the Sales that contain a defect which the lay consumer could not reasonably determine was defective by visual inspection prior to purchase for a full refund, provided that the consumer must return the merchandise within twenty-one days of purchase, the consumer must provide a receipt, and the asserted defect must in fact be a "latent" defect.

30.     All sales of Merchandise shall be made by cash, gift card or gift certificate (subject to paragraph 31 below), store credit (subject to paragraph 31 below), debit card, or credit card and, at Debtor's discretion, by check or otherwise in accordance with the Debtors' policies.

31.     To the extent not already expired or subject to an earlier expiration by their terms or applicable law, the Debtors will continue to accept validly-issued gift cards, store credits, and gift certificates in their retail stores and online, in the ordinary course, in each case only where issued prior to the Petition Date, through June 7, 2024.  After June 7, 2024, the Debtors will no longer accept gift cards, store credits, or gift certificates and such gift cards, store credits, and/or gift certificates will be deemed to have no remaining value.  Notwithstanding any policy or law to the contrary, the gift cards, store credits, and/or gift certificates are not redeemable for cash at any time. The Debtors will post notice of the change to the limitation of use of the gift cards, store

| | |
|---|---|
| Page (17) | |
| Debtors: | SAM ASH MUSIC CORPORATION, *et al.* |
| Case No.: | 24-14727 (SLM) |
| Caption of Order: | INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO ASSUME AND PERFORM UNDER THE CONSULTING AGREEMENT RELATED TO THE SALE OF INVENTORY, (II) APPROVING PROCEDURES FOR THE SALE OF INVENTORY, (III) APPROVING MODIFICATIONS TO CERTAIN CUSTOMER PROGRAMS, AND (IV) GRANTING RELATED RELIEF |

credits, and gift certificates on the Sam Ash Music eCommerce website, the bankruptcy case website, at cash registers in their retail locations, and through the Sam Ash Music social media channels, which notice shall be deemed good and sufficient notice.

## V.     Dispute Resolution Procedures With Governmental Units

32.     Nothing in this Interim Order, the Consulting Agreement, the Sale Procedures, or any Side Letter releases, nullifies, or enjoins the enforcement of any liability to a Governmental Unit under environmental laws or regulations (or any associated liabilities for penalties, damages, cost recovery, or injunctive relief) to which any entity would be subject as the owner, lessor, lessee, or operator of the property after the date of entry of this Interim Order. Nothing contained in this Interim Order, the Consulting Agreement, the Sale Procedures, or any Side Letter shall in any way: (a) diminish the obligation of any entity to comply with environmental laws; or (b) diminish the obligations of the Debtors to comply with environmental laws consistent with their rights and obligations as debtors in possession under the Bankruptcy Code. Except as otherwise provided herein, the Sale shall not be exempt from laws of general applicability, including, without limitation, public health and safety, criminal, tax, (including, but not limited to, the collection of Sales Taxes), labor, employment, environmental, antitrust, fair competition, traffic and consumer protection laws, including consumer laws regulating deceptive practices and false advertising, consumer protection, the sale of gift certificates, layaway programs, return of goods, express or

| | |
|---|---|
| Page (18) | |
| Debtors: | SAM ASH MUSIC CORPORATION, *et al.* |
| Case No.: | 24-14727 (SLM) |
| Caption of Order: | INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO ASSUME AND PERFORM UNDER THE CONSULTING AGREEMENT RELATED TO THE SALE OF INVENTORY, (II) APPROVING PROCEDURES FOR THE SALE OF INVENTORY, (III) APPROVING MODIFICATIONS TO CERTAIN CUSTOMER PROGRAMS, AND (IV) GRANTING RELATED RELIEF |

implied warranties of goods, and "weights and measures" regulation and monitoring (collectively, "General Laws"). Nothing in this Interim Order, the Consulting Agreement, the Sale Procedures, or any Side Letter shall alter or affect obligations to comply with all applicable federal safety laws and regulations. Nothing in this Interim Order shall be deemed to bar any Governmental Unit (as such term is defined in section 101(47) of the Bankruptcy Code) from enforcing General Laws in the applicable non-bankruptcy forum, subject to the Debtors' rights to assert in that forum or before this Court that any such laws are not in fact General Laws or that such enforcement is impermissible under the Bankruptcy Code or this Interim Order. Notwithstanding any other provision in this Interim Order, no party waives any rights to argue any position with respect to whether the conduct was in compliance with this Interim Order and/or any applicable law, or that enforcement of such applicable law is preempted by the Bankruptcy Code. Nothing in this Interim Order shall be deemed to have made any rulings on any such issues.

33.     To the extent that the sale of Offered Assets and/or Licensed Goods is subject to any Liquidation Sale Laws, including any federal, state or local statute, ordinance, rule, or licensing requirement directed at regulating "going out of business," "store closing," or similar inventory liquidation sales, or bulk sale laws, laws restricting safe, professional and nondeceptive, customary advertising such as signs, banners, signage, and use of sign-walkers solely in connection with the sale of the Offered Assets or Licensed Goods, including ordinances establishing license

| | |
|---|---|
| Page (19) | |
| Debtors: | SAM ASH MUSIC CORPORATION, *et al.* |
| Case No.: | 24-14727 (SLM) |
| Caption of Order: | INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO ASSUME AND PERFORM UNDER THE CONSULTING AGREEMENT RELATED TO THE SALE OF INVENTORY, (II) APPROVING PROCEDURES FOR THE SALE OF INVENTORY, (III) APPROVING MODIFICATIONS TO CERTAIN CUSTOMER PROGRAMS, AND (IV) GRANTING RELATED RELIEF |

or permit requirements, waiting periods, time limits or bulk sale restrictions that would otherwise apply to the sale of the Offered Assets or Licensed Goods, the Dispute Resolution Procedures in this section shall apply:

i. Provided that the Sale is conducted in accordance with this Interim Order, any Final Order, and the Sale Procedures, the Debtors, the Consultant, and the Debtors' landlords, shall be deemed to be in compliance with any requirements of all county, parish, or municipal or other local government (hereinafter referred to as "Local") and State requirements governing the conduct of the Sale, including but not limited to Local statutes, regulation and ordinances establishing licensing or permitting requirements, waiting periods or time limits, or bulk sale restrictions that would otherwise apply to the Sale (collectively, the "Liquidation Sale Laws") of any state or local Governmental Unit (as defined in Bankruptcy Code section 101(27)); provided, that the term "Liquidation Sale Laws" shall be deemed not to include any public health or safety laws of any state (collectively, "Safety Laws"), and the Debtors and the Consultant shall continue to be required to comply, as applicable, with such Safety Laws and General Laws, subject to any applicable provision of the Bankruptcy Code and federal law, and nothing in this Order shall be deemed to bar Governmental Units (as defined in section 101(27) of the Bankruptcy Code) or public officials from enforcing Safety Laws or General Laws.

ii. Within five (5) business days after entry of this Interim Order, the Debtors will serve by first-class mail, copies of this Interim Order, the proposed Final Order, the Consulting Agreement, and the Sale Procedures on the following: (a) the Attorney General's office for each state where the Sale is being held; (b) the county consumer protection agency or similar agency for each county where the Sale is being held; (c) the division of consumer protection for each state where the Sale is being held; and (d) the landlords for the Stores (collectively, the "Dispute Notice Parties").

iii. To the extent that there is a dispute arising from or relating to the Sale, this Interim Order, the Consulting Agreement, or the Sale Procedures, which dispute relates to any Liquidation Sale Laws (a "Reserved Dispute"), the Bankruptcy Court shall retain exclusive jurisdiction to resolve the Reserved Dispute. Within ten (10) days following entry of this Interim Order, any Governmental Unit may assert that a

Page (20)
Debtors:                    SAM ASH MUSIC CORPORATION, *et al.*
Case No.:                  24-14727 (SLM)
Caption of Order:   INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO ASSUME
                            AND   PERFORM   UNDER   THE   CONSULTING   AGREEMENT
                            RELATED TO THE SALE OF INVENTORY, (II) APPROVING
                            PROCEDURES FOR THE SALE OF INVENTORY, (III) APPROVING
                            MODIFICATIONS TO CERTAIN CUSTOMER PROGRAMS, AND (IV)
                            GRANTING RELATED RELIEF

Reserved Dispute exists by sending a notice (the "Dispute Notice") explaining the nature of the dispute to: (a) Cole Schotz P.C., Court Plaza North, 25 Main Street, Hackensack, New Jersey 07601, Attn: Michael D. Sirota, Esq., Ryan T. Jareck, Esq., and Matteo Percontino, Esq.; (b) on behalf of Consultant, (i) 60 State Street, 11th Floor, Boston, MA 02109, c/o Mark P. Naughton, Senior General Counsel and (ii) Riemer & Braunstein LLP, Times Square Tower, Suite 2506, Seven Times Square, New York, New York, Attn: Anthony Stumbo, Esq. and Steven E. Fox, Esq.; and (c) the affected landlord. If the Debtors and the Governmental Unit are unable to resolve the Reserved Dispute within 15 days after service of the notice, the Governmental Unit may file a motion with the Bankruptcy Court requesting that the Bankruptcy Court resolve the Reserved Dispute (a "Dispute Resolution Motion").

iv.        In the event that a Dispute Resolution Motion is filed, nothing in the Interim Order or the Final Order, as applicable, shall preclude the Debtors, a landlord, or any other interested party from asserting (A) that the provisions of any Liquidation Sale Laws are preempted by the Bankruptcy Code, or (B) that neither the terms of the Interim Order or the Final Order nor the conduct of the Debtors pursuant to the Interim Order or the Final Order, violates such Liquidation Sale Laws. Filing a Dispute Resolution Motion as set forth herein shall not be deemed to affect the finality of the Interim Order or Final Order or to limit or interfere with the Debtors' or the Consultant's ability to conduct or to continue to conduct the Sale pursuant to the Interim Order or Final Order, as applicable, absent further order of the Bankruptcy Court. Upon the entry of the Interim Order or Final Order, the Bankruptcy Court grants authority for the Debtors and the Consultant to conduct the Sale pursuant to the terms of the Interim Order or the Final Order, the Consulting Agreement, and the Sale Procedures (as may be modified by Side Letters) and to take all actions reasonably related thereto or arising in connection therewith. The Governmental Unit will be entitled to assert any jurisdictional, procedural, or substantive arguments it wishes with respect to the requirements of its Liquidation Sale Laws or the lack of any preemption of such Liquidation Sale Laws by the Bankruptcy Code. Nothing in the Interim Order or Final Order will constitute a ruling with respect to any issues to be raised in any Dispute Resolution Motion.

v.        If, at any time, a dispute arises between the Debtors and/or the Consultant and a Governmental Unit as to whether a particular law is a Liquidation Sale Law, and subject to any provisions contained in the Interim Order or Final Order related to

Page (21)

| | |
|---|---|
| Debtors: | SAM ASH MUSIC CORPORATION, *et al.* |
| Case No.: | 24-14727 (SLM) |
| Caption of Order: | INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO ASSUME AND PERFORM UNDER THE CONSULTING AGREEMENT RELATED TO THE SALE OF INVENTORY, (II) APPROVING PROCEDURES FOR THE SALE OF INVENTORY, (III) APPROVING MODIFICATIONS TO CERTAIN CUSTOMER PROGRAMS, AND (IV) GRANTING RELATED RELIEF |

the Liquidation Sale Laws, then any party to that dispute may utilize the provisions of subparagraphs (iii) and (iv) above by serving a notice to the other party and proceeding thereunder in accordance with those paragraphs. Any determination with respect to whether a particular law is a Liquidation Sale Law shall be made *de novo*.

34.     Subject to paragraphs 32 and 33 above, each and every federal, state, or local agency, departmental, or Governmental Unit with regulatory authority over the Sale and all newspapers and other advertising media in which the Sale is advertised shall consider this Interim Order as binding authority that no further approval, license, or permit of any Governmental Unit shall be required, nor shall the Debtors or the Consultant be required to post any bond, to conduct the Sale.

35.     Provided that the Sale is conducted in accordance with the terms of this Interim Order, the Consulting Agreement, and the Sale Procedures (as may be modified by Side Letters) and in light of the provisions in the laws that exempt court-ordered sales from their provisions, the Debtors and Consultant shall be presumed to be in compliance with any Liquidation Sale Laws and are authorized to conduct the Sale in accordance with the terms of this Interim Order and the Sale Procesures (as may be modified by Side Letters) without the necessity of further showing compliance with any such Liquidation Sale Laws.

36.     Nothing in this Interim Order, the Consulting Agreement, the Sale Procedures, or any Side Letter releases, nullifies, or enjoins the enforcement of any liability to a Governmental

| | |
|---|---|
| Page (22) | |
| Debtors: | SAM ASH MUSIC CORPORATION, *et al.* |
| Case No.: | 24-14727 (SLM) |
| Caption of Order: | INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO ASSUME AND PERFORM UNDER THE CONSULTING AGREEMENT RELATED TO THE SALE OF INVENTORY, (II) APPROVING PROCEDURES FOR THE SALE OF INVENTORY, (III) APPROVING MODIFICATIONS TO CERTAIN CUSTOMER PROGRAMS, AND (IV) GRANTING RELATED RELIEF |

Unit under environmental laws or regulations (or any associated liabilities for penalties, damages, cost recovery, or injunctive relief) to which any entity would be subject as the owner, lessor, lessee, or operator of the property after the date of entry of this Interim Order. Nothing contained in this Interim Order, the Consulting Agreement, the Sale Procedures, or any Side Letter shall in any way: (a) diminish the obligation of any entity to comply with environmental laws; or (b) diminish the obligations of the Debtors to comply with environmental laws consistent with their rights and obligations as debtors in possession under the Bankruptcy Code.

## VI.    Other Provisions

37.    Notwithstanding anything to the contrary in the Consulting Agreement or this Interim Order, to the extent the Debtors' contemporaneous sale process results in a qualified purchaser committing to acquire the Debtors' businesses as a going concern, the Debtors in their discretion may cease the Sale under the Consulting Agreement at any Store or the distribution center as needed to implement the transaction.

38.    To the extent the Debtors are subject to any state Fast Pay Laws in connection with the Sale, the Debtors shall be presumed to be in compliance with such laws to the extent, in applicable states, such payroll payments are made by the later of: (a) the Debtors' next regularly scheduled payroll; and (b) seven calendar days following the termination date of the relevant

Page (23)
Debtors:            SAM ASH MUSIC CORPORATION, *et al.*
Case No.:           24-14727 (SLM)
Caption of Order:   INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO ASSUME
                    AND PERFORM UNDER THE CONSULTING AGREEMENT
                    RELATED TO THE SALE OF INVENTORY, (II) APPROVING
                    PROCEDURES FOR THE SALE OF INVENTORY, (III) APPROVING
                    MODIFICATIONS TO CERTAIN CUSTOMER PROGRAMS, AND (IV)
                    GRANTING RELATED RELIEF

employee, and in all such cases consistent with, and subject to, any previous orders of this Court

regarding payment of same.

39.     Neither the Consultant nor any of its respective affiliates (whether individually, as

part of a joint venture, or otherwise), shall be precluded from providing additional services to the

Debtors and/or bidding on the Debtors' assets in connection with any other future process that may

or may not be undertaken by the Debtors to close stores, provided that any such services and/or

transactions shall be approved by separate order of this Court, and provided further that the rights

of the U.S. Trustee and all other parties in interest to object to any request that the Consultant or

its affiliates be permitted to provide such additional services and/or transactions are fully reserved.

40.     On a confidential basis and for professionals' "eyes only" and upon the written

(which can be by email through counsel) request of the U.S. Trustee, Tiger Finance, LLC, or the

official committee of unsecured creditors, if any, the Debtors shall provide such requesting party,

if any, with copies of those periodic reports and information regarding the conduct of the Sale that

are prepared by the Debtors, their professionals or the Consultant and that are consistent with

practices that were in place pre-petition; *provided*, that the foregoing shall not require the Debtors,

their professionals, or the Consultant to prepare or undertake to prepare any additional or new

reporting not otherwise being prepared by the Debtors, their professionals, or the Consultant in

connection with the Sale.

| | |
|---|---|
| Page (24) | |
| Debtors: | SAM ASH MUSIC CORPORATION, *et al.* |
| Case No.: | 24-14727 (SLM) |
| Caption of Order: | INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO ASSUME AND PERFORM UNDER THE CONSULTING AGREEMENT RELATED TO THE SALE OF INVENTORY, (II) APPROVING PROCEDURES FOR THE SALE OF INVENTORY, (III) APPROVING MODIFICATIONS TO CERTAIN CUSTOMER PROGRAMS, AND (IV) GRANTING RELATED RELIEF |

41. Not later than seven (7) days prior to the objection deadline related to entry of an order approving the Motion on a final basis, the Consultant shall file a declaration disclosing connections to the Debtors, their creditors, and other parties in interest in these chapter 11 cases, and the Debtors shall serve the same on the U.S. Trustee, any official committee of unsecured creditors appointed in these cases, and all parties who have filed requests for service under Bankruptcy Rule 2002, by email, or if the email address is not available to the Debtors, then by first class mail.

42. The Consultant shall not be liable for any claims against the Debtors, and the Debtors shall not be liable for any claims against the Consultant, in each case, other than as expressly provided for in the Consulting Agreement.

43. Notwithstanding the relief granted in this Interim Order and any actions taken pursuant to such relief, nothing in this Interim Order shall be deemed: (a) an admission as to the validity of any particular claim against the Debtors; (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Interim Order or the Motion; (e) a request or authorization to assume any agreement, contract, or lease, pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors', or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; or (g) a

| Page (25) | |
|---|---|
| Debtors: | SAM ASH MUSIC CORPORATION, *et al.* |
| Case No.: | 24-14727 (SLM) |
| Caption of Order: | INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO ASSUME AND PERFORM UNDER THE CONSULTING AGREEMENT RELATED TO THE SALE OF INVENTORY, (II) APPROVING PROCEDURES FOR THE SALE OF INVENTORY, (III) APPROVING MODIFICATIONS TO CERTAIN CUSTOMER PROGRAMS, AND (IV) GRANTING RELATED RELIEF |

concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the Motion are valid, and the rights of all parties are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens. Any payment made pursuant to this Interim Order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim, other than with respect to payments made to the Consultant, which are governed by the reconciliation procedures in the Consulting Agreement.

44.     Notwithstanding anything to the contrary contained in the Motion or this Interim Order, except for compensation payable and expense reimbursement to the Consultant under the Consulting Agreement, which shall be paid and/or reimbursed, as applicable in accordance with the terms of the Consulting Agreement, any payment to be made, obligation incurred, or relief or authorization granted hereunder shall not be inconsistent with, and shall be subject to and in compliance with and any authorization of the Debtors contained herein is subject to: (a) any interim or final orders entered by the Court approving the Debtors' entry into any postpetition debtor-in-possession financing facility and/or authorizing the use of cash collateral; (b) the documentation in respect of any such debtor-in-possession financing or use of cash collateral; and (c) any budget or cash flow forecasts in connection therewith (in each case, the "DIP Order").

| Page (26) | |
|---|---|
| Debtors: | SAM ASH MUSIC CORPORATION, *et al.* |
| Case No.: | 24-14727 (SLM) |
| Caption of Order: | INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO ASSUME AND PERFORM UNDER THE CONSULTING AGREEMENT RELATED TO THE SALE OF INVENTORY, (II) APPROVING PROCEDURES FOR THE SALE OF INVENTORY, (III) APPROVING MODIFICATIONS TO CERTAIN CUSTOMER PROGRAMS, AND (IV) GRANTING RELATED RELIEF |

45.     No payment may be made by the Debtors to, or for the benefit of, any non-Debtor Insider (as defined in section 101 of the Bankruptcy Code) or any non-Debtor affiliate of or related party to any such Insider pursuant to this Interim Order without further court approval on notice to parties in interest.

46.     The requirements set forth in Bankruptcy Rule 6003(b) are satisfied by the contents of the Motion or otherwise deemed waived.

47.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Interim Order in accordance with the Motion.

48.     Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, this Interim Order shall be effective and enforceable immediately upon entry hereof.

49.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

50.     The requirement set forth in Local Rule 9013-1(a)(3) that any motion be accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Motion or otherwise waived.

| | |
|---|---|
| Page (27) | |
| Debtors: | SAM ASH MUSIC CORPORATION, *et al.* |
| Case No.: | 24-14727 (SLM) |
| Caption of Order: | INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO ASSUME AND PERFORM UNDER THE CONSULTING AGREEMENT RELATED TO THE SALE OF INVENTORY, (II) APPROVING PROCEDURES FOR THE SALE OF INVENTORY, (III) APPROVING MODIFICATIONS TO CERTAIN CUSTOMER PROGRAMS, AND (IV) GRANTING RELATED RELIEF |

51.     The Debtors shall serve by regular mail a copy of this Interim Order and the Motion on all parties required to receive such service pursuant to Local Rule 9013-5(f) within two (2) business days after entry of this Order.

52.     Any party may move for modification of this Order in accordance with Local Rule 9013-5(e).

53.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order or the Consulting Agreement, including, but not limited to, (a) any claim or issue relating to any efforts by any party or person to prohibit, restrict or in any way limit the conduct of the Sale as contemplated by the Consulting Agreement, Sale procedures and this Interim Order, including with respect to any allegations that any advertising is not being conducted in a safe, professional, and non-deceptive manner, (b) any claim of the Debtors, the landlords and/or the Consultant for protection from interference with the Sale, (c) any other disputes related to the Sale, and (d) protect the Debtors and/or the Consultant against any assertions of any liens, claims, encumbrances, and other interests. No such parties or person shall take any action against the Debtors, the Consultant, the landlords, or the Sale until this Court has resolved such dispute. This Court shall hear the request of such parties or persons with respect to any such disputes on an expedited basis, as may be appropriate under the circumstances.

# **EXHIBIT 1**

**Consulting Agreement**

## CONSULTING AGREEMENT

This Consulting Agreement, dated as of February 27, 2024 (together with all Schedules, Exhibits and attachments hereto, (collectively, the "Agreement")), is made by and between Tiger Capital Group, LLC (collectively, "Consultant") and Sam Ash Music Corporation ("Merchant").

### WITNESSETH:

WHEREAS, Merchant operates retail store locations and desires to retain Consultant to provide consulting services to Merchant with respect to the management and disposition of the Merchandise (as defined below) in the context of a "Store Closing" or similar themed sales at the Stores (the "Sale") at Merchant's retail store locations identified on Exhibit A hereto (the "Stores") and through wholesale and bulk offers solicited upon the terms set forth herein (the "Sale").

WHEREAS, Consultant is willing to serve as Merchant's consultant, for the purpose of providing such consulting services, upon the terms and conditions and in the manner set forth in this Agreement.

NOW, THEREFORE, in consideration of the mutual covenants and agreements hereinafter set forth and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1.    DEFINITIONS

For the purposes of this Agreement, the terms listed below shall have the respective meanings indicated:

1.1    "Gross Proceeds" means the aggregate dollar amount of all sales of Merchandise made under this Agreement, including any credit for merchandise traded in, honored discount coupons, store credits, gift certificates, gift cards and frequent shopper certificates, after the application of all discounts and exclusive of all applicable sales taxes.

1.2    "Merchandise" means all items of merchandise located in the Stores as of the Sale Commencement Date and at Merchant's warehouse as mutually agreed by the parties, and for greater certainty does not include any furniture, fixtures (trade or other) or equipment.

1.3    "Sale Commencement Date" means February 29, 2024.

1.5    "Sale" has the meaning set forth in the recitals on the first page of this Agreement.

1.6    "Sale Expenses" means operating expenses incurred in connection with the Sale, including but not limited to (i) advertising and signage, (ii) payroll and benefits for Store Employees and incentive bonuses for certain Store Employees, and (iii) Supervisor Costs. "Consultant Sale Expenses" means only advertising, signage, and Supervisor Costs expended by Consultant. Attached to this Agreement as **Exhibit B** is the budget agreed to between Merchant and Consultant ("Consultant Expense Budget") setting forth the estimated budget of Consultant Sale Expenses.

1.7    "Sale Term" means the period of time beginning with the Sale Commencement Date and ending on the Sale Termination Date.

1.8    "Sale Termination Date" means June 30, 2024, unless agreed in writing by Merchant.

1.9    "Services" means the services performed by Consultant pursuant to Section 2.2 of this Agreement.

1.10    "Store Employees" means those individuals who Merchant employs and retains in the Stores to conduct the Sale.

1.11    "Supervisors" means the individuals whom Consultant engages to provide Services to Merchant in connection with the Sale.

1.12    "Supervisor Costs" has the meaning set forth in Section 2.3 of this Agreement.

2.    CONSULTING

2.1    Merchant hereby retains Consultant and Consultant hereby agrees to serve as an independent consultant to Merchant in connection with the conduct of the Sale. Consultant will serve as Merchant's sole and exclusive consultant for the Sale throughout the Sale Term.

2.2    Beginning on the Sale Commencement Date, Consultant will provide Merchant with the following Services for each Sale:

> (a)    provide qualified, full time Supervisors to assist Merchant in conducting the Sale as further described in Section 2.3 below;

> (b)    oversee the Sale of the Merchandise from the Stores;

2

(c)     solicit bulk and wholesale offers for the Merchandise from retailers and other potential buyers for sales that do not go through the Stores, which offers shall be subject to Merchant's approval;

(d)     recommend appropriate advertising to effectively sell the Merchandise during the Sale Term, consistent with the applicable sale theme agreed to with Merchant;

(e)     recommend appropriate pricing, display, and discounting of Merchandise, as well as recommend appropriate staffing levels for the Stores (including Store Employees); and

(f)     provide such other related services deemed necessary or prudent by Merchant and Consultant under the circumstances giving rise to the Sale.

2.3     In connection with the Sale, Consultant shall directly retain and engage the Supervisors. Each Supervisor will be an independent contractor engaged by Consultant and will not be an employee or agent of Merchant for any purpose. No Supervisor will have a relationship with Merchant by virtue of this Agreement or otherwise that creates any liability or responsibility on the part of Merchant for any Supervisor. Merchant will pay Consultant, as a Sale Expense, the budgeted amounts (not to exceed $7,500 per week per Supervisor inclusive of all expenses for travel and other expense) for Supervisors' services, and a bonus based on the results of the Sale (collectively, the "Supervisor Costs"). Supervisor Costs will not exceed the budgeted amount in the aggregate without Merchant's written approval. Supervisors will not be eligible to participate in any vacation, group medical or life insurance, disability, profit sharing or retirement benefits, or any other fringe benefits or benefit plans offered by Merchant to its employees, and Merchant will not be responsible for withholding or paying any income, payroll, Social Security, or other federal, state, or local taxes, making any insurance contributions, including for unemployment or disability, or obtaining workers' compensation insurance on behalf of Consultant or its Supervisors. Consultant is responsible for, and will indemnify Merchant against, all such taxes or contributions, including penalties and interest. Any persons engaged by Consultant in connection with the performance of the Services shall be Consultant's contractors and Consultant is fully responsible for them and will indemnify Merchant against any claims made by or on behalf of any such person.

2.4     Title to all Merchandise remains with Merchant at all times during the Sale Term until it is sold by or on behalf of Merchant. All sales of Merchandise will be made on behalf of Merchant and will be final upon sale.

3.     EXPENSES

3.1     Merchant will be responsible for the payment of all expenses incurred in operating the Stores and conducting the Sale, including all Sale Expenses. All variable

3

Consultant Sale Expenses shall be set forth on the expense budget attached hereto as **Exhibit B**.

      3.2     As an advance against Consultant Sale Expenses, and to secure payment of the same, no later than one week before the Sale Commencement Date, Merchant shall pay to Consultant a deposit in the amount of $100,000 (the "Deposit"), which will be applied against Consultant Sale Expenses and the fees referred to in Section 4.1 of this Agreement at the end of the Sale Term and to the extent not expended shall be returned to the Merchant as part of the final reconciliation or such other time that Merchant and Consultant mutually agree.

4.     CONSULTANT'S FEES

      4.1     Consultant shall be entitled to a fee equal to two percent (2.0%) of the Gross Proceeds generated from the sale of the Merchandise through the Stores and five percent (5.0%) of the Gross Proceeds from the sale of Merchandise other than through the Stores.   The fee due to Consultant for shall be paid weekly from the Proceeds of the Sale after it is earned.

5.     INVOICES; FINAL RECONCILIATION

      5.1     Consultant will submit invoices to Merchant on a weekly basis setting forth any Consultant Sale Expenses it has incurred and the applicable portion of Consultant's Fee that has been earned during the prior one-week period. Each weekly invoice will be payable by the next weekly reconciliation date , unless disputed by Merchant.

      5.2     Within thirty (30) days after the Sale Termination Date, the parties will complete a final reconciliation of the Gross Proceeds from the Sale, the expenses incurred and the fee payable to Consultant (the "Final Reconciliation") and pay any amounts due under this Agreement.

6.     STORE EMPLOYEES

      6.1     Consultant will consult with Merchant, and Merchant will select and retain all Store Employees to be utilized as part of the Sale during the Sale Term.

      6.2     Subject to paragraph 9.1 hereof, Consultant will have no liability to the Store Employees (including any of Merchant's former employees) of any kind or nature whatsoever, including without limitation, with respect to severance pay, termination pay, vacation pay, pay in lieu of reasonable notice of termination, or any other expenses or liability arising from Merchant's employment of such Store Employees prior to, during, and subsequent to the Sale.

7.     REPRESENTATIONS AND WARRANTIES OF CONSULTANT

7.1    Consultant hereby represents, warrants, and covenants in favor of merchant as follows:

(a)    Consultant has taken all necessary action required to authorize the execution, performance and delivery of this Agreement, and to consummate the transactions contemplated hereby.

(b)    This Agreement is a valid binding obligation of Consultant enforceable in accordance with its terms, subject only to any applicable bankruptcy, insolvency or similar laws affecting the rights of creditors generally and the availability of equitable remedies.

(c)    No action or proceeding has been instituted or, to Consultant's knowledge, threatened, affecting the consummation of this Agreement or the transactions contemplated herein.

8.    REPRESENTATIONS AND WARRANTIES OF MERCHANT

8.1    Merchant hereby represents, warrants and covenants in favor of Consultant as follows:

(a)    Merchant has taken all necessary action required to authorize its execution, performance, and delivery of this Agreement, and to consummate the transactions contemplated hereby.

(b)    This Agreement is a valid and binding obligation of Merchant enforceable in accordance with its terms, subject only to any applicable bankruptcy, insolvency or similar laws affecting the rights of creditors generally and the availability of equitable remedies.

(c)    To the best of Merchant's knowledge, no action or proceeding has been instituted or threatened, that affects the consummation of this Agreement or the transactions contemplated herein.

(d)    Merchant owns and will own at all times during the Sale Term, good and marketable title to all of the Merchandise, and can sell such Merchandise free and clear of all liens, claims and encumbrances of any nature.  Merchant will not create, incur, assume or suffer to exist any security interest, lien or other charge or encumbrance upon or with respect to any of the Merchandise or the proceeds other than as provided in the Loan and Security Agreement among Tiger Finance LLC and Merchant and its subsidiaries and affiliate.

5

(e)     To the best of Merchant's knowledge, (i) Merchant has maintained its pricing files (including the Merchandise File) in the ordinary course of business, and prices charged to the public for goods are the same in all material respects as set forth in such pricing files for the periods indicated therein; (ii) all pricing files and records as of the Sale Commencement Date relative to the Merchandise have been made available to Consultant; and (iii) all such pricing files and records are true and accurate in all material respects as to the selling price to the public for such goods as of the dates and for the periods indicated therein.

(f)     Through the Sale Commencement Date, the Company has not and will not transfer any Merchandise outside of the ordinary course of business.

(g)     Through at least the Sale Commencement Date, Merchant has stocked the Stores with Merchandise in the ordinary course of business.

(h)     To the best of Merchant's knowledge, all Merchandise is in compliance with all applicable federal, state or local product safety laws, rules, and standards.

(i)     Throughout the Sale Term, except as provided in Paragraph (j) of this Section 8, Consultant shall have the right to the unencumbered use and occupancy of, and peaceful and quiet possession of, each of the Stores, the assets currently located at the Stores, and the utilities and other services provided at the Stores. Merchant shall throughout the Sale Term maintain in good working order, condition and repair, all cash registers, heating systems, air conditioning systems, elevators, escalators, and all other mechanical devices necessary for the conduct of the Sale at the Stores.

(j)     When Merchant's inventory in any Store is reduced to $100,000.00 or less, after consultation with Consultant, Merchant will have the option to require Consultant to end the Store Closing Sale in that Store and allow Merchant (at its sole expense) to transfer the remaining inventory and equipment in such Store to other Stores conducting Sales under this Agreement, if ending the Sale and transferring the remaining inventory would represent improved financial performance for Merchant over continuing the Sale in that Store.

9.     AFFIRMATIVE DUTIES OF CONSULTANT

6

9.1     Consultant will reimburse, indemnify, defend and hold Merchant and its officers, directors, agents, and employees, harmless from and against any damage, loss, expense (including reasonable attorneys' fees) or penalty, or any claim or action therefor, by or on behalf of any person, arising out of the performance, failure of performance or breach of this Agreement, or due to any acts or omissions by the Consultant or its personnel, Supervisors or other agents ("Consultant Personnel"), including but not limited to breaches or violations of human rights legislation and, the Consultant Personnel's payroll claims (wage claims, claims for taxes required to be withheld from wages, social security, etc.), unemployment compensation claims, or actions taken by Consultant or Consultant Personnel.

9.2     At the request of Merchant, after consultation with Consultant, Consultant will remove any of its Consultant Personnel from any of Merchant's stores for any acts or omissions that Merchant, in good faith, believes violates its policies concerning employment practices, customer relations, creates a hostile environment for Store Employees or customers, or violates any of Merchant's rules relating to security or safety. Consultant and its Personnel must observe all security policies of Merchant, may not share passwords, and may not have access to personal identity information, such as social security numbers, credit card account numbers, or passwords. Consultant and Consultant Personnel may not unreasonably interfere with or alter Store Employees' lunch or rest breaks.

10.     AFFIRMATIVE DUTIES OF MERCHANT

10.1     Merchant will be solely liable for, and shall pay when due, all Sale Expenses as well as all taxes, costs, expenses, accounts payable and other liabilities relating to the Sale, the Stores, Store Employees and Merchant's business operations during the Sale, including all occupancy expenses.

10.2     Merchant will prepare and process all reporting forms, certificates, reports and other documentation required in connection with the payment of all applicable taxes for the Stores to the appropriate taxing authorities. Merchant will collect all sales taxes and Merchant will pay the same to the appropriate taxing authorities in accordance with the applicable law.

10.3     Merchant will indemnify and hold Consultant and its agents, Personnel, principals and the Supervisors harmless from and against any and all damages, fines, penalties, losses, claims or expenses (including, without limitation, reasonable attorneys' fees) that Consultant may incur or sustain arising out of Merchant's failure to pay over to the appropriate taxing authority any taxes required to be paid by Merchant during the Sale Term in accordance with applicable law or to pay any liability referred to in Section 10.1 hereof.

10.4     Merchant will use all reasonable efforts to cause all Store Employees, and all other representatives and agents of Merchant to cooperate fully with Consultant and

its agents in connection with the Sale during the Sale Term, except as provided in Section 9.2 of this Agreement.

10.5    Merchant will indemnify and hold Consultant and its agents, Personnel, principals and Supervisors harmless from and against all liabilities, claims, demands, damages, costs, and expenses (including reasonable attorneys' fees) arising from or related to the (i) negligent acts or omissions of Merchant or its agents, employees, in connection with the Sale or (ii) the breach by Merchant of any of its obligations under this Agreement.

11.    INSURANCE

11.1    Merchant shall maintain throughout the Sale Term, liability insurance policies (including, but not limited to, product liability, comprehensive public liability insurance and auto liability insurance) covering injuries to persons and property in or in connection with Merchant's operation of the Stores, and shall cause Consultant to be an additional insured with respect to all such policies.  Merchant shall be responsible for the payment of all deductibles, self-insurance and other amounts payable in connection with any claim asserted under such policies, except for any claims arising directly from the negligence or willful misconduct of Consultant or Consultant Personnel.

12.    MISCELLANEOUS

12.1    Any notice or other communication under this Agreement shall be in writing and may be delivered personally or sent by facsimile or by prepaid registered or certified mail, addressed as follows:

        (a)    in the case of Consultant:

                Tiger Capital Group, LLC
                350 North LaSalle Street, Suite 1100
                Chicago, IL  60654
                Attn:  Mark P. Naughton
                Senior General Counsel

        (b)    in the case of Merchant:

                Sam Ash Music Corporation
                278 Duffy Ave.
                Hicksville, NY 11801
                Attn: David C. Ash, General Counsel

12.2    This Agreement is governed by and interpreted in accordance with the internal laws of the State of New York without reference to any conflict of laws provisions.

8

12.3    If any term or provision contained within this Agreement is determined to be illegal or unenforceable, then this Agreement will be interpreted as if the illegal or unenforceable term or provision was deleted and the remaining terms will continue to be in full force and effect.

12.4    This Agreement constitutes the entire agreement between the parties with respect to its subject matter and supersedes all prior negotiations and understandings, and can only be modified by a writing signed by Merchant and Consultant.

12.5    This Agreement will inure to the benefit of, and be binding upon, the parties and their respective successors and permitted assigns.

12.6    This Agreement may be executed in several counterparts, each of which when so executed shall be deemed to be an original and such counterparts, together, shall constitute one and the same instrument.  Delivery by facsimile of this Agreement or an executed counterpart hereof shall be deemed a good and valid execution and delivery hereof or thereof.

12.7    Nothing contained herein shall be deemed to create any relationship between Consultant and Merchant other than that of independent contractors.  It is stipulated that the parties are not partners or joint venturers.

12.8    Consultant shall have the right to syndicate its rights under this Agreement but in any event shall remain responsible for the performance of the duties hereunder.  No syndication of Consultants rights will be permitted to increase the Fees or expenses of a Sale.

12.9    After the date hereof, at the option of the Merchant, Merchant may add additional stores for Consultant to serve as Merchant's exclusive independent consultant in connection with the conduct of a Sale at such additional stores on the terms and conditions of this Agreement (subject only to appropriate adjustments to and agreement upon the Sale Commencement Date, the Sale Termination Date, the Sale Expense budget, the Consultant's fee payable and the FF&E fee for such additional Stores), which stores and terms shall be set forth in a writing agreed to by the parties hereto.

## 13. LICENSED GOODS

13.1    Subject to the agreement of Merchant, Consultant may deliver to any Store certain items of merchandise (the "Licensed Goods") of like kind and quality to the Merchandise in the Stores to be sold during the Sale.  The Licensed Goods shall remain the sole property of Consultant until sold.  Merchant acknowledges that it does not acquire any property right or security interest in such Licensed Goods and hereby grants Consultant a first priority security interest in the Licensed Goods which security interest shall be deemed perfected without the requirement of filing Uniform Commercial Code financing statements or providing notifications to any prior secured parties.

13.2    Merchant shall utilize distinct SKU's or other means in order to distinguish the Licensed Goods from other Merchandise at the Stores. The process for such shall be mutually acceptable to the parties.  Merchant shall collect all actual proceeds of all sales ("Gross Proceeds") from the sale of the Licensed Goods.  Merchant shall distribute the Gross Proceeds of such Licensed Goods to Consultant less a fee of seven and one half percent (7.5%) to Merchant as part of the weekly reconciliation hereunder.  No other fees under this Agreement will apply to the sale of Licensed Goods.

13.3    Immediately following the Sale Termination Date, Consultant shall remove the remaining Licensed Goods, if any, from the Stores.  As part of the Final Reconciliation, Consultant and Merchant shall jointly prepare a final reconciliation of the sale of Licensed Goods, including a summary of Gross Proceeds, expenses incurred (including the cost of goods sold, shipping, ticketing, etc.), and any amounts paid Consultant pursuant to Section 13.2 hereof. Consultant shall submit invoices or other reasonable documentation to Merchant as part of such Final Reconciliation setting forth expenses it has incurred with respect to the sale of the Licensed Goods. During the Sale, and until the Final Reconciliation is complete and all obligations under this Agreement have been satisfied, Merchant and Consultant shall have reasonable access to review and audit each other's records with respect to Gross Proceeds, expenses, and other sale-related items. The parties shall cooperate in good faith to resolve any disputes with regard to such reconciliation.  Upon completion of the Final Reconciliation, the parties shall pay any amounts remaining to equal (a) payment to Consultant of its expenses related to the sale of the Licensed Goods and (b) the fee for Merchant set forth above.

14.    FIXTURES

14.1    Consultant shall sell the furnishings, trade fixtures, equipment and improvements to real property which are located in the Stores (collectively, "FF&E") for a commission equal to twenty percent (20%) of the gross proceeds from the sale of such assets, plus reimbursement of Consultant's actual out of pocket expenses incurred in connection with the sale of such assets, provided that Merchant will have the ability to approve a budget for such expenses prior to the fixtures being sold.

TIGER CAPITAL GROUP, LLC

By:

Name: Mark P. Naughton

Its: Senior General Counsel

SAM ASH MUSIC CORPORATION

By: _____

Name:  David C. Ash

Its:    CEO and General Counsel

**Exhibit A**

**Store List**

| Loc Number | Location Name | Location Address | Location City | Location State | Postal Code |
|---|---|---|---|---|---|
| 2 | Huntington Station,Ny | 269 Old Walt Whitman Road | Huntington Station | NY | 11746 |
| 4 | Forest Hills,Ny | 113-25 Queens Boulevard | Forest Hills | NY | 11375 |
| 7 | Nyc,Ny | 333 W 34Th Street | Nyc | NY | 10001 |
| 13 | Edison, Nj | 1831 Rt 27 | Edison | NJ | 08817 |
| 18 | Buffalo Grove,Il | 1305 West Dundee Rd | Buffalo Grove | IL | 60089 |
| 20 | Lombard,Il | 1139 South Main Street | Lombard | IL | 60148 |
| 33 | Miami Lakes,Fl | 5360 Nw 167 Street | Miami Lakes | FL | 33014 |
| 34 | King Of Prussia,Pa | 139 E Dekalb Pike | King Of Prussia | PA | 19406 |
| 42 | Clearwater,Fl | 923 Mcmullen Booth Road | Clearwater | FL | 33759 |
| 49 | Philadelphia,Pa | 1887 Franklin Mills Circle | Philadelphia | PA | 19154 |
| 54 | Orlando,Fl | 4644 E Colonial Drive | Orlando | FL | 32803 |
| 56 | Cincinnati, Oh | 11805 Commons Drive | Cincinnati | OH | 45246 |
| 60 | City Of Industry,Ca | 18031 Gale Avenue | City Of Industry | CA | 91748 |
| 63 | Atlanta, Ga | 2999 Cobb Parkway | Atlanta | GA | 30339 |
| 64 | Los Angeles,Ca | 7401 West Sunset Boulevard | Los Angeles | CA | 90046 |
| 70 | Jacksonville, Fl | 8151 Blanding Boulevard | Jacksonville | FL | 32244 |
| 82 | New Haven,Ct | 95 Amity Road | New Haven | CT | 06515 |
| 95 | Los Angeles,Ca | 7360 Sunset Blvd | Los Angeles | CA | 90046 |

18

**Exhibit B**

**Consultant Expenses:** (1) (2)

| | |
|---|---:|
| Advertisement | $571,945 |
| Supervision | 1,206,971 |
| Miscellaneous | 5,000 |
| **Total Consultant Exp.** | **$1,783,916** |

Note(s):

(1) Assumes a 13.1-week Sale from Fri, 03/01 - Fri, 05/31.

(2) Note: Huntington Station location scheduled to close 3/31.

Execution Copy

## ADDENDUM TO CONSULTING AGREEMENT

THIS ADDENDUM TO CONSULTING AGREEMENT, dated as of April 24, 2024, is entered into by and between Tiger Capital Group, LLC ("**Consultant**") and Sam Ash Music Corporation ("**Merchant**" and together with Consultant, the "**Parties**").

## W I T N E S S E T H:

**WHEREAS**, Merchant and Consultant entered into that certain Consulting Agreement dated as of February 27, 2024 (the "**Agreement**")[1] whereby Consultant manages the sale of merchandise at certain locations identified therein that are being closed or sold pursuant to the terms set forth therein in the context of a "Store Closing" or similar themed sale at such locations (the "**Initial Stores**");

**WHEREAS**, Section 12.9 of the Agreement provides in part:

After the date hereof, at the option of the Merchant, Merchant may add additional stores for Consultant to serve as Merchant's exclusive independent consultant in connection with the conduct of a Sale at such additional stores on the terms and conditions of this Agreement (subject only to appropriate adjustments to and agreement upon the Sale Commencement Date, the Sale Termination Date, the Sale Expense budget, the Consultant's fee payable and the FF&E fee for such additional Stores), which stores and terms shall be set forth in a writing agreed to by the parties hereto;

**WHEREAS**, Merchant desires to add the stores set forth on **Exhibit A** (the "**Stores**") as additional locations under the Agreement (the "**Additional Stores**" and with the Initial Stores, the "**Stores**"), as well as Merchant's ecommerce channel and merchandise in Merchant's distribution centers set forth on **Exhibit C** hereto (the "**Other Inventory Locations**"), and for Consultant to manage the sale of such merchandise at such Additional Stores upon the terms of the Agreement as amended herein.

**NOW, THEREFORE**, in consideration of the premises and the mutual covenants and conditions contained herein, Merchant and Consultant do hereby agree as follows:

1.     The Additional Stores and the Merchandise included at such Additional Stores shall be included in the Sale. For the Additional Stores, the Sale Commencement Date shall be May 2, 2024, and the Sale Termination Date shall be as agreed to by the Parties subject to Section 2.2(g) hereof.

2.     **Exhibit B** hereto sets forth the Expense Budget for the Additional Stores and, to the extent included in the Sale, the Other Inventory Locations.

---

[1] All capitalized terms used but not otherwise defined herein shall have the same meanings ascribed to them in the Agreement.

- 1 -

3.      On the Sale Commencement Date, Section 2.2 of the Agreement shall be deleted and replaced with the following as to the Additional Stores:

Beginning on the Sale Commencement Date, Consultant will provide Merchant with the following Services for the Additional Stores, subject to the Merchant's ability to remove an Additional Store from this Agreement if Merchant receives a bona fide bid to purchase such Additional Store qualified in accordance with Merchant's sale process:

(a)      provide qualified, full time Supervisors to assist Merchant in the preparation for the Sale as further described in Section 2.3 below;

(b)      oversee the Sale of the Merchandise from the Stores;

(c)      determine and implement appropriate advertising to effectively sell the Merchandise during the Sale Term, consistent with the applicable sale theme;

(d)      recommend and implement appropriate pricing, display, and discounting of Merchandise in its discretion, as well as recommend appropriate staffing levels for the Stores (including Store Employees); and

(e)      determine and implement in its discretion as Consultant deems appropriate transfers of Merchandise between and among the Stores.

Consultant shall be authorized to advertise the Sale in the Additional Stores from the Sale Commencement Date as a "store closing," "sale on everything", "everything must go", or similar-themed sale in accordance with the terms of the Agreement and hereof.

4.      On May 16, 2024, in addition to the provisions of Paragraph 3 above, Section 2.2 of the Agreement shall be supplemented to include the following additional Services as it relates to the sale of Merchandise through the Additional Stores and Other Inventory Locations subject to the Merchant's ability to remove an Additional Store and/or Other Inventory Locations from this Agreement if Merchant receives a bona fide bid to purchase such Additional Store and/or Other Inventory Locations qualified in accordance with Merchant's sale process:

(a)      solicit bulk and wholesale offers for the Merchandise from retailers and other potential buyers for sales that do not go through the Stores;

(b)      determine and implement in its discretion as Consultant deems appropriate when to close Stores and end the Sale at each Store; and

- 2 -

(c)     provide such other related services deemed necessary or prudent by Merchant and Consultant under the circumstances giving rise to the Sale.

5.      As to the Other Inventory Locations, the following shall apply, subject to the Merchant's ability to remove Other Inventory Locations from this Agreement if Merchant receives a bona fide bid to purchase such Other Inventory Locations qualified in accordance with Merchant's sale process:

(a)     Beginning on the Sale Commencement Date:

(i)    Consultant shall provide on-site supervision, cooperate with Merchant in determining the proposed allocation to the Stores of Merchant's ecommerce channel Merchandise in the Other Inventory Locations and, if the terms of this section set forth below apply, assist regarding the transfer of such Merchandise to the Stores;

(ii)   Consultant shall provide efficient levels of on-site supervision in Las Vegas, NV and Indianapolis, IN given such locations are both Stores and Other Inventory Locations; and

(iii)  Offer the same discounts for the ecommerce sale of Merchandise as offered for sale in the Stores.

(b)     In the event that the multiple of sales of ecommerce Merchandise from the Sale Commencement Date through the first seven days thereafter (or at any time thereafter as an average for the preceding three days) does not exceed 1.25 times the sales of ecommerce merchandise during the corresponding period in the prior year, Consultant may (i) elect to cease fulfilling ecommerce orders through the Stores, and (ii) begin to implement the allocation schedule developed for Merchandise in the Other Inventory Locations and transfer such Merchandise to the Stores for inclusion in the Sale, subject to Merchant's ability to remove such assets from this Agreement if Merchant receives a bona fide bid to purchase such assets qualified in accordance with Merchant's sale process; and

(c)     Consultant shall be entitled to a fee as provided in the Agreement for sales of Merchandise through the ecommerce channel from the Stores and Other Inventory Locations.

6.      No later than May 15, 2024, Merchant shall advise Consultant of Merchant's intention with regard to the Samson inventory in Carson, CA and Hicksville,

- 3 -

NY.  If Merchant desires to have such inventory included in the Sale through the Stores, the parties shall reasonably cooperate to determine the terms for such sale.

7.      As an advance against Consultant Sale Expenses in connection with the sale of Merchandise, and to secure payment of any amounts under the Agreement as amended, no later than the business day before the Sale Commencement Date and in any event before filing of any bankruptcy petition, Merchant shall pay to Consultant an additional deposit in the amount of $600,000 (the "**Additional Deposit**").  The Additional Deposit and any other deposit being held pursuant to the Agreement will be applied against Consultant Sale Expenses and the fees referred to in Section 4.1 of the Agreement at the end of the Sale Term and to the extent not expended shall be returned to the Merchant as part of the final reconciliation or such other time that Merchant and Consultant mutually agree.  Consultant's obligations under this Addendum shall be conditioned upon Consultant receiving the Additional Deposit.

8.      In the event of the filing of a Bankruptcy Case, Merchant shall promptly seek assumption of this Agreement, including the retention of Consultant through the assumption of the Agreement and Addendum and conduct of the Sale set forth herein, from the Bankruptcy Court pursuant to sections 363 and 365  of the United States Bankruptcy Code (and not pursuant to sections 327, 328, 330, or 331 thereof) and pursuant to an Order (the "**Approval Order**") with terms acceptable to both Merchant and Consultant that provides, among other things, as follows: (i) approving the payment of all fees and reimbursement of expenses hereunder to Consultant from Gross Proceeds without further order of the court free and clear of all liens, claims and encumbrances; (ii) approving all such payments of fees and reimbursement of expenses from Gross Proceeds be made on a weekly basis without further order of the Bankruptcy Court and otherwise in accordance with the Agreement and this Addendum; (iii) approving the transactions contemplated hereby; (iv) authorizing the Sale without the necessity of complying with state and local rules, laws, ordinances and regulations, including, without limitation, permitting and licensing requirements, that could otherwise govern the Sale but in compliance with Sale Guidelines agreed to between the Parties and approved by the Bankruptcy Court and authorizing advertising (including the use of signage and signwalkers) as provided in the Sale Guidelines and the Approval Order; (v) authorizing the Sale notwithstanding restrictions in leases, reciprocal easement agreements or other contracts that purport to restrict the Sale or the necessity of obtaining any third party consents; (vi) authorizing Merchant to take all further actions as are necessary or appropriate to carry out the terms and conditions of the Agreement and this Addendum; and (vii) authorizing the sale of Licensed Goods (as defined in the Agreement) and granting Consultant a first priority senior security interest and lien upon any such Licensed Goods and proceeds thereof; and (viii) including protection of Consultant's fees and expenses as part of any "carve out" in any financing order entered by the Bankruptcy Court, which protection shall provide that all such fees and expenses shall be paid to Consultant from Gross Proceeds and without adherence to any DIP or cash collateral budget associated therewith. In such event, any legal action, suit or proceeding arising in connection with the Agreement shall be submitted to the exclusive jurisdiction of the Bankruptcy Court having jurisdiction over Merchant, and each Party hereby waives any

Execution Copy

defenses or objections based on lack of jurisdiction, improper venue, and/or forum non conveniens. From and after entry of the Approval Order, if applicable, Consultant shall conduct the Sale in accordance with the terms of the Approval Order and the Sale Guidelines in all material respects. In the event the Approval Order is not entered by the Bankruptcy Court or does not include the terms and conditions contained herein, (i) Merchant shall reimburse Consultant for any documented Consultant Sale Expenses actually incurred in connection with the Sale through and including the day immediately after denial of such motion by the Bankruptcy Court and (ii) Consultant may, in its sole discretion, elect to apply the Deposit and Additional Deposit, as applicable, and/or to terminate the Agreement. In the event of a bankruptcy filing, the Bankruptcy Court shall have exclusive jurisdiction to resolve any issues arising under the Agreement and this Addendum.

9. Consultant shall have the right, in its discretion, to syndicate this transaction with Gordon Brothers Retail Partners, LLC.

10. Except only as modified expressly herein, the terms of the Agreement shall remain in full force and effect and shall control the terms of the Sale conducted pursuant to the Agreement and this Addendum.

Execution Copy

**IN WITNESS WHEROF**, the parties hereto, intending to be legally bound, have caused this Addendum to be executed as of the Effective Date.

TIGER CAPITAL GROUP, LLC

By: _Mark P Naughton_

Name: _Mark P. Naughton_

Its: _Senior General Counsel_


SAM ASH MUSIC CORPORATION

By: _Jordan Meyers_
1B64A34695F3441...

Name:  Jordan Meyers

Its: Chief Restructuring Officer

- 6 -

# Exhibit A

## Store List

| Loc Number | Location Name | Location Address | Location City | Location State | Postal Code |
|---|---|---|---|---|---|
| 3 | Carle Place, Ny | 385 Old Country Road | Carle Place | NY | 11514 |
| 5 | Brooklyn, Ny | 2600 Flatbush Avenue | Brooklyn | NY | 11234 |
| 6 | White Plains, Ny | 178 Mamaroneck Avenue | White Plains | NY | 10601 |
| 14 | Cherry Hill, Nj | 2100 Route 38 | Cherry Hill | NJ | 08002 |
| 21 | Springfield Township,Nj | 155 Route 22 | Springfield Township | NJ | 07081 |
| 32 | Margate,Fl | 5460 W Sample Road | Margate | FL | 33073 |
| 35 | Lyndhurst,Oh | 5700 Mayfield Road | Lyndhurst | OH | 44124 |
| 36 | Columbus,Oh | 1690 Morse Road | Columbus | OH | 43229 |
| 37 | Westminster,Ca | 14200 Beach Boulevard | Westminster | CA | 92683 |
| 41 | Ontario,Ca | 4449 Mills Circle | Ontario | CA | 91764 |
| 45 | Madison,Tn | 1647 Gallatin Pike North | Madison | TN | 37115 |
| 46 | Orlando,Fl | 912 Lee Road | Orlando | FL | 32810 |
| 47 | Sarasota,Fl | 7606 N Tamiami Trail | Sarasota | FL | 34243 |
| 48 | Tampa,Fl | 13133 North Dale Mabry Highway | Tampa | FL | 33618 |
| 51 | Charlotte,Nc | 5533 Westpark Drive | Charlotte | NC | 28217 |
| 52 | Miami,Fl | 11401 Nw 12Th St | Miami | FL | 33172 |
| 53 | Las Vegas,Nv | 2747 S Maryland Pkwy | Las Vegas | NV | 89109 |
| 55 | Richmond, Va | 9110A West Broad Street | Richmond | VA | 23294 |
| 57 | Indianapolis, In | 8284 Center Run Drive | Indianapolis | IN | 46250 |
| 58 | Raleigh, Nc | 3131 Capital Boulevard | Raleigh | NC | 27604 |
| 59 | San Antonio,Tx | 25 Ne Loop 410 At Mccullough | San Antonio | TX | 78216 |
| 61 | Glendale, Az | 4402 West Cactus Road | Glendale | AZ | 85304 |
| 62 | Torrance, Ca | 18831 Hawthorne Blvd | Torrance | CA | 90504 |
| 65 | Dallas, Tx | 10838 N Central Expy | Dallas | TX | 75231 |
| 66 | San Diego, Ca | 3418 College Ave | San Diego | CA | 92115 |
| 67 | Houston, Tx | 9941 North Freeway | Houston | TX | 77037 |

26    Store(s)

## Exhibit B

**Consultant Expenses:** (1)

| | |
|---|---:|
| Advertisement | $500,000 |
| Supervision | 1,750,000 |
| Miscellaneous | 7,500 |
| **Total Consultant Exp.** | **$2,257,500(2)** |

Notes:

(1) Assumes a 11.1-week Sale from Wed, 05/01 - Tue, 07/17.

(2) This budget assumes that the Samson inventory will not be included in the Sale unless that inventory is already located in the Stores.

# Exhibit C

## Other Inventory Locations

| | | | | | |
|---|---|---|---|---|---|
| 44 | Tampa Mailorder Warehouse | 7726 Cheri Ct. | Tampa | FL | 33634 |
| 68 | Las Vegas Distribution Warehouse | 2747 S. Maryland Pkwy. | Las Vegas | NV | 89109 |
| 69 | Indianapolis Distribution Warehouse | 8284 Center Run Drive | Indianapolis | IN | 46250 |

# **EXHIBIT 2**

**Sale Procedures**

**Sale Procedures**[1]

1.     The Sale will be conducted during normal business hours or such hours as otherwise permitted by the applicable unexpired lease.

2.     The Sale shall be conducted in accordance with applicable state and local "Blue Laws", where applicable, so that no Sale shall be conducted on Sunday unless the Merchant had been operating such Store on a Sunday prior to the commencement of the Sale.

3.     On "shopping center" property, the Consultant shall not distribute handbills, leaflets or other written materials to customers outside of any Stores' premises, unless permitted by the lease or, if distribution is customary in the "shopping center" in which such Store is located; *provided* that the Consultant may solicit customers in the Stores themselves. On "shopping center" property, the Consultant shall not use any flashing lights or amplified sound to advertise the Sale or solicit customers, except as permitted under the applicable lease or agreed to by the landlord.

4.     At the conclusion of the Sale at each Store, the Consultant shall vacate the Stores; *provided* that Consultant may abandon any remaining property, including any Store signage or furniture, fixtures and equipment (including, but not limited to, machinery, rolling stock, office equipment and personal property, and conveyor systems and racking) ("FF&E") not sold in the Sale at the conclusion of the Sale (the "Termination Date"), without cost or liability of any kind to the Consultant. The Consultant shall notify the Merchant of its intention to abandon any FF&E at least two (2) days prior to the Termination Date. The Merchant will have the option to remove the FF&E, at its own cost prior to the Termination Date. Any abandoned FF&E left in a Closing Store after a lease is rejected shall be deemed abandoned to the landlord having a right to dispose of the same as the landlord chooses without any liability whatsoever on the part of the landlord to any party. For the avoidance of doubt, as of the Termination Date, the Consultant may abandon, in place and without further responsibility or liability of any kind, any FF&E.

5.     The Debtors and the Consultant may advertise the Sale as "store closing", "sale on everything", "everything must go", "everything on sale", "going-out-of-business" or similar-themed sales. The Debtors and the Consultant may also have a "countdown to closing" sign prominently displayed in a manner consistent with these Sale Procedures. All signs, banners, ads and other advertising material, promotions, and campaigns will be approved by the Merchant, prior to purchase, in accordance with the Consulting Agreement.

6.     The Consultant shall be permitted to utilize sign-walkers, display, hanging signs, and interior banners in connection with the Sale; *provided* that such sign walkers, display, window, hanging signs, and interior banners shall be professionally produced and hung in a professional manner. The Merchant and Consultant shall not use neon or day-glo on its

---

[1] Capitalized terms used but not defined in these Sale Procedures have the meanings given to them in the Interim Order to which these Sale Procedures are attached as Exhibit 2, or the Motion to which the Interim Order is attached, as applicable.

sign walkers, display, hanging signs, or interior banners. Furthermore, with respect to enclosed mall locations, no exterior signs or signs in common areas of a mall shall be used unless otherwise expressly permitted in these Sale Procedures. In addition, the Merchant and Consultant shall be permitted to utilize exterior banners at (i) non-enclosed mall Stores and (ii) enclosed mall Stores to the extent the entrance to the applicable Store does not require entry into the enclosed mall common area; *provided*, however, that such banners shall be located or hung so as to make clear that the Sale is being conducted only at the affected Store, and shall not be wider than the storefront of the Store. In addition, the Merchant and Consultant shall be permitted to utilize sign walkers in a safe and professional manner and in accordance with the terms of the Order. Nothing contained in these Sale Procedures shall be construed to create or impose upon the Debtors or the Consultant any additional restrictions not contained in the applicable lease agreement.

7.     Conspicuous signs shall be posted in the cash register areas of each of the affected Stores to effect that "all sales are final."

8.     Except with respect to the hanging of exterior banners, the Consultant shall not make any alterations to the storefront or exterior walls of any Stores, except as authorized by the applicable lease.

9.     The Debtors and the Consultant shall not make any alterations to interior or exterior Store lighting, except as authorized by the applicable lease. No property of the landlord of a Store shall be removed or sold during the Sale. The hanging of exterior banners or in-Store signage and banners shall not constitute an alteration to a Store.

10.     The Debtors and the Consultant shall keep Store premises and surrounding areas clear and orderly consistent with present practices.

11.     The Consultant, at the direction of the Debtors, and the landlord of any Store are authorized to enter into Side Letters without further order of the Court, provided that such agreements do not have a material adverse effect on the Debtors or their estates.

12.     Subject to the provisions of the Consulting Agreement, the Consultant shall have the right to use and sell all FF&E owned by the Merchant. The Consultant may advertise the sale of the FF&E in a manner consistent with these guidelines and the Consulting Agreement. The purchasers of any FF&E sold during the sale shall be permitted to remove the FF&E either through delivery entrances, service areas, the back or alternative shipping areas at any time, or through other areas after applicable business hours, provided, however that the foregoing shall not apply to de minimis FF&E sales made whereby the item can be carried out of the Store in a shopping bag or cart. For the avoidance of doubt, as of the Sale Termination Date, the Debtors and the Consultant may abandon, in place and without further responsibility, any FF&E or other remaining property.

13.     At the conclusion of the Sale at each Store, pending assumption or rejection of applicable leases, the landlords of the Stores shall have reasonable access to the Stores' premises as set forth in the applicable leases. The Merchant, Consultant and their agents and

2

representatives shall continue to have access to the Stores as provided for in the Consulting Agreement.

14. The rights of landlords against Merchant for any damages to a Store shall be reserved in accordance with the provisions of the applicable lease and applicable law.

15. An unexpired nonresidential real property lease will not be deemed rejected by reason of a Store closing or the adoption of these Sale Procedures.

16. If and to the extent that the landlord of any Store contends that the Debtors or the Consultant are in breach of or default under these Sale Procedures, such landlord shall provide at least five days' written notice, served by email or overnight delivery, on:

       If to the Debtors:

       Sam Ash Music Corporation
       Attention: Jordan Meyers
       E-mail address: jmeryers@scpllc.com

       with copies to:

       Cole Schotz P.C.
       Court Plaza North
       25 Main Street
       Hackensack, New Jersey 07602
       Attention: Ryan T. Jareck, Esq., and Matteo Percontino, Esq.
       E-mail Address: rjareck@coleschotz.com and mpercontino@coleschotz.com

       If to the Consultant:

       Tiger Capital Group, LLC
       60 State Street, 11th Floor
       Boston, MA 02109
       c/o Mark P. Naughton, Senior General Counsel
       Email: mnaughton@tigergroup.com

       with copies to:

       Riemer & Braunstein LLP
       Times Square Tower, Suite 2506
       Seven Times Square
       New York, New York
       Attn: Anthony Stumbo, Esq. and Steven E. Fox, Esq.
       E-mail address: astumbo@riemerlaw.com and sfox@riemerlaw.com

If the parties are unable to resolve the dispute, either the landlord or the Debtors shall have the right to schedule a hearing before the Court on no less than five days' written notice to the other party, served by email or overnight delivery.

**<u>EXHIBIT B</u>**

**Proposed Final Order**

| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY | |
| Caption in Compliance with D.N.J. LBR 9004-1(b)<br>**COLE SCHOTZ P.C.**<br>Court Plaza North<br>25 Main Street<br>P.O. Box 800<br>Hackensack, New Jersey 07602-0800<br>(201) 489-3000<br>(201) 489-1536 Facsimile<br>Michael D. Sirota, Esq.<br>msirota@coleschotz.com<br>Ryan T. Jareck, Esq.<br>rjareck@coleschotz.com<br>Matteo Percontino, Esq.<br>mpercontino@coleschotz.com<br>*Proposed Counsel to Debtors and Debtors in Possession* | |
| In re:<br><br>SAM ASH MUSIC CORPORATION, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 24-14727 (SLM)<br><br>Judge:<br><br>(Joint Administration Requested) |

**FINAL ORDER (I) AUTHORIZING THE DEBTORS TO ASSUME AND PERFORM UNDER THE CONSULTING AGREEMENT RELATED TO THE SALE OF INVENTORY, (II) APPROVING PROCEDURES FOR THE SALE OF INVENTORY, (III) APPROVING MODIFICATIONS TO CERTAIN CUSTOMER PROGRAMS, AND (IV) GRANTING RELATED RELIEF**

The relief set forth on the following pages, numbered two (2) through twenty-six (26), is

hereby **ORDERED**.

---

[1]    The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are: Sam Ash Music Corporation (3915); Samson Technologies Corp. (4062); Sam Ash Megastores, LLC (9955); Sam Ash California Megastores, LLC (3598); Sam Ash Florida Megastores, LLC (7276); Sam Ash Illinois Megastores, LLC (8966); Sam Ash Nevada Megastores, LLC (6399); Sam Ash New York Megastores, LLC (7753); Sam Ash New Jersey Megastores, LLC (8788); Sam Ash CT, LLC (5932); Sam Ash Music Marketing, LLC (2024); and Sam Ash Quikship Corp. (7410).  The location of debtor Sam Ash Music Corporation's principal place of business is 278 Duffy Avenue, P.O. Box 9047, Hicksville, NY 11802.

Page (2)
Debtors:            SAM ASH MUSIC CORPORATION, *et al.*
Case No.:           24-14727 (SLM)
Caption of Order:   FINAL ORDER (I) AUTHORIZING THE DEBTORS TO ASSUME AND
                    PERFORM UNDER THE CONSULTING AGREEMENT RELATED TO
                    THE SALE OF INVENTORY, (II) APPROVING PROCEDURES FOR
                    THE SALE OF INVENTORY, (III) APPROVING MODIFICATIONS TO
                    CERTAIN CUSTOMER PROGRAMS, AND (IV) GRANTING
                    RELATED RELIEF

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession

(collectively, the "Debtors") for entry of a final order (this "Final Order"), (a) authorizing the

Debtors to assume and perform under the Consulting Agreement, (b) authorizing the Debtors to

conduct closings or similarly themed Sale at the locations subject to the Consulting Agreement

(the "Stores") in accordance with the terms of the Sale Procedures attached to the Interim Order

as Exhibit 2, with any such related Sale to be free and clear of all Encumbrances; (c) approving

modifications to certain customer programs, including the return policy and acceptance of gift

cards and store credits, resulting from the Sale; (d) authorizing the sale or disposition of the Offered

Assets free and clear of Encumbrances; (e) authorizing the abandonment of certain burdensome

Merchandise, FF&E, and personal property; and (f) granting related relief, all as more fully set

forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over

this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the*

*Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey,

entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.); and this Court having

found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C.

§§ 1408 and 1409; and this Court having found that the Debtors' notice of the Motion and

opportunity for a hearing on the Motion were appropriate and no other notice need be provided;

---

[2] Capitalized terms used but not defined herein have the meanings ascribed to them in the Motion.

| | |
|---|---|
| Page (3) | |
| Debtors: | SAM ASH MUSIC CORPORATION, *et al.* |
| Case No.: | 24-14727 (SLM) |
| Caption of Order: | FINAL ORDER (I) AUTHORIZING THE DEBTORS TO ASSUME AND PERFORM UNDER THE CONSULTING AGREEMENT RELATED TO THE SALE OF INVENTORY, (II) APPROVING PROCEDURES FOR THE SALE OF INVENTORY, (III) APPROVING MODIFICATIONS TO CERTAIN CUSTOMER PROGRAMS, AND (IV) GRANTING RELATED RELIEF |

and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor,

**THE COURT HEREBY FINDS AND DETERMINES THAT:**[3]

A.    The Debtors have sound business reasons for assuming the Consulting Agreement and adopting the Sale Procedures, as set forth in the Motion and at the Hearing, and assuming the Consulting Agreement is a reasonable exercise of the Debtors' business judgement and in the best interest of the Debtors and their estates.

B.    The Consulting Agreement attached to the Interim Order as Exhibit 1, was negotiated, proposed, and entered into by the Consultant and the Debtors without collusion, in good faith and from arm's length bargaining positions.

C.    The Sale Procedures, which are attached to the Interim Order as Exhibit 2, are reasonable and appropriate, and are in the best interest of the Debtors' estates and the conduct of

---

[3] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact where appropriate. *See* Fed. R. Bankr. P. 7052.

Page (4)
Debtors:            SAM ASH MUSIC CORPORATION, *et al.*
Case No.:           24-14727 (SLM)
Caption of Order:   FINAL ORDER (I) AUTHORIZING THE DEBTORS TO ASSUME AND
                    PERFORM UNDER THE CONSULTING AGREEMENT RELATED TO
                    THE SALE OF INVENTORY, (II) APPROVING PROCEDURES FOR
                    THE SALE OF INVENTORY, (III) APPROVING MODIFICATIONS TO
                    CERTAIN   CUSTOMER   PROGRAMS,   AND   (IV)   GRANTING
                    RELATED RELIEF

the Sale in accordance with the Sale Procedures will provide an efficient means for the Debtors to

dispose of the Offered Assets.

D.      The Sale is in the best interest of the Debtors' estates.

E.      The Dispute Resolution Procedures (defined below) are fair and reasonable and

comply with applicable law.

F.      The Debtors have represented that they intend to neither sell nor lease personally

identifiable information pursuant to the relief requested in the Motion, although the Consultant

will be authorized to distribute emails and promotional materials to the Debtors' customers

consistent with the Debtors' existing policies on the use of consumer information.

G.      The entry of this Final Order is in the best interests of the Debtors and their estates,

creditors, and interest holders and all other parties in interest herein; and now therefore it is hereby

**ORDERED THAT:**

1.      The Motion is **GRANTED** on an final basis as set forth herein.

2.      To the extent any conflict between this Final Order, the Sale Procedures, and the

Consulting Agreement, the Sale Procedures shall control over the Consulting Agreement and the

terms of this Final Order shall control over the Sale Procedures and the Consulting Agreement. To

the extent of any conflict between this Final Order, the Sale Procedures, the Consulting Agreement,

Page (5)

| | |
|---|---|
| Debtors: | SAM ASH MUSIC CORPORATION, *et al.* |
| Case No.: | 24-14727 (SLM) |
| Caption of Order: | FINAL ORDER (I) AUTHORIZING THE DEBTORS TO ASSUME AND PERFORM UNDER THE CONSULTING AGREEMENT RELATED TO THE SALE OF INVENTORY, (II) APPROVING PROCEDURES FOR THE SALE OF INVENTORY, (III) APPROVING MODIFICATIONS TO CERTAIN CUSTOMER PROGRAMS, AND (IV) GRANTING RELATED RELIEF |

and a Side Letter (as defined below), subject to paragraph 43 hereof, the terms of the Side Letter shall control with respect to the Debtors and the applicable landlord.

**I.      Authority to Assume the Consulting Agreement**

3.      The Debtors are authorized to assume and perform under the Consulting Agreement pursuant to sections 363 and 365 of the Bankruptcy Code, including (a) making payments required by the Consulting Agreement to the Consultant without the need for any application of the Consultant or a further order of the Court and (b) allowing the sale of Licensed Goods. Consultant's fees and expenses shall be paid from the gross proceeds of the Sale, without further order of the Court or adherence to any weekly, monthly or aggregate limitation in a debtor-in possession financing or cash collateral budget entered in connection with these Chapter 11 Cases, but shall be subject to the terms of the Consulting Agreement itself, including as to any expense budgets attached thereto.

4.      Subject to the restrictions set forth in this Final Order, the Sale Procedures and any Side Letters (defined below), the Debtors and the Consultant are hereby authorized to take any and all actions as may be necessary or desirable to implement the Consulting Agreement and the Sale, and each of the transactions contemplated by the Consulting Agreement, and any actions taken by the Debtors and the Consultant necessary or desirable to implement the Consulting Agreement and/or the Sale prior to the date of this Final Order, are hereby approved and ratified.

Page (6)
Debtors:            SAM ASH MUSIC CORPORATION, *et al.*
Case No.:           24-14727 (SLM)
Caption of Order:   FINAL ORDER (I) AUTHORIZING THE DEBTORS TO ASSUME AND
                    PERFORM UNDER THE CONSULTING AGREEMENT RELATED TO
                    THE SALE OF INVENTORY, (II) APPROVING PROCEDURES FOR
                    THE SALE OF INVENTORY, (III) APPROVING MODIFICATIONS TO
                    CERTAIN   CUSTOMER   PROGRAMS,   AND   (IV)   GRANTING
                    RELATED RELIEF

5.      The Consulting Agreement and related documents may be modified, amended or
supplemented by the parties thereto in accordance with the terms thereof without further order of
this Court; *provided, however*, that the Sale Procedures may not be materially modified without
the consent of Tiger Finance, LLC (which can be by email through counsel) and notice and a
reasonable opportunity to object by the U.S. Trustee, landlords for the Stores, and any statutory
committee appointed in these Chapter 11 Cases.

6.      Notwithstanding anything contrary in the Consulting Agreement, the Debtors and
their estates shall not indemnify the Consultant for any damages arising out of the Consultant's
fraud, willful misconduct, or gross negligence.

## II.    Authority to Engage in Sale and Conduct Store Liquidations

7.      The Debtors are authorized pursuant to sections 105(a) and 363(b)(1) of the
Bankruptcy Code, to immediately continue and conduct the Sale at the Stores in accordance with
this Final Order, the Sale Procedures, and the Consulting Agreement, as may be modified by any
Side Letters (as defined below) between the Debtors and/or the Consultant and the landlords at the
Stores.

8.      The Sale Procedures are approved in their entirety.

9.      The Debtors are authorized to discontinue operations at the Stores in accordance
with this Final Order and the Sale Procedures.

Page (7)
Debtors:                SAM ASH MUSIC CORPORATION, *et al.*
Case No.:               24-14727 (SLM)
Caption of Order:       FINAL ORDER (I) AUTHORIZING THE DEBTORS TO ASSUME AND
                        PERFORM UNDER THE CONSULTING AGREEMENT RELATED TO
                        THE SALE OF INVENTORY, (II) APPROVING PROCEDURES FOR
                        THE SALE OF INVENTORY, (III) APPROVING MODIFICATIONS TO
                        CERTAIN CUSTOMER PROGRAMS, AND (IV) GRANTING
                        RELATED RELIEF

10.    All entities that are presently in possession of some or all of the Merchandise or FF&E in which the Debtors hold an interest that are or may be subject to the Consulting Agreement or this Final Order hereby are directed to surrender possession of such Merchandise or FF&E to the Debtors or the Consultant.

11.    Neither the Debtors nor the Consultant nor any of their officers, employees, or agents shall be required to obtain the approval of any third party, including (without limitation) any Governmental Unit (as defined under section 101(27) of the Bankruptcy Code) or landlord, to conduct the Sale, store closings, and to take the related actions authorized herein.

**III.    Conduct of the Sale**

12.    All newspapers and other advertising media in which the Sale may be advertised and all landlords are directed to accept this Final Order as binding authority so as to authorize the Debtors and the Consultant to conduct the Sale pursuant to the Consulting Agreement, including, without limitation, to conduct and advertise the sale of the Merchandise and FF&E in the manner contemplated by and in accordance with this Final Order, the Sale Procedures, and the Consulting Agreement.

13.    The Debtors and Consultant are hereby authorized to take such actions as may be necessary and appropriate to implement the Consulting Agreement and to conduct the Sale without necessity of further order of this Court as provided in the Consulting Agreement and the Sale

Page (8)
Debtors:            SAM ASH MUSIC CORPORATION, *et al.*
Case No.:           24-14727 (SLM)
Caption of Order:   FINAL ORDER (I) AUTHORIZING THE DEBTORS TO ASSUME AND
                    PERFORM UNDER THE CONSULTING AGREEMENT RELATED TO
                    THE SALE OF INVENTORY, (II) APPROVING PROCEDURES FOR
                    THE SALE OF INVENTORY, (III) APPROVING MODIFICATIONS TO
                    CERTAIN CUSTOMER PROGRAMS, AND (IV) GRANTING
                    RELATED RELIEF

Procedures (subject to any Side Letters), including, but not limited to, advertising the sale as a

"store closing," "sale on everything," "everything must go," or similar-themed sale as

contemplated in the Sale Procedures through the posting of signs (including the use of exterior

banners at non-enclosed mall closing locations, and at enclosed mall closing locations to the extent

the applicable closing location entrance does not require entry into the enclosed mall common

area), use of signwalkers, A-frames, and other street signage, as contemplated in the Sale

Procedures.

14.     Except as expressly provided in the Consulting Agreement and the Sale Procedures,

the sale of the Merchandise, Licensed Goods, and FF&E shall be conducted by the Debtors and

the Consultant notwithstanding any restrictive provision of any lease, sublease, restrictive

covenant, or other agreement relative to occupancy affecting or purporting to restrict the conduct

of the Sale (including the sale of the Merchandise, Licensed Goods, and FF&E), abandonment of

assets, or "going dark" provisions shall not be enforceable in conjunction with the Sale. Breach of

any such provisions in these chapter 11 cases in conjunction with the Sale shall not constitute a

default under a lease or provide a basis to terminate the lease; provided that the Sale is conducted

in accordance with the terms of this Final Order, any Side Letter, and the Sale Procedures. The

Debtors and/or Consultant and landlords of the Stores are authorized to enter into agreements

("Side Letters") between themselves modifying the Sale Procedures without further order of the

| | |
|---|---|
| Page (9) | |
| Debtors: | SAM ASH MUSIC CORPORATION, *et al.* |
| Case No.: | 24-14727 (SLM) |
| Caption of Order: | FINAL ORDER (I) AUTHORIZING THE DEBTORS TO ASSUME AND PERFORM UNDER THE CONSULTING AGREEMENT RELATED TO THE SALE OF INVENTORY, (II) APPROVING PROCEDURES FOR THE SALE OF INVENTORY, (III) APPROVING MODIFICATIONS TO CERTAIN CUSTOMER PROGRAMS, AND (IV) GRANTING RELATED RELIEF |

Court, and such Side Letters shall be binding as among the Debtors, the Consultant and any such landlords. In the event of any conflict between the Sale Procedures, the Consulting Agreement, any Side Letter, and this Final Order, subject to paragraph 43 hereof, the terms of such Side Letter shall control. Upon request (which may be by email), copies of any Side Letters will be provided to the U.S. Trustee, Tiger Finance, LLC, and/or any statutory committee of unsecured creditors at such point as to provide the reasonable opportunity to object; *provided* that such party is subject to or agrees to become bound by reasonable confidentiality obligations to the extent requested.

15.    Except as expressly provided for herein or in the Sale Procedures, no person or entity, including, but not limited to, any landlord, licensor, service providers, utilities, or creditors, shall take any action to directly or indirectly prevent, interfere with, or otherwise hinder consummation of the Sale, or the advertising and promotion (including the posting of signs and exterior banners or the use of signwalkers) of such sales, and all such parties and persons of every nature and description, including, but not limited to, any landlord, licensor, service providers, utilities, and creditors and all those acting for or on behalf of such parties, are prohibited and enjoined from (a) interfering in any way with, obstructing, or otherwise impeding, the conduct of the Sale, and/or (b) instituting any action or proceeding in any court (other than in the Bankruptcy Court) or administrative body seeking an order or judgment against, among others, the Debtors, the Consultant, or the landlords at the closing locations that might in any way directly or indirectly

| Page (10) | |
|---|---|
| Debtors: | SAM ASH MUSIC CORPORATION, *et al.* |
| Case No.: | 24-14727 (SLM) |
| Caption of Order: | FINAL ORDER (I) AUTHORIZING THE DEBTORS TO ASSUME AND PERFORM UNDER THE CONSULTING AGREEMENT RELATED TO THE SALE OF INVENTORY, (II) APPROVING PROCEDURES FOR THE SALE OF INVENTORY, (III) APPROVING MODIFICATIONS TO CERTAIN CUSTOMER PROGRAMS, AND (IV) GRANTING RELATED RELIEF |

obstruct or otherwise interfere with or adversely affect the conduct of the Sale and/or seek to recover damages for breach(es) of covenants or provisions in any lease, sublease, license, or contract based upon any relief authorized herein.

16.     In accordance with and subject to the terms and conditions of the Consulting Agreement, the Consultant shall have the right to use the Stores and all related Store services, furniture, fixtures, equipment and other assets of the Debtors for the purpose of conducting the Sale, free of any interference from any entity or person, subject to compliance with the Sale Procedures (as modified by any Side Letters) and this Final Order.

17.     The Consultant shall not be liable for sales taxes except as expressly provided in the Consulting Agreement and the payment of any and all sales taxes is the responsibility of the Debtors. The Debtors are directed to remit all taxes arising from the Sale to the applicable Governmental Units as and when due, provided that in the case of a bona fide dispute the Debtors are only directed to pay such taxes upon the resolution of such dispute, if and to the extent that the dispute is decided in favor of the applicable Governmental Unit. For the avoidance of doubt, sales taxes collected and held in trust by the Debtors shall not be used to pay any creditor or any other party, other than the applicable Governmental Unit for which the sales taxes are collected. The Consultant shall collect, remit to the Debtors, and account for sales taxes as and to the extent provided in the Consulting Agreements. This Final Order does not enjoin, suspend, or restrain the

| Page (11) | |
|---|---|
| Debtors: | SAM ASH MUSIC CORPORATION, *et al.* |
| Case No.: | 24-14727 (SLM) |
| Caption of Order: | FINAL ORDER (I) AUTHORIZING THE DEBTORS TO ASSUME AND PERFORM UNDER THE CONSULTING AGREEMENT RELATED TO THE SALE OF INVENTORY, (II) APPROVING PROCEDURES FOR THE SALE OF INVENTORY, (III) APPROVING MODIFICATIONS TO CERTAIN CUSTOMER PROGRAMS, AND (IV) GRANTING RELATED RELIEF |

assessment, levy, or collection of any tax under state, provincial or federal law, and does not constitute a declaratory judgment with respect to any party's liability for taxes under state, provincial or federal law.

18.    Pursuant to section 363(f) of the Bankruptcy Code, the Consultant, on behalf of the Debtors, is authorized to sell the Offered Assets and all sales of Offered Assets, whether by the Consultant or the Debtors, shall be free and clear of any and all liens, claims, encumbrances, and other interests; *provided, however*, that any such liens, claims, encumbrances, and other interests shall attach to the proceeds of the sale of the Offered Assets with the same validity, in the amount, with the same priority as, and to the same extent that any such liens, claims, and encumbrances have with respect to the Offered Assets, subject to any claims and defenses that the Debtors may possess with respect thereto and the Consultant's fees and expenses (as provided in the Consulting Agreement).

19.    The Debtors and/or the Consultant (as the case may be) are authorized and empowered to transfer Offered Assets among, and into, the Stores in accordance with the Sale Procedures, as applicable. The Consultant is authorized to sell the Debtors' FF&E and abandon the same, in each case, as provided for and in accordance with the terms of the Consulting Agreement and the Sale Procedures.

Page (12)
Debtors:              SAM ASH MUSIC CORPORATION, *et al.*
Case No.:             24-14727 (SLM)
Caption of Order:     FINAL ORDER (I) AUTHORIZING THE DEBTORS TO ASSUME AND
                      PERFORM UNDER THE CONSULTING AGREEMENT RELATED TO
                      THE SALE OF INVENTORY, (II) APPROVING PROCEDURES FOR
                      THE SALE OF INVENTORY, (III) APPROVING MODIFICATIONS TO
                      CERTAIN   CUSTOMER   PROGRAMS,   AND   (IV)   GRANTING
                      RELATED RELIEF

20.     The Consultant is authorized to supplement the Merchandise in the Sale with the Licensed Goods. The Licensed Goods shall be purchased by the Consultant as part of the Sale and delivered to the Stores at the Consultant's sole expense (including as to labor, freight, and insurance relative to shipping such Licensed Goods to the Stores). Sales of Licensed Goods shall be run through the Debtors' cash register systems; provided, however, that the Merchant shall utilize distinct SKU's or other means in order to distinguish the Licensed Goods from other Merchandise at the Stores which process for such shall be mutually acceptable to the Debtors and the Consultant.

21.     All transactions relating to the Licensed Goods are, shall be construed as, and are acknowledged by the Debtors to be, a true consignment from Consultant to the Debtors under Article 9 of the Uniform Commercial Code (the "UCC") and not a consignment for security purposes. Except for the fee earned by the Merchant pursuant to the terms of the Consulting Agreement, at all times and for all purposes, the Licensed Goods and their proceeds shall be the exclusive property of the Consultant, and no other person or entity (including, without limitation, the Debtors, or any third person claiming a security interest in the Debtors' property, including any of the Debtors' secured lenders) shall have any claim against any of the Licensed Goods or the proceeds thereof. The Licensed Goods shall at all times remain subject to the exclusive control of the Consultant.

Page (13)
Debtors:                SAM ASH MUSIC CORPORATION, *et al.*
Case No.:               24-14727 (SLM)
Caption of Order:       FINAL ORDER (I) AUTHORIZING THE DEBTORS TO ASSUME AND
                        PERFORM UNDER THE CONSULTING AGREEMENT RELATED TO
                        THE SALE OF INVENTORY, (II) APPROVING PROCEDURES FOR
                        THE SALE OF INVENTORY, (III) APPROVING MODIFICATIONS TO
                        CERTAIN CUSTOMER PROGRAMS, AND (IV) GRANTING
                        RELATED RELIEF

22.     The Consultant is hereby granted a first-priority security interest and lien upon (a)

the Licensed Goods and (b) the Consultant's portion of the Licensed Goods proceeds, which

security interest shall be deemed perfected without the requirement of filing UCC financing

statements or providing notifications to any prior secured parties (provided that the Consultant is

hereby authorized to deliver any notices and file any financing statements and amendments thereof

under the applicable UCC identifying the Consultant's interest in the Licensed Goods (and any

proceeds thereof) as consigned goods thereunder and the Debtors as the consignee therefor, and

the Consultant's security interest in such Licensed Goods and the Consultant's portion of the

Licensed Goods proceeds). As part of each weekly reconciliation, the Debtors shall turnover all

proceeds from the sale of Licensed Goods to the Consultant, net of any fee payable to the Debtors

pursuant to the Consulting Agreement.

23.     Neither the Sale Procedures, Consulting Agreement, nor this Final Order authorize

the Debtors to transfer or sell to Consultant or any other party the personal identifying information

(which means information that alone or in conjunction with other information identifies an

individual, including but not limited to an individual's first name (or initial) and last name, physical

address, electronic address, telephone number, social security number, date of birth, government-

issued identification number, account number and credit or debit card number) ("PII") of any

customers unless such sale or transfer is permitted by the Debtors' privacy policy and state or

| | |
|---|---|
| Page (14) | |
| Debtors: | SAM ASH MUSIC CORPORATION, *et al.* |
| Case No.: | 24-14727 (SLM) |
| Caption of Order: | FINAL ORDER (I) AUTHORIZING THE DEBTORS TO ASSUME AND PERFORM UNDER THE CONSULTING AGREEMENT RELATED TO THE SALE OF INVENTORY, (II) APPROVING PROCEDURES FOR THE SALE OF INVENTORY, (III) APPROVING MODIFICATIONS TO CERTAIN CUSTOMER PROGRAMS, AND (IV) GRANTING RELATED RELIEF |

federal privacy and/or identity theft prevention laws and rules (collectively, the "Applicable Privacy Laws"). The foregoing shall not limit the Consultant's use of the Debtors' customer lists and mailing lists in accordance with the Consulting Agreement solely for purposes of advertising and promoting the Sale.

24.     The Debtors shall remove or cause to be removed any confidential and/or PII in any of the Debtors hardware, software, computers or cash registers or similar equipment which are to be sold or abandoned so as to render the PII unreadable or undecipherable. At the conclusion of the Sale, the Consultant shall provide the Debtors with written verification that the Consultant has not removed, copied, or transferred any customer PII and that any records containing PII were shredded, erased or otherwise modified to render the PII unreadable or undecipherable.

25.     Nothing herein shall limit the Debtors' right to pause or discontinue a Sale at a Store on notice to affected parties and subject to the prior written consent (which can be by email through counsel) of Tiger Finance, LLC.

26.     Nothing herein is intended to affect any rights of any applicable government unit to enforce any law affecting the Debtors' conduct of any store closing sale that occurred before the Petition Date.

Page (15)
Debtors:              SAM ASH MUSIC CORPORATION, *et al.*
Case No.:             24-14727 (SLM)
Caption of Order:     FINAL ORDER (I) AUTHORIZING THE DEBTORS TO ASSUME AND
                      PERFORM UNDER THE CONSULTING AGREEMENT RELATED TO
                      THE SALE OF INVENTORY, (II) APPROVING PROCEDURES FOR
                      THE SALE OF INVENTORY, (III) APPROVING MODIFICATIONS TO
                      CERTAIN   CUSTOMER   PROGRAMS,   AND   (IV)   GRANTING
                      RELATED RELIEF

## IV.    Customer Programs

27.    All in-store sales in the Sale shall be "as is" and final. Returns related to the purchases made in the Sale shall not be accepted, except as set forth herein.  The Debtors shall accept returns of merchandise sold by the Debtors in the ordinary course prior to the commencement of the Sale or May 2, 2024, as applicable; *provided*, that such return is otherwise in compliance with the Debtors' return policies in effect as of the date such item was purchased and the customer is not repurchasing the same item so as to take advantage of the sale price being offered in the Sale.

28.    Notwithstanding anything herein, all state and federal laws relating to implied warranties for latent defects shall be complied with and are not superseded by the sale of said goods or the use of the terms "as is" or "final sales." The Debtors and/or the Consultant shall accept return of any goods purchased during the Sales that contain a defect which the lay consumer could not reasonably determine was defective by visual inspection prior to purchase for a full refund, provided that the consumer must return the merchandise within twenty-one days of purchase, the consumer must provide a receipt, and the asserted defect must in fact be a "latent" defect.

29.    All sales of Merchandise shall be made by cash, gift card or gift certificate (subject to paragraph 30 below), store credit (subject to paragraph 30 below), debit card, or credit card and, at Debtor's discretion, by check or otherwise in accordance with the Debtors' policies.

| | |
|---|---|
| Page (16) | |
| Debtors: | SAM ASH MUSIC CORPORATION, *et al.* |
| Case No.: | 24-14727 (SLM) |
| Caption of Order: | FINAL ORDER (I) AUTHORIZING THE DEBTORS TO ASSUME AND PERFORM UNDER THE CONSULTING AGREEMENT RELATED TO THE SALE OF INVENTORY, (II) APPROVING PROCEDURES FOR THE SALE OF INVENTORY, (III) APPROVING MODIFICATIONS TO CERTAIN CUSTOMER PROGRAMS, AND (IV) GRANTING RELATED RELIEF |

30.     To the extent not already expired or subject to an earlier expiration by their terms or applicable law, the Debtors will continue to accept validly-issued gift cards, store credits, and gift certificates in their retail stores and online, in the ordinary course, in each case only where issued prior to the Petition Date, through June 7, 2024.  After June 7, 2024, the Debtors will no longer accept gift cards, store credits, or gift certificates and such gift cards, store credits, and/or gift certificates will be deemed to have no remaining value.  Notwithstanding any policy or law to the contrary, the gift cards, store credits, and/or gift certificates are not redeemable for cash at any time. The Debtors will post notice of the change to the limitation of use of the gift cards, store credits, and gift certificates on the Sam Ash Music eCommerce website, the bankruptcy case website, at cash registers in their retail locations, and through the Sam Ash Music social media channels, which notice shall be deemed good and sufficient notice.

## V.     Dispute Resolution Procedures With Governmental Units

31.     Nothing in this Final Order, the Consulting Agreement, the Sale Procedures, or any Side Letter releases, nullifies, or enjoins the enforcement of any liability to a Governmental Unit under environmental laws or regulations (or any associated liabilities for penalties, damages, cost recovery, or injunctive relief) to which any entity would be subject as the owner, lessor, lessee, or operator of the property after the date of entry of this Final Order. Nothing contained in this Final Order, the Consulting Agreement, the Sale Procedures, or any Side Letter shall in any way: (a)

Page (17)
Debtors:           SAM ASH MUSIC CORPORATION, *et al.*
Case No.:          24-14727 (SLM)
Caption of Order:  FINAL ORDER (I) AUTHORIZING THE DEBTORS TO ASSUME AND
                   PERFORM UNDER THE CONSULTING AGREEMENT RELATED TO
                   THE SALE OF INVENTORY, (II) APPROVING PROCEDURES FOR
                   THE SALE OF INVENTORY, (III) APPROVING MODIFICATIONS TO
                   CERTAIN  CUSTOMER  PROGRAMS,  AND  (IV)  GRANTING
                   RELATED RELIEF

diminish the obligation of any entity to comply with environmental laws; or (b) diminish the

obligations of the Debtors to comply with environmental laws consistent with their rights and

obligations as debtors in possession under the Bankruptcy Code. Except as otherwise provided

herein, the Sale shall not be exempt from laws of general applicability, including, without

limitation, public health and safety, criminal, tax, (including, but not limited to, the collection of

Sales Taxes), labor, employment, environmental, antitrust, fair competition, traffic and consumer

protection laws, including consumer laws regulating deceptive practices and false advertising,

consumer protection, the sale of gift certificates, layaway programs, return of goods, express or

implied warranties of goods, and "weights and measures" regulation and monitoring (collectively,

"General Laws"). Nothing in this Final Order, the Consulting Agreement, the Sale Procedures, or

any Side Letter shall alter or affect obligations to comply with all applicable federal safety laws

and regulations. Nothing in this Final Order shall be deemed to bar any Governmental Unit (as

such term is defined in section 101(47) of the Bankruptcy Code) from enforcing General Laws in

the applicable non-bankruptcy forum, subject to the Debtors' rights to assert in that forum or before

this Court that any such laws are not in fact General Laws or that such enforcement is

impermissible under the Bankruptcy Code or this Final Order. Notwithstanding any other

provision in this Final Order, no party waives any rights to argue any position with respect to

whether the conduct was in compliance with this Final Order and/or any applicable law, or that

| Page (18) | |
|---|---|
| Debtors: | SAM ASH MUSIC CORPORATION, *et al.* |
| Case No.: | 24-14727 (SLM) |
| Caption of Order: | FINAL ORDER (I) AUTHORIZING THE DEBTORS TO ASSUME AND PERFORM UNDER THE CONSULTING AGREEMENT RELATED TO THE SALE OF INVENTORY, (II) APPROVING PROCEDURES FOR THE SALE OF INVENTORY, (III) APPROVING MODIFICATIONS TO CERTAIN CUSTOMER PROGRAMS, AND (IV) GRANTING RELATED RELIEF |

enforcement of such applicable law is preempted by the Bankruptcy Code. Nothing in this Final Order shall be deemed to have made any rulings on any such issues.

32.    To the extent that the sale of Offered Assets and/or Licensed Goods is subject to any Liquidation Sale Laws, including any federal, state or local statute, ordinance, rule, or licensing requirement directed at regulating "going out of business," "store closing," or similar inventory liquidation sales, or bulk sale laws, laws restricting safe, professional and nondeceptive, customary advertising such as signs, banners, signage, and use of sign-walkers solely in connection with the sale of the Offered Assets or Licensed Goods, including ordinances establishing license or permit requirements, waiting periods, time limits or bulk sale restrictions that would otherwise apply to the sale of the Offered Assets or Licensed Goods, the Dispute Resolution Procedures in this section shall apply:

i.    Provided that the Sale is conducted in accordance with this Final Order, and the Sale Procedures, the Debtors, the Consultant, and the Debtors' landlords, shall be deemed to be in compliance with any requirements of all county, parish, or municipal or other local government (hereinafter referred to as "Local") and State requirements governing the conduct of the Sale, including but not limited to Local statutes, regulation and ordinances establishing licensing or permitting requirements, waiting periods or time limits, or bulk sale restrictions that would otherwise apply to the Sale (collectively, the "Liquidation Sale Laws") of any state or local Governmental Unit (as defined in Bankruptcy Code section 101(27)); provided, that the term "Liquidation Sale Laws" shall be deemed not to include any public health or safety laws of any state (collectively, "Safety Laws"), and the Debtors and the Consultant shall continue to be required to comply, as applicable, with such Safety Laws and General Laws, subject to any applicable provision of the Bankruptcy Code and federal law, and nothing in this Order shall be deemed to

Page (19)
Debtors:             SAM ASH MUSIC CORPORATION, *et al.*
Case No.:            24-14727 (SLM)
Caption of Order:    FINAL ORDER (I) AUTHORIZING THE DEBTORS TO ASSUME AND
                     PERFORM UNDER THE CONSULTING AGREEMENT RELATED TO
                     THE SALE OF INVENTORY, (II) APPROVING PROCEDURES FOR
                     THE SALE OF INVENTORY, (III) APPROVING MODIFICATIONS TO
                     CERTAIN    CUSTOMER    PROGRAMS,    AND    (IV)    GRANTING
                     RELATED RELIEF

---

        bar Governmental Units (as defined in section 101(27) of the Bankruptcy Code) or public officials from enforcing Safety Laws or General Laws.

ii.     Within five (5) business days after entry of this Final Order, the Debtors will serve by first-class mail, copies of this Final Order, the proposed Final Order, the Consulting Agreement, and the Sale Procedures on the following: (a) the Attorney General's office for each state where the Sale is being held; (b) the county consumer protection agency or similar agency for each county where the Sale is being held; (c) the division of consumer protection for each state where the Sale is being held; and (d) the landlords for the Stores (collectively, the "Dispute Notice Parties").

iii.    To the extent that there is a dispute arising from or relating to the Sale, this Final Order, the Consulting Agreement, or the Sale Procedures, which dispute relates to any Liquidation Sale Laws (a "Reserved Dispute"), the Bankruptcy Court shall retain exclusive jurisdiction to resolve the Reserved Dispute. Within ten (10) days following entry of this Final Order, any Governmental Unit may assert that a Reserved Dispute exists by sending a notice (the "Dispute Notice") explaining the nature of the dispute to: (a) Cole Schotz P.C., Court Plaza North, 25 Main Street, Hackensack, New Jersey 07601, Attn: Michael D. Sirota, Esq., Ryan T. Jareck, Esq., and Matteo Percontino, Esq.; (b) on behalf of Tiger, (i) 60 State Street, 11th Floor, Boston, MA 02109, c/o Mark P. Naughton, Senior General Counsel and (ii) Riemer & Braunstein LLP, Times Square Tower, Suite 2506, Seven Times Square, New York, New York, Attn: Anthony Stumbo, Esq. and Steven E. Fox, Esq.; and (c) the affected landlord. If the Debtors and the Governmental Unit are unable to resolve the Reserved Dispute within 15 days after service of the notice, the Governmental Unit may file a motion with the Bankruptcy Court requesting that the Bankruptcy Court resolve the Reserved Dispute (a "Dispute Resolution Motion").

iv.    In the event that a Dispute Resolution Motion is filed, nothing in the Final Order or the Final Order, as applicable, shall preclude the Debtors, a landlord, or any other interested party from asserting (A) that the provisions of any Liquidation Sale Laws are preempted by the Bankruptcy Code, or (B) that neither the terms of this Final Order nor the conduct of the Debtors pursuant to the Interim Order or the Final Order, violates such Liquidation Sale Laws. Filing a Dispute Resolution Motion as set forth herein shall not be deemed to affect the finality of the Interim Order or Final Order or to limit or interfere with the Debtors' or the Consultant's ability to

Page (20)
Debtors:                SAM ASH MUSIC CORPORATION, *et al.*
Case No.:               24-14727 (SLM)
Caption of Order:       FINAL ORDER (I) AUTHORIZING THE DEBTORS TO ASSUME AND
                        PERFORM UNDER THE CONSULTING AGREEMENT RELATED TO
                        THE SALE OF INVENTORY, (II) APPROVING PROCEDURES FOR
                        THE SALE OF INVENTORY, (III) APPROVING MODIFICATIONS TO
                        CERTAIN    CUSTOMER    PROGRAMS,    AND    (IV)    GRANTING
                        RELATED RELIEF

conduct or to continue to conduct the Sale pursuant to the Interim Order or Final Order, as applicable, absent further order of the Bankruptcy Court. Upon the entry of the Interim Order or Final Order, the Bankruptcy Court grants authority for the Debtors and the Consultant to conduct the Sale pursuant to the terms of the Interim Order or the Final Order, the Consulting Agreement, and the Sale Procedures (as may be modified by Side Letters) and to take all actions reasonably related thereto or arising in connection therewith. The Governmental Unit will be entitled to assert any jurisdictional, procedural, or substantive arguments it wishes with respect to the requirements of its Liquidation Sale Laws or the lack of any preemption of such Liquidation Sale Laws by the Bankruptcy Code. Nothing in the Interim Order or Final Order will constitute a ruling with respect to any issues to be raised in any Dispute Resolution Motion.

v.      If, at any time, a dispute arises between the Debtors and/or the Consultant and a Governmental Unit as to whether a particular law is a Liquidation Sale Law, and subject to any provisions contained in the Interim Order or Final Order related to the Liquidation Sale Laws, then any party to that dispute may utilize the provisions of subparagraphs (iii) and (iv) above by serving a notice to the other party and proceeding thereunder in accordance with those paragraphs. Any determination with respect to whether a particular law is a Liquidation Sale Law shall be made *de novo*.

33.     Subject to paragraphs 31 and 32 above, each and every federal, state, or local agency, departmental, or Governmental Unit with regulatory authority over the Sale and all newspapers and other advertising media in which the Sale is advertised shall consider this Final Order as binding authority that no further approval, license, or permit of any Governmental Unit shall be required, nor shall the Debtors or the Consultant be required to post any bond, to conduct the Sale.

34.     Provided that the Sale is conducted in accordance with the terms of this Final Order, the Consulting Agreement, and the Sale Procedures (as may be modified by Side Letters) and in

| Page (21) | |
|---|---|
| Debtors: | SAM ASH MUSIC CORPORATION, *et al.* |
| Case No.: | 24-14727 (SLM) |
| Caption of Order: | FINAL ORDER (I) AUTHORIZING THE DEBTORS TO ASSUME AND PERFORM UNDER THE CONSULTING AGREEMENT RELATED TO THE SALE OF INVENTORY, (II) APPROVING PROCEDURES FOR THE SALE OF INVENTORY, (III) APPROVING MODIFICATIONS TO CERTAIN CUSTOMER PROGRAMS, AND (IV) GRANTING RELATED RELIEF |

light of the provisions in the laws that exempt court-ordered sales from their provisions, the Debtors and Consultant shall be presumed to be in compliance with any Liquidation Sale Laws and are authorized to conduct the Sale in accordance with the terms of this Final Order and the Sale Procedures (as may be modified by Side Letters) without the necessity of further showing compliance with any such Liquidation Sale Laws.

35.     Nothing in this Final Order, the Consulting Agreement, the Sale Procedures, or any Side Letter releases, nullifies, or enjoins the enforcement of any liability to a Governmental Unit under environmental laws or regulations (or any associated liabilities for penalties, damages, cost recovery, or injunctive relief) to which any entity would be subject as the owner, lessor, lessee, or operator of the property after the date of entry of this Final Order. Nothing contained in this Final Order, the Consulting Agreement, the Sale Procedures, or any Side Letter shall in any way: (a) diminish the obligation of any entity to comply with environmental laws; or (b) diminish the obligations of the Debtors to comply with environmental laws consistent with their rights and obligations as debtors in possession under the Bankruptcy Code.

## VI.    Other Provisions

36.     Notwithstanding anything to the contrary in the Consulting Agreement or this Final Order, to the extent the Debtors' contemporaneous sale process results in a qualified purchaser committing to acquire the Debtors' businesses as a going concern, the Debtors in their discretion

| | |
|---|---|
| Page (22) | |
| Debtors: | SAM ASH MUSIC CORPORATION, *et al.* |
| Case No.: | 24-14727 (SLM) |
| Caption of Order: | FINAL ORDER (I) AUTHORIZING THE DEBTORS TO ASSUME AND PERFORM UNDER THE CONSULTING AGREEMENT RELATED TO THE SALE OF INVENTORY, (II) APPROVING PROCEDURES FOR THE SALE OF INVENTORY, (III) APPROVING MODIFICATIONS TO CERTAIN CUSTOMER PROGRAMS, AND (IV) GRANTING RELATED RELIEF |

may cease the Sale under the Consulting Agreement at any Store or the distribution center as needed to implement the transaction.

37.     To the extent the Debtors are subject to any state Fast Pay Laws in connection with the Sale, the Debtors shall be presumed to be in compliance with such laws to the extent, in applicable states, such payroll payments are made by the later of: (a) the Debtors' next regularly scheduled payroll; and (b) seven calendar days following the termination date of the relevant employee, and in all such cases consistent with, and subject to, any previous orders of this Court regarding payment of same.

38.     Neither the Consultant nor any of its respective affiliates (whether individually, as part of a joint venture, or otherwise), shall be precluded from providing additional services to the Debtors and/or bidding on the Debtors' assets in connection with any other future process that may or may not be undertaken by the Debtors to close stores, provided that any such services and/or transactions shall be approved by separate order of this Court, and provided further that the rights of the U.S. Trustee and all other parties in interest to object to any request that the Consultant or its affiliates be permitted to provide such additional services and/or transactions are fully reserved.

39.     On a confidential basis and for professionals' "eyes only" and upon the written (which can be by email through counsel) request of the U.S. Trustee, Tiger Finance, LLC, or the official committee of unsecured creditors, if any, the Debtors shall provide such requesting party,

Page (23)
Debtors:            SAM ASH MUSIC CORPORATION, *et al.*
Case No.:           24-14727 (SLM)
Caption of Order:   FINAL ORDER (I) AUTHORIZING THE DEBTORS TO ASSUME AND
                    PERFORM UNDER THE CONSULTING AGREEMENT RELATED TO
                    THE SALE OF INVENTORY, (II) APPROVING PROCEDURES FOR
                    THE SALE OF INVENTORY, (III) APPROVING MODIFICATIONS TO
                    CERTAIN    CUSTOMER    PROGRAMS,    AND    (IV)    GRANTING
                    RELATED RELIEF

if any, with copies of those periodic reports and information regarding the conduct of the Sale that

are prepared by the Debtors, their professionals or the Consultant and that are consistent with

practices that were in place pre-petition; *provided*, that the foregoing shall not require the Debtors,

their professionals, or the Consultant to prepare or undertake to prepare any additional or new

reporting not otherwise being prepared by the Debtors, their professionals, or the Consultant in

connection with the Sale.

40.      The Consultant shall not be liable for any claims against the Debtors, and the

Debtors shall not be liable for any claims against the Consultant, in each case, other than as

expressly provided for in the Consulting Agreement.

41.      Notwithstanding the relief granted in this Final Order and any actions taken

pursuant to such relief, nothing in this Final Order shall be deemed: (a) an admission as to the

validity of any particular claim against the Debtors; (b) a waiver of the Debtors' rights to dispute

any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d)

an implication or admission that any particular claim is of a type specified or defined in this Final

Order or the Motion; (e) a request or authorization to assume any agreement, contract, or lease,

pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors', or any

other party in interest's, rights under the Bankruptcy Code or any other applicable law; or (g) a

concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that

| | |
|---|---|
| Page (24) | |
| Debtors: | SAM ASH MUSIC CORPORATION, *et al.* |
| Case No.: | 24-14727 (SLM) |
| Caption of Order: | FINAL ORDER (I) AUTHORIZING THE DEBTORS TO ASSUME AND PERFORM UNDER THE CONSULTING AGREEMENT RELATED TO THE SALE OF INVENTORY, (II) APPROVING PROCEDURES FOR THE SALE OF INVENTORY, (III) APPROVING MODIFICATIONS TO CERTAIN CUSTOMER PROGRAMS, AND (IV) GRANTING RELATED RELIEF |

may be satisfied pursuant to the Motion are valid, and the rights of all parties are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens. Any payment made pursuant to this Final Order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim, other than with respect to payments made to the Consultant, which are governed by the reconciliation procedures in the Consulting Agreement.

42.     Notwithstanding anything to the contrary contained in the Motion or this Final Order, except for compensation payable and expense reimbursement to the Consultant under the Consulting Agreement, which shall be paid and/or reimbursed, as applicable in accordance with the terms of the Consulting Agreement, any payment to be made, obligation incurred, or relief or authorization granted hereunder shall not be inconsistent with, and shall be subject to and in compliance with and any authorization of the Debtors contained herein is subject to: (a) any interim or final orders entered by the Court approving the Debtors' entry into any postpetition debtor-in-possession financing facility and/or authorizing the use of cash collateral; (b) the documentation in respect of any such debtor-in-possession financing or use of cash collateral; and (c) any budget or cash flow forecasts in connection therewith (in each case, the "DIP Order").

43.     No payment may be made by the Debtors to, or for the benefit of, any non-Debtor Insider (as defined in section 101 of the Bankruptcy Code) or any non-Debtor affiliate of or related

Page (25)
Debtors:              SAM ASH MUSIC CORPORATION, *et al.*
Case No.:             24-14727 (SLM)
Caption of Order:     FINAL ORDER (I) AUTHORIZING THE DEBTORS TO ASSUME AND
                      PERFORM UNDER THE CONSULTING AGREEMENT RELATED TO
                      THE SALE OF INVENTORY, (II) APPROVING PROCEDURES FOR
                      THE SALE OF INVENTORY, (III) APPROVING MODIFICATIONS TO
                      CERTAIN CUSTOMER PROGRAMS, AND (IV) GRANTING
                      RELATED RELIEF

party to any such Insider pursuant to this Final Order without further court approval on notice to parties in interest.

44.    The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Final Order in accordance with the Motion.

45.    Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, this Final Order shall be effective and enforceable immediately upon entry hereof.

46.    Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

47.    The requirement set forth in Local Rule 9013-1(a)(3) that any motion be accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Motion or otherwise waived.

48.    This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order or the Consulting Agreement, including, but not limited to, (a) any claim or issue relating to any efforts by any party or person to prohibit, restrict or in any way limit the conduct of the Sale as contemplated by the Consulting Agreement, Sale procedures and this Final Order, including with respect to any allegations that any advertising is not being conducted in a safe, professional, and non-deceptive

Page (26)
Debtors:              SAM ASH MUSIC CORPORATION, *et al.*
Case No.:             24-14727 (SLM)
Caption of Order:     FINAL ORDER (I) AUTHORIZING THE DEBTORS TO ASSUME AND
                      PERFORM UNDER THE CONSULTING AGREEMENT RELATED TO
                      THE SALE OF INVENTORY, (II) APPROVING PROCEDURES FOR
                      THE SALE OF INVENTORY, (III) APPROVING MODIFICATIONS TO
                      CERTAIN   CUSTOMER   PROGRAMS,   AND   (IV)   GRANTING
                      RELATED RELIEF

manner, (b) any claim of the Debtors, the landlords and/or the Consultant for protection from

interference with the Sale, (c) any other disputes related to the Sale, and (d) protect the Debtors

and/or the Consultant against any assertions of any liens, claims, encumbrances, and other

interests. No such parties or person shall take any action against the Debtors, the Consultant, the

landlords, or the Sale until this Court has resolved such dispute. This Court shall hear the request

of such parties or persons with respect to any such disputes on an expedited basis, as may be

appropriate under the circumstances.